Douglas K. Mertz
mertzlaw@gmail.com
319 Seward Street, Suite 5
Juneau, Alaska 99801
Tel: 907.586.4004
Fax: 1.888.293-2530

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
David I. Mindell*
dmindell@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Attorneys for the Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

MICHAEL COLE, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

GENE BY GENE, LTD., a Texas limited liability company d/b/a FAMILY TREE DNA,

*Defendant*.

Case No. 1:14-cv-00004-SLG

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Michael Cole ("Cole") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Gene by Gene, Ltd. d/b/a Family Tree DNA ("Family Tree") to put a stop to its unlawful disclosure of Plaintiff's and the Class's highly sensitive genetic information. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Family Tree is a commercial genetics company that sells DNA testing kits to consumers. After using the kit and sending it back to Family Tree, the company performs an analysis on it and then allows the customer to visit its website to conduct ancestry research based on their testing results (*i.e.*, based on their genetic code).

2. But that's not all Family Tree does with its customers' genetic data. Unbeknownst to (and without the consent of) certain of its customers, Family Tree publishes the results of their genetic tests on its publicly available websites.

3. As described herein, Family Tree's practice of releasing information about its consumers' genetic makeup—*without their permission*—carries serious and irreversible privacy risks. Family Tree's disclosures also violate Alaska's Genetic Privacy Act, Alaska Stat. § 18.13.010 ("Genetic Privacy Act" or the "Act"), which makes it unlawful for companies that collect consumers' genetic data to disclose such information without prior consent.

4. Accordingly, this Complaint seeks an order (i) declaring that Family Tree's conduct violated the Genetic Privacy Act, (ii) requiring Family Tree to cease the unlawful disclosures discussed herein, and (iii) awarding actual and statutory damages to Plaintiff and the

proposed Class.

## PARTIES

5. Plaintiff Michael Cole is a natural person and citizen of the State of Alaska.

6. Defendant Gene by Gene, Ltd. is a limited liability company existing under the laws of the State of Texas with its principal place of business located at 1445 North Loop West, Suite 820, Houston, Texas 77008. Defendant conducts business throughout this District, the State of Alaska, and the United States.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative Class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (c) none of the exceptions under that subsection apply to this action.

8. The Court has personal jurisdiction over Family Tree because it conducts significant business transactions in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and emanated from this District.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because Family Tree conducts significant business transactions in this District, solicits business in this District, and because a substantial part of the events giving rise to the action occurred in this District. Venue is additionally property because Plaintiff resides in this District.

## FACTUAL BACKGROUND

### I. The Danger of Publicly Disclosing an Individual's Genetic Information.

10. Up until "the year 2000, much of [the] information [associated with an

individual's DNA] had been essentially hidden within [their] genetic code. However, [that year] . . . a public consortium and a private company . . . announced that they had cracked the code and were able to spell out the 3 billion letters of each genetic genome, the biochemical messages that's encoded within everyone's DNA." SB 217, 2004 Alaska Legis. Comm. Minutes 1539. This breakthrough ultimately provided scientists with the ability to test a person's DNA to gain "insight into [a] breathtaking wealth of singularly private information: information about [their] ethnicity, family relationships, family history, and the likelihood of getting . . . some 4,000 different genetic diseases and conditions." HB 49, 2003 Alaska Legis. Comm. Minutes 0608.

11. There are many beneficial uses for genetic information, including detecting and preventing illnesses, aiding in criminal investigations, or uncovering a person's family history.[1] Yet research shows how this data may also be exploited for discriminatory and abusive purposes.[2] Indeed, hundreds of documented cases already tell the story of how genetic data has been relied on in denying individuals and their families employment opportunities, as well as health and life insurance.[3]

12. These types of abuses can be accomplished with access to even a small amount of

---

1 *See* HB 49, 2003 Alaska Legis. Comm. Minutes 0608; *see also* Deborah L. McLochlin, *Whose Genetic Information Is It Anyway? A Legal Analysis of the Effects That Mapping the Human Genome Will Have on Privacy Rights and Genetic Discrimination*, 19 John Marshall J. Computer & Info. L. 609, 611 (2001).

2 Kimberley Nobles, *Birthright or Life Sentence: Controlling the Threat of Genetic Testing*, 65 S. Cal. L. Rev. 2081, 2082 (1992).

3 *See* United States Department of Labor, Genetic Information and the Workplace, http://www.dol.gov/dol/aboutdol/history/herman/reports/genetics.htm (last accessed May 8, 2014); *see also* Council for Responsible Genetics, Genetic Testing, Privacy and Discrimination, http://www.councilforresponsiblegenetics.org/projects/PastProject.aspx?projectId=1 (last accessed May 8, 2014).

a person's genetic information. In a 2013 study published by The American Association for the Advancement of Science, a researcher was able to identify a group of individuals—and their families—equipped with only limited information about the individuals such as their long strings of DNA letters, ages, and states of residence.[4]

13. Commentators have noted that "an individual's genetic information has implications for his or her family members and future generations" and that the "misuse of genetic information could have intergenerational effects that are far broader than any individual incident of misuse."[5] In light of the above, it becomes evident why the Alaska legislature enacted the Genetic Privacy Act to protect the privacy of its citizens' DNA.

## II. Alaska's Genetic Privacy Act.

14. Alaska's legislature enacted the Genetic Privacy Act to "curtail exploitation of [its citizens'] valuable genetic information" and to afford Alaskans "the right to keep their genetic information private." SB 217, 2004 Alaska Legis. Comm. Minutes 1539.

15. To achieve that goal, the Genetic Privacy Act proscribes any person from, *inter alia*, "disclos[ing] the results of a DNA analysis unless the person has first obtained . . . *informed and written consent* . . . ." Alaska Stat. § 18.13.010(a)(1). [Emphasis added]. There are only five exemptions to this proscription.

16. Section 18.13.010(b) exculpates those that disclose, without informed and written

---

[4] *See* Web Hunt for DNA Sequences Leaves Privacy Compromised, http://www.nytimes.com/2013/01/18/health/search-of-dna-sequences-reveals-full-identities.html?_r=1& (last accessed May 8, 2014); *see also* Identifying Personal Genomes by Surname Inference, http://www.sciencemag.org/content/339/6117/321.abstract (last accessed May 8, 2014).

[5] *See id.*

consent, a person's DNA testing results under the following limited circumstances:

(a) under Alaska Stat. § 44.41.035 [Alaska's statute regulating the use and collection of DNA for purposes of establishing a criminal identification registration system] or comparable provisions of another jurisdiction;

(b) for a law enforcement purpose, including the identification of perpetrators and the investigation of crimes and the identification of missing or unidentified persons or deceased individuals;

(c) for determining paternity;

(d) to screen newborns as required by state or federal law; or

(e) for the purpose of emergency medical treatment.

17. Barring application of one or more of these exemptions, it is a violation of the Genetic Privacy Act for a person or business to disclose the results of a DNA analysis of any customer to *any* other person or entity for *any* reason without informed and written consent. As discussed throughout this Complaint, none of the Genetic Privacy Act's exceptions apply in this case.

## III. Family Tree Violates the Genetic Privacy Act as a Matter of Course.

18. Founded in early 2000, Family Tree boasts that it has become one of the largest commercial genetic testing companies in the world. Family Tree (through its parent company, Gene by Gene, Ltd.) offers a variety of genetic testing services, but is best known for marketing and selling DNA tests to consumers for the purpose of helping them research or identify their ancestry. Indeed, Family Tree claims to have amassed the "largest ancestry DNA database in the

world!"[6]

19. In order to take one of Family Tree's genetic tests (typically at a cost between $59 and $359), every customer must visit its website—www.familytreedna.com—and (1) identify their desired type of DNA test (*e.g.*, a partial or full sequence mitochondrial DNA test), (2) provide payment details, and (3) enter their contact information.

20. After completing the order, Family Tree ships a DNA collection kit to the customer, which contains the cotton swab testing kit (to collect the recipient's DNA), instructions on how to complete the test and return it for analysis, and a "Release Form"[7] that the customer has the option to agree to.

21. Once a customer's DNA analysis is complete, Family Tree sends an email notification suggesting that they sign into Family Tree's website where they can, among other things, view their testing results (which are displayed to the customer in a chart containing alphanumeric characters that represent their genetic sequence), locate any possible "matches" (*i.e.*, other customers who share similar genetic information), and otherwise research their ancestral origins.

22. After logging into Family Tree's website, Family Tree strongly encourages the customer to join a "project," which is an online forum for individuals researching their ancestral

---

[6] Family Tree, https://www.familytreedna.com (last accessed May 8, 2014).

[7] According to Family Tree's website, the purpose of the "Release Form [is to obtain its customers'] written consent . . . to *share [their] name and email address with someone who matches [their] genetic fingerprint exactly*." *See* Family Tree DNA Test Kit, https://www.familytreedna.com/dna-test-kit.aspx (last accessed May 8, 2014). Unfortunately, and as described further below, Family Tree's Release Form fails to disclose its actual practices; that it may instead make the results of certain of its customers' DNA tests available to the public.

connections. (*See*, *e.g.*, Figure 1 below, showing an advertisement on Family Tree's website for one of its "projects.")

## Surname & Geographical Projects



**Watch Family Tree DNA Founder & CEO Bennett Greenspan**
"Joining A Surname Project"
Watch This Video Now

### Family Tree DNA Surname, Lineage and Geographical Projects

Projects create opportunities for people to work with others to explore their common genetic heritage. Family Tree DNA encourages customers' participation in projects. Membership is free and voluntary. Members may join or leave a project at any time, however, it is important to note that while Family Tree DNA does not impose a limit in the number of projects one can join, we will not tolerate joining multiple projects with the purpose of data mining or finding information that is not relevant to one's personal ancestral origins. Family Tree DNA reserves the right to remove people from projects at its sole discretion or if it feels that a participant is abusing the system in a way that may infringe another participant's privacy.

**(Fig. 1.)**

23. In order to "join" a project, the customer must first search Family Tree's index of projects for a match (*i.e.*, a project comprised of individuals with matching genes). The customer then clicks on a hyperlink to a matching project, where they are presented with additional information, including a brief description of the project and a link to "join" it.

24. Importantly, during the above-described process, Family Tree does not seek or obtain the consent of the customer to share or otherwise disclose his or her DNA results to any unrelated third-parties.

25. Nevertheless, when customers join certain "projects," Family Tree automatically publishes the full results of their DNA tests to its publicly available websites.

26. Family Tree's past and ongoing disclosure of its customers' genetic information was perpetrated without their permission—let alone their *informed written consent* as mandated

by the Genetic Privacy Act. As a result, Family Tree places its customers at risk of current and future exploitation of their genetic code.

## IV. Plaintiff Michael Cole's Experience.

27. On June 27, 2013, Plaintiff Cole purchased a DNA test from Family Tree's website (www.familytreedna.com).

28. Due to the highly sensitive nature of DNA test results and the lack of any prominent notice that Family Tree would disclose his test results, Cole believed that the information submitted to Family Tree and the results of his testing would not be made publicly available.

29. Cole never consented, agreed, or gave permission—written or otherwise—to Family Tree to make the results of his DNA tests publicly available or to disclose them to any unrelated third-party.

30. Further, Family Tree never informed Cole by written notice or otherwise that he may prevent his sensitive information from being disclosed to the public.

31. Likewise, Cole was never provided with an opportunity to prohibit or prevent the disclosure of his DNA results.

32. Nevertheless, after Cole joined certain of Family Tree's projects, the results of his DNA tests were made publicly available on the Internet, and his sensitive information (including his full name, personal email address, and unique DNA kit number) was also disclosed to third-party ancestry company RootsWeb (a subsidiary of Ancestry.com, a company that allows users to research their lineage).

33. When Cole paid Family Tree for his DNA test, he had no reason to expect that

joining a project would cause his DNA test results to be disclosed to RootsWeb and made publicly available. In fact, the confidentiality of that information was guaranteed to him by the Genetic Privacy Act. As a result, had he known that Family Tree would disclose his full DNA test results and make them publicly available if he joined a project, he would not have purchased his DNA test from Family Tree, or he would only have done so if offered a substantial discount from the price paid.

## CLASS ALLEGATIONS

34. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a proposed class, defined as follows (the "Class"):

> All citizens or residents of Alaska who had their DNA results disclosed, publically or to any third party, by Family Tree after joining one of its projects, for which Family Tree did not have a record of written consent to disclose the same.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) the legal representatives, successors, or assigns of any such excluded person; and (5) Plaintiff's counsel and Defendant's counsel.

35. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has deceived and profited from thousands of consumers who fall into the definition of the Class. Ultimately,

members of the Class can be easily identified through Defendant's records.

36. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Family Tree obtained consent before making the results of Plaintiff's and the Class's DNA analyses public or otherwise disclosing such data to third-parties;

(b) Whether Family Tree's disclosure of the results of Plaintiff's and the Class's DNA analyses violated Alaska Stat. § 18.13.010; and

(c) Whether Family Tree's disclosure of the results of Plaintiff's and the Class's DNA analyses resulted in profit or monetary gain.

37. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

38. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief

appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered similar harm and damages as a result of Defendant's unlawful and wrongful conduct.

39. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be

fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of Alaska Stat. § 18.13.010**
**(On behalf of Plaintiff and the Class)**

40. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

41. Family Tree is a company engaged in the business of conducting DNA tests to determine the presence or absence of genetic characteristics in an individual (*e.g.*, the existence or risk of a disease, disorder, trait, propensity, or syndrome, or to identify an individual or a blood relative). *See* Alaska Stat. § 18.13.100.

42. Plaintiff and the Class purchased DNA tests from Family Tree for the purpose of determining the presence or absence of their genetic characteristics, and thus, they paid Family Tree to conduct "DNA analys[e]s" within the meaning of Alaska Stat. § 18.13.100(2).

43. Unfortunately for Plaintiff and the Class, Family Tree made the results of their DNA analyses publicly available on its own websites. Family Tree also disclosed Plaintiff's sensitive information to third-party ancestry company RootsWeb.

44. Such disclosures are plainly prohibited by the Genetic Privacy Act because they contain, among other things, the results of Plaintiff's and the Class's DNA analyses.

45. Family Tree never obtained Plaintiff's or the Class's informed written consent required by Alaska Stat. § 18.13.010 to make the results of their DNA analyses public or to disclose sensitive information to third-parties, including ancestry company RootsWeb.

46. On information and belief, Family Tree's disclosures of Plaintiff's and the Class's were not made for the purpose of establishing a criminal identification registration system, for law enforcement purposes, for determining paternity, or to screen newborns as required by state

or federal law.

47. By making the results of their DNA analyses publicly available and otherwise disclosing the same to any third-parties as described herein, Family Tree violated Plaintiff's and the Class's statutorily-protected rights to privacy in their genetic information as set forth in the Genetic Privacy Act, Alaska Stat. § 18.13.010, as well as their common law rights to privacy.

48. Further, when Cole paid Family Tree for his DNA test, he did not expect that joining a project, his full DNA results would be disclosed and publicly available. Had he known that Family Tree would in fact disclose his full test results, he would not have purchased a DNA test from Family Tree, or he would have only done so in exchange for a discount from the price paid. As such, because Family Tree *did* disclose his full DNA test results and make them publicly available, Cole suffered damages in an amount equal to the difference between the price he paid to Family Tree, and the price he would have been willing to pay had he known that his full DNA test results would be disclosed.

49. On behalf of himself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Family Tree to cease the unlawful disclosure discussed herein; (2) actual damages; (3) statutory damages in the amount of $5,000 or, if the Court finds that Family Tree's violation of the Genetic Privacy Act resulted in profit or monetary gain (which it did), $100,000 pursuant to Alaska Stat. § 18.13.020; and (4) costs and reasonable attorneys' fees pursuant to Alaska Stat. § 09.60.010(c).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Michael Cole, individually and on behalf of the Class, prays for the following relief:

1. An order certifying the Class as defined above, appointing Plaintiff Michael Cole as the representative of the Class, and appointing his counsel as Class Counsel;

2. Declare that Family Tree's conduct described herein violates Alaska's Genetic Privacy Act, Alaska Stat. § 18.13.010;

3. An award of actual and statutory damages of $5,000, or, if the Court finds that Family Tree's violation of the Genetic Privacy Act resulted in profit or monetary gain (which it did), $100,000;

4. An injunction requiring Family Tree to cease the unlawful disclosures discussed herein;

5. An award of reasonable attorneys' fees and costs; and

6. Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**MICHAEL COLE**, individually and on behalf of all others similarly situated individuals,

Dated: May 12, 2014

By: ______________________
Douglas K. Mertz

Douglas Mertz
mertzlaw@gmail.com
319 Seward Street, Suite 5
Juneau, Alaska 99801
Tel: 907.586.4004

Fax: 1.888.293-2530

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
J. Dominick Larry*
nlarry@edelson.com
David I. Mindell*
dmindell@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Motion for admission to be filed.