Matthew R. Wojcik, ABA 0710071
E-mail: matt.wojcik@bullivant.com
E. Pennock Gheen, *Pro Hac Vice*
E-mail: penn.gheen@bullivant.com
Holly D. Brauchli, *Pro Hac Vice*
E-mail: holly.brauchli@bullivant.com
Bullivant Houser Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930
Facsimile: 206.386.5130
Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | |
|---|---|
| MICHAEL COLE, individually and on behalf of all others similarly situated, | Civil No.: 1:14-cv-00004-SLG |
| Plaintiff, | DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3) |
| v. | |
| GENE BY GENE, LTD., a Texas Limited Liability Company d/b/a FAMILY TREE DNA, | |
| Defendant. | |

## I. <u>REQUEST FOR RELIEF</u>

Defendant Gene By Gene, Ltd. respectfully moves this Court for dismissal of Plaintiff's

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). Plaintiff claims

only statutory damages for the disclosure of his name and kit number. Because he cannot

produce evidence establishing any actual injury, Plaintiff cannot demonstrate standing.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)
AND 12(H)(3)
**Page 1 of 21**

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 1 of 21

Consequently, the Court lacks jurisdiction under Article III to adjudicate this matter.

## II. FACTUAL SUMMARY

### A. FAMILY TREE DNA TESTS "JUNK DNA" TO ASSIST CUSTOMERS WITH DISCOVERING RELATIVES AND FILLING OUT THEIR FAMILY TREES.

Defendant Gene by Gene, doing business as Family Tree DNA ("FTDNA"), markets and sells DNA tests to the public to enable their pursuit of genetic genealogy.[1] Once a customer voluntarily signs up, the tests are performed by sending the customer a "kit" containing a cheek swab to collect a DNA sample. The customer returns the kit to FTDNA for testing and storage. The tests are processed from "junk DNA," which is devoid of exons. Exons are the fabric of genetic information. Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 133 S. Ct. 2107, 2109, 186 L. Ed. 2d 124 (2013). Because junk DNA does not contain exons, it does not contain genetic information.

Upon receipt of genealogical results from FTDNA, a customer is given the choice to join administrative surname projects appropriate to the customer's results. Each project is run by an unpaid volunteer third party administrator ("Group Administrator"). A person joins a project by searching for it, typically by surname. A hyperlink will take the member to the FTDNA Surname Project Group. Some information on the FTDNA Surname Project Group page will be displayed publically. In addition to the FTDNA Surname Project Group Page, some Group Administrators choose to create a group project page in a different forum. The information displayed on the FTDNA project page is controlled by the privacy settings, which

---

[1] The company was founded in 2000 after Bennett Greenspan, in pursuit of his own genealogy, sought comparative testing with potential relatives in Argentina. His difficulty in accessing a test publically available to consumers for this purpose inspired him to create this access point himself.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

are set by the user.  Plaintiff joined several of these projects.  One of the Projects he joined was the Taylor project.

This is where Plaintiff's allegations become murky.

## B. WHAT PLAINTIFF ALLEGES – WIDESPREAD DISCLOSURE OF GENETIC INFORMATION

Plaintiff's Complaint paints a picture of the disclosure of "full results" to "publically available websites."[2]  Using phrases like "genetic makeup"[3] and "highly sensitive genetic information,"[4]  Plaintiff seeks to incite fear of publication of what the Alaskan statute was meant to protect – the "3 billion letters of each genetic genome,"[5] which can be "exploited for discriminatory and abusive purposes."[6]  When it comes to Michael Cole's "Experience," however, terms shift.  Instead of Cole's "full results" being published, only his "sensitive information" (and not his DNA) were publically exposed.[7]  When considering the actual evidence, the disclosure is even more limited.

## C. WHAT THE EVIDENCE SHOWS – THE DISCLOSURE OF A NAME, KIT NUMBER, AND EMAIL ADDRESS BY A GROUP ADMINISTRATOR.

### 1. Ralph Taylor, the Taylor Project Group Administrator, Disclosed Plaintiff's name and kit number, but no DNA results.

Plaintiff purchased a kit from FTDNA because he wanted to know more about his

---

[2]  Plaintiff's Complaint, Dkt. 1, ¶25.

[3]  Dkt. 1, ¶3.

[4]  Dkt. 1, Introduction.

[5]  Dkt. 1, ¶10.

[6]  Dkt. 1, ¶11.

[7]  Dkt. 1, ¶¶27-32.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)
AND 12(H)(3)
Page 3 of 21

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 3 of 21

family's "longevity."[8]  When he signed up, he felt encouraged, but not obligated, to join the

surname group projects.[9]  He understood that when he joined a Surname project group, his

contact information would be shared with the Group administrator.[10]  He understood this

contact information included his name and email address.[11]  He joined the Taylor project

because his maternal grandfather held that surname.[12]  His test results had not yet been

processed and posted.[13]  At some point prior to receiving the results of his test, he performed

an internet search of his email address and discovered that his name, email address, test kit

number, and grandmother's maiden name ("Taylor") were posted on Rootsweb, a company

unrelated to Defendant:[14]

> Kit# [redacted per Plaintiff's request], Michael Raymond Cole, Added: 08-15-13
> Contact: michael cole ==> mike1959/at/ alaska.net
> Tree not submitted
> Kit donor Taylor[15]

Important to this motion, Ralph Taylor did not post any genetic information on Rootsweb.[16]

/ /

---

[8]  Wojcik Decl., Exh. 1, p. 26 line 19 – p. 27 line 22.

[9]  Wojcik Decl., Exh. 1, p. 69 line 21 – p. 70 line 7.

[10]  Wojcik Decl., Exh. 1, p. 67 lines 3-15.

[11]  Wojcik Decl., Exh. 1, p. 67 lines 3-15.

[12]  Wojcik Decl., Exh. 1, p. 66 lines 7-8.

[13]  Wojcik Decl., Exh. 1, p. 67 line 2 – p. 68 line 25.

[14]  Wojcik Decl., Exh. 1, p. 81 lines 14-19.

[15]  Wojcik Decl., Exh. 2, p. 15 lines 1-25, Exhibit 2.

[16]  Wojcik Decl., Exh. 1, p. 82 lines 17-20; Wojcik Decl., Exh. 2, p. 15 lines 1-25, Exhibit 2.

**Bullivant|Houser|Bailey PC**

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

On December 31, 2013, Plaintiff notified Defendant that he was upset with this publication.[17] Defendant requested that the Group Administrator remove the information from the Rootsweb page.[18] While the administrator of the Taylor project believed he had removed all of Plaintiff's information earlier, he did not remove it fully until January 31, 2014.[19] From that point onward, Plaintiff's name, kit number, and email were removed from the Rootsweb site.[20]

### 2. **The "full results" Plaintiff claims are listed on the FTDNA site are actually summaries of junk DNA listed by kit number.**

Plaintiff references the "full results" that are publically available on the FTDNA website. He is discussing the summary results that correspond only with a kit number. For example, if one performs a google search for "Taylor Surname Project Group FTDNA," the Taylor project page will appear. On this page is a link entitled "Y-DNA Results." If you click on it, the following appears:

---

[17] Wojcik Decl., Exh. 2, p. 15 lines 1-25, Exhibit 2.

[18] Wojcik Decl., Exh. 2, p. 15 lines 1-25, Exhibit 2.

[19] Wojcik Decl., Exh. 2, p. 15 lines 1-25, Exhibit 2.

[20] Wojcik Decl., Exh. 2, p. 15 lines 1-25, Exhibit 2.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930



There is also a link on the Taylor page entitled "mtDNA Results." If you click on it,

the following appears:



(For both images, the list of kits continues).

The depicted results do not list genes, medical data, or the propensity to develop a

disease. Instead, they list the repetition sequence of certain portions of junk DNA. To use

Plaintiff's analogy, if "3 billion letters of the genetic genome" represent a complete DNA

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)
AND 12(H)(3)
Page 6 of 21

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 6 of 21

sequence, the "public disclosure" is comparable to an excised splice of a single letter from this entire motion brief. These are not genes. These are not proteins. It is white noise.

### 3. **Plaintiff speculates that someone could have matched his kit number to access a small portion of non-genetic junk DNA.**

In sum, Plaintiff asserts that the "full disclosure" of results is, in fact, the following: a volunteer administrator published a list of names and kit numbers. That list was temporarily available.[21] The public site for the FTDNA Cole Surname project has a list of Y-STR results. Plaintiff alleges that, in theory, someone could have taken the name and kit number from the Rootsweb site and matched it to the kit number and Y-STR value listed on the site, thereby discovering the junk DNA test results of Michael Cole. Although it is critical to proving his case, Plaintiff has no evidence that anyone actually did this.[22]

On the other hand, Plaintiff did provide his complete log-in information (e.g., the passcode to his account, which enabled access to edit contact information, change privacy settings, order additional tests, and view any results) to approximately 10 people.[23] He also provided his DNA testing results to no less than 25 people, including 5 researchers, many of whom were apparent strangers to him.[24] It is unclear if he did this by providing his kit

---

[21] It is unclear if the results were available at the same time Plaintiff's name and kit number were on Rootsweb.

[22] Wojcik Decl., Exh. 1, p. 129 line 4 – p. 130, line 9. Plaintiff may also try to establish that at some point in the thirty day period, Russians data scraped the website, thereby making the data available to this date. Again, the defense is unaware of evidence supporting this. A review of the Wayback Machine reveals that no data was scraped by that site prior to December of 2015.

[23] Wojcik Decl., Exh. 1, p. 152 line 22 – p. 154 line 8.

[24] Wojcik Decl., Exh. 4, p. 6-7; Wojcik Decl., Exh. 1, p. 155, line 8 – 163, line 25.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
Page 7 of 21

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 7 of 21

passcode.

**4.   Plaintiff cannot establish actual damages and seeks only the statutory fine.**

Plaintiff claims as his sole damages the statutory fine of $100,000.[25]  He acknowledges that he has not suffered any negative affects to his employment.[26]  He acknowledges that he has suffered no negative insurance, health, or educational consequences because of the alleged disclosure.[27]  He has not been discriminated against due to the disclosure.[28]  Moreover, he has not sustained monetary damages due to the alleged disclosure.[29]  While he believes someone can "open and unlock" the door to see a propensity for a medical condition, he has no evidence this has actually occurred.[30]  In fact, Plaintiff had the ability to change his settings to remove his information from the FTDNA website upon discovering the "disclosure" of his personal information in December, 2013.  Instead, he chose to leave his FTDNA results online – even to this day.

### III. STATEMENT OF LEGAL ISSUE

Can Plaintiff demonstrate that he has standing to pursue this suit when he admits he has not been financially harmed, discriminated against, or suffered adverse employment/education effects because of his disclosed name and kit number?

---

[25]  Wojcik Decl., Exh. 1, p. 133 lines 7-10.

[26]  Wojcik Decl., Exh. 1, p. 143 lines 8-11.

[27]  Wojcik Decl., Exh. 1, p. 143 lines 12-23.

[28]  Wojcik Decl., Exh. 1, p. 143 line 24 – p. 144 line 2.

[29]  Wojcik Decl., Exh. 1, p. 144 lines 3-5.

[30]  Wojcik Decl., Exh. 1, p. 144 lines 6-14.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)
AND 12(H)(3)
Page 8 of 21

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 8 of 21

## IV. EVIDENCE RELIED UPON

This Motion is based solely on the pleadings in this case, and the concurrently submitted Declaration of Matthew R. Wojcik, with attached exhibits.

## V. ARGUMENT AND AUTHORITY

### A. DISMISSAL OF PLAINTIFF'S COMPLAINT FOR LACK OF STANDING IS APPROPRIATE UNDER RULE 12.

Rule 12(b)(1) permits the defense to move for dismissal based on "lack of subject-matter jurisdiction." While some defenses are waived by a failure to move for relief prior to a pleading, this defense is not. Rule 12(h)(1). Separately, Rule 12(h)(3) grants the Court authority to dismiss a claim at any time upon a determination that it does not have subject-matter jurisdiction. Motions under 12(h)(3) may be raised at any time by the parties. Arbaugh v. Y&H Corp., 546 U.S. 500, 506, 126 S. Ct. 1235, 1239, 163 L. Ed. 2d 1097 (2006). Moreover, on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), proof of jurisdictional facts may be supplied by affidavit, declaration, or any other evidence properly before the court, in addition to the pleadings challenged by the motion. Green v. United States, 630 F.3d 1245, 1248 (9th Cir. 2011). If the Court determines it lacks subject matter jurisdiction, the Court must dismiss the complaint in its entirety. Id. at 514.

Issues of standing are properly raised by a challenge to subject matter jurisdiction. Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010)("Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss."); Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)(only a party with standing can invoke the jurisdiction of the federal courts). A court may review evidence to determine an issue relating to standing.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
**Page 9 of 21**

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 9 of 21

<u>Arbaugh</u>, 546 U.S. 500 at 514.

Article III Courts are limited to the consideration of actual cases and controversies between citizens of different states (among other types of parties). U.S. Const., Art. III, § 2. An "actual case or controversy" requires (1) injury-in-fact, (2) a causal, traceable connection between the injury and the defendant's alleged conduct, and (3) and the ability for the subject harm to be redressed by the Court's rulings. <u>Lujan v. Defenders of Wildlife, et al</u>, 504 U.S. 555, 112 S. Ct. 2130, 199 L. Ed. 2d 351 (1992). Plaintiff, as the party who invokes federal jurisdiction in this matter, has the burden to establish standing. <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Here, Plaintiff cannot establish an injury-in-fact, and therefore fails on all three elements.

**B.    SEEKING NOTHING BUT STATUTORY DAMAGES, PLAINTIFF CANNOT ESTABLISH AN INJURY-IN-FACT.**

     **1.    <u>An overview of Injury-in-fact requirements and the recent Spokeo decision.</u>**

> Standing is not 'an ingenious academic exercise in the conceivable,' but as we have said requires, at the summary judgment stage, a factual showing of perceptible harm.[31]

To establish Injury-in-fact, the alleged injury must be (1) concrete and particular and (2) actual and imminent (as compared to conjectural or hypothetical.) <u>Lujan</u>, 504 U.S. at 561. Injury-in-fact is a constitutional requirement, and the legislature cannot erase Article III standing requirements by statutorily generating standing where it would not otherwise exist. <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547–48, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Instead, the plaintiff must demonstrate he personally suffered an actual or

---

[31] <u>Lujan</u>, 504 U.S. at 566, (<u>quoting</u>) United States v. Students Challenging Agency Procedures (SCRAP), 412 U.S. 669, 93 S. Ct. 2405, 37 L.Ed.2d 254(1973)).

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
**Page 10 of 21**

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG    Document 95    Filed 09/16/16    Page 10 of 21

threatened injury.  <u>Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 472, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982).

In <u>Lujan</u>, the Supreme Court clarified that an "actual or imminent" injury must be felt by the plaintiff when faced with speculative potential injuries from the Department of Interior's ("DOI") decision to abstain from completing ESA impact statements when working abroad. <u>Lujan</u>, 504 U.S. at 561.  Some Americans alleged they would like, someday, to view the subject animals in their native countries and natural habitats.  <u>Id.</u>  Others alleged they had a general interest in viewing and/or studying the animals, so by extension had an interest in their survival.  <u>Id.</u>  No one could demonstrate these vague interests were actually affected by the DOI's decisions.  The Court soundly rejected the idea the plaintiffs could assert harm from the lack of impact statements, noting that the "'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured." <u>Id.</u> at 563.  One could not be injured by speculative damage to animals in a place to where a party only had "some day [sic] intentions" to go.  <u>Id.</u>

In <u>Spokeo,</u> the Supreme Court clarified further.  Plaintiff in that matter alleged Spokeo procedurally violated the Fair Credit Reporting Act.  He had a difficult time demonstrating harm – Spokeo had him listed as married, with children, graduate-educated, and affluent. Apparently, none of these things were true.  ___U.S.,___, 136 S. Ct. at 1546.  He argued sufficient standing because he could cite specific "particular" statutory rights that were violated by Spokeo, and that those statutory rights were individualized rather than collective. <u>Id.</u>  Moreover, like Plaintiff Cole, the <u>Spokeo</u> plaintiff cited statutory damages as evidence of compensable injury.

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)**
**Page 11 of 21**

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 11 of 21

The Supreme Court found that this was not enough to establish standing, clarifying that while particularization is necessary to establish injury-in-fact, it is not sufficient. Concreteness is also needed. Concreteness, the Court noted, is "meant to convey the usual meaning of the term – 'real' and 'not abstract.'" Id. at 1548. With intangible harms, the Court notes, the analysis is more distinguished, and requires consideration of whether an alleged intangible harm has a close relationship to a traditional harm, or whether the legislature has chosen to "elevate" the status of a legally cognizable injury. Id. at 1549. This is not a simplistic analysis. The Court warns:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. **Article III standing requires a concrete injury even in the context of a statutory violation.** For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III…

Id. at 1549 (emphasis added). But the Court continues:

> This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness. For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure. … See Federal Election Comm'n v. Akins, 524 U.S. 11, 20–25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury-in-fact to satisfy Article III); Public Citizen v. Department of Justice, 491 U.S. 440, 449, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

Id. at 1549-50. In other words, in the above access to information cases, the statutory violations resulted in harm to the value the legislation sought to protect – public access to information –

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
Page 12 of 21

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 12 of 21

and standing was appropriate.  In contrast, the Supreme Court considered the actual statute and allegations at play in Spokeo:

> On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, Robins cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

Id. at 1550.  In other words, FCRA was mean to prevent damage to a person's financial reputation by the false dissemination of damaging information.  Because the Spokeo plaintiff could only allege vague speculations of harm, and not actual reputational damage, it did not appear that the protected value was triggered.[32]

The Supreme Court instructs, then, to look for two items to establish concreteness in the realm of an intangible injury: first, the traditional or legislative value for which protection is sought, and second, an indication that the value came within the ambit of harm.

## C.    OVERVIEW OF THE ALASKA GENETIC PRIVACY ACT.

The Alaska Genetic Privacy Act is ("Alaskan Statute") is brief but not concise.  Among other things, it forbids the disclosure of the results of a DNA analysis without informed written consent.  Alaska Statute §18.13.010.  A "DNA analysis" is defined as "testing to determine

---

[32]  The Supreme Court ultimately left the consideration of "concreteness" to the Ninth Circuit on remand.  The issues are undecided at the time of this briefing.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

the presence or absence of genetic characteristics in an individual." Alaska Statute §18.13.100(2). A "genetic characteristic" is

> [a] gene, chromosome, or alteration of a gene or chromosome that may be test to determine the existence or risk of a disease, disorder, trait, propensity, or syndrome, or to identify an individual or a blood relative; [it] does not include family history or a genetically transmitted characteristic whose existence or identity is determined other than through a genetic test.

Alaska Statute §18.13.100(3).[33]

If a disclosure of a genetic characteristic is proven, then

> **[i]n addition to the actual damages suffered by the person**, a person violating [the Alaska Statute] shall be liable to the person for damages in the amount of $5,000 or, if the violation resulted in profit or monetary gain to the violator, $100,000.

Alaska Statute §18.13.020 (emphasis added). Here, Plaintiff alleges that the disclosure of a name and kit number by an unpaid volunteer was done for profit, and therefore seeks standing to pursue statutory damages of $100,000 (per person, if he successfully obtains class certification.) Plaintiff does not claim any actual, tangible damages. Therefore, guided by Spokeo, one turns to the values the legislature sought to protect.

## D.   LEGISLATIVE HISTORY OF THE ALASKA GENETIC PRIVACY ACT.

The original version of Senate Bill 217, which ultimately became the Alaska Genetic Privacy Act, included the following legislative findings:

> the DNA molecule contains information about the probable medical future of an individual and the individual's blood relatives; this information is written in a code that is rapidly being deciphered….the improper collection, retention, or disclosure of genetic information can lead to significant harm to an individual

---

[33] Saved for a later day is the issue of whether this Act even applies to the field of genealogical tests.

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

and the individual's blood relatives, including stigmatization and discrimination in areas such as employment, education, health, and insurance…[34]

The bill was placed into different Senate committees, where it was amended and reintroduced to the Senate on March 4, 2004. During committee sessions, legislative members specifically addressed concerns of (1) discriminatory practices by insurance companies, including a national database by which insurers could exchange the genetic information of their clients, (2) forced DNA testing by insurance companies, (3) the potential socioeconomic discrimination that could occur if genes are a property right, forcing the impoverished to sell their organs or genetic materials, and (4) discrimination, generally, that could be identified from genetic predispositions for medical conditions or diseases.[35] In the reintroduced version, all legislative findings had been deleted, but a Letter of Intent was included and was unanimously adopted. It stated:

> The Legislature has determined that such disclosure may lead to harm of an individual and their blood relatives, including discrimination areas such as employment, education, healthcare, and insurance…[36]

SB 217 was passed on May 5, 2004, and forwarded to the House.[37] The Alaskan House passed the bill with no changes on May 9, 2004.[38]

---

[34]  Wojcik Decl., Exh. 3, p. 4.

[35]  Wojcik Decl., Exh. 3, p. 21-23, 26, 29.

[36]  Wojcik Decl., Exh. 3, p. 16-17.

[37]  Wojcik Decl., Exh. 3, p. 17.

[38]  Wojcik Decl., Exh. 3, p. 17-18.

**Bullivant|Houser|Bailey PC**

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

The letter of intent was meant to be an adoption of the originally intended legislative findings. As can be seen in the notes from the judiciary committee, Sen. Therriault specifically discussed his dislike of legislative findings because of the lack of a "streamlined" approach.[39] Sen. Olson, a medical doctor and the bill sponsor, supported the idea of legislative findings to clarify the drafters' intention for future interpretation.[40] Sen. Olson was specifically concerned with the effect of "blanket" definitions as technology developed.[41] Unfortunately, Sen. Olson's concerns were founded, and here, the Court is faced with the Plaintiff's attempt to expand this statute to definitions of "injury" and "genetic material" that were not contemplated by the legislature when passing the bill. Nonetheless, there is sufficient indication of legislative intent to clarify what intangible values were being protected by the Alaska legislature.

**E.  SPECULATION OF UNLOCKED INFORMATION AND AN ABSENCE OF IDENTIFIED INJURY DOES NOT ESTABLISH ENTITLEMENT TO STATUTORY DAMAGES.**

Plaintiff plainly cannot demonstrate a tangible injury, and admits he has no financial injury. Guided by <u>Spokeo</u>, then, one must turn to the intangible values which Sen. Olson and his fellow legislators sought to protect:

- Discriminatory practices, especially by insurers, employers, or educators;

---

[39]  Wojcik Decl., Exh. 3, p. 28-29.

[40]  Wojcik Decl., Exh. 3, p. 28.

[41]  Wojcik Decl., Exh. 3, p. 29 "… you have to have more than just what the intent is because…certainly there are issues – and even within the definitions, when you're starting to talk chromosomes and the protein that make up the chromosomes and the genetic code that's there…when you start looking deeper and more and more technology goes forward…this defines in a tighter way what we are trying to do."

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)**
**Page 16 of 21**

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 16 of 21

- Mandatory DNA testing to access insurance, employment, or education;

- Public disclosure of medical information; and

- Unfair socioeconomic practices which encourage the impoverished to sell their genetic information.

He twice fails to demonstrate a concrete intangible injury to these values.

### 1. **Plaintiff cannot demonstrate "the door was unlocked."**

Plaintiff admits he cannot prove that anyone used his name and kit number to "unlock" the door to see his splice of junk DNA – at least, no one other than the approximately 35 people to whom he gave his results.

> Q. Okay. All right. You earlier explained how your coworker… helped you determine the disclosure. Did anyone, any individuals alert you to the disclosure? And I'll narrow down my question. Did anyone, say, call you up or e-mail you and say, "Mike, Mr. Cole, I was able to access your information. There has been a disclosure"?
>
> **A. No.**
>
> Q. Anything like that?
>
> **A. I found it.**
>
> Q. Okay. Did anyone indicate to you that they had viewed your genetic information and connected it to your identity?
>
> **A. No.**
>
> Q. And to your knowledge, your genetic information[42] was improperly disclosed through the Taylor name, surname project?

---

[42] This "genetic information" was the name, email, and kit number discussed on page 4, above. Plaintiff does not indicate that anything other than that information was listed on the Rootsweb page, despite his continued reference to it as "genetic information."

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
Page 17 of 21

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 17 of 21

**A. On RootsWeb, yes.**

Q. Okay. Was your genetic information improperly disclosed through the Cole surname project?

**A. I don't know what the administrator did.**

Q. Okay. You don't have any evidence?

**A. I don't have any evidence.**

Q. Okay.

**A. But I don't -- but the door is wide open. I don't know who got in there and who did what.[43]**

Without proof that Plaintiff's fears have been realized or are likely to be realized, his claims are like those of Sri Lankan leopard lovers with no travel plans in Lujan, and the plaintiff in Spokeo who could only guess as to how his improved online reputation harmed him. Plaintiff asserts only potential disclosures reliant on a speculative third party's actions, unsupported by any tangible evidence. Accordingly, he has no concrete injury, and he has no standing before this Court.

### 2. Even if "the door was unlocked", Plaintiff cannot demonstrate that he suffered injury to the interests protected by the Alaskan legislature.

Even assuming Plaintiff establishes that someone went to the Rootsweb page, accessed his kit number, went to the FTDNA website, matched it to his Y-STR results, and somehow gleaned genetic information from that match,[44] Plaintiff cannot demonstrate harm:

Q. Okay. Do you have any evidence that you suffered any negative effects to your employment as a result of the disclosure?

---

[43] Wojcik Decl., Exh. 1, p. 129 lines 4 – p. 130, line 9.

[44] And that whoever did this was not one of the ~35 people he had given access to his information.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
**Page 18 of 21**

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 18 of 21

**A. I don't think so.**

Q. Do you have any evidence that you have suffered any negative insurance consequences as a result of disclosure?

**A. No.**

Q. Do you have any evidence that you have suffered any negative healthcare consequences as a result of the disclosure?

**A. No.**

Q. Do you have any evidence that you have sustained any negative educational consequences as a result of the disclosure?

**A. No.**

Q. Do you have any evidence that you have been discriminated against as a result of the disclosure?

**A. No.**

Q. Have you sustained any monetary damages as a result of the disclosure?

**A. No.**

Q. Has -- to your knowledge, has anyone learned that you have a propensity for any medical disease, disorder, or syndrome as a result of the disclosure?

**A. It's likely the regional -- the project administrators, anybody that wants to look -- it's there. They can figure it out. So I don't know of any specific incident, but the door is open and unlocked.[45]**

Plaintiff has not been discriminated against. His medical information has not been disclosed.

His insurance, employment, and education had not been affected. Plaintiff cannot demonstrate

injury-in-fact, does not have standing, and cannot submit to this Court's jurisdiction.

---

[45]  Wojcik Decl., Exh. 1, p. 143 line 8 – p. 144, line 14.

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)
AND 12(H)(3)
**Page 19 of 21**

**Bullivant|Houser|Bailey PC**

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

# IV. **CONCLUSION**

Defendant respectfully requests dismissal of this matter with prejudice for lack of jurisdiction because Plaintiff lacks standing.

DATED:  September 16, 2016

BULLIVANT HOUSER BAILEY PC


By  */s/ Matthew R. Wojcik*
    Matthew R. Wojcik, ABA 0710071
    E. Pennock Gheen, *Pro Hac Vice*
    Holly D. Brauchli, *Pro Hac Vice*
    Telephone:  206.292.8930
    Attorneys for Defendant

4820-7602-6167.2

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
**Page 20 of 21**

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 20 of 21

# CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

Jay Edelson
Rafey S. Balabanian
Benjamin H. Richman
J. Dominick Larry
David I. Mindell
Courtney C. Booth
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, IL  60654
jedelson@edelson.com
rbalabanian@edelson.com
brichman@edelson.com
nlarry@edelson.com
dmindell@edelson.com
cbooth@edelson.com
Attorneys for Plaintiff

Timothy J. Petumenos
Law Offices of Tim Petumenos
2550 Denali Street, Suite 1502
Anchorage, Alaska  99503
timp@tpaklaw.com
Attorneys for Defendant

Douglas K. Mertz
319 Seward Street, Suite 5
Juneau, Alaska 99801
dkmertz@ak.net
Attorneys for Plaintiff

/s/ Matthew Wojcik
Matthew Wojcik

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3)
Page 21 of 21

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 95   Filed 09/16/16   Page 21 of 21