**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

MICHAEL COLE, individually and on behalf
of all others similarly situated,

       *Plaintiff*,

v.

GENE BY GENE, LTD., a Texas limited
liability company,

       *Defendant*.

Case No. 1:14-cv-0004-SLG

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS PURSUANT TO RULE
12(B)(1) AND 12(H)(3)**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES..................................................................................... ii

RELIEF REQUESTED AND EVIDENCE RELIED UPON ........................................ 1

INTRODUCTION.................................................................................................... 1

BACKGROUND...................................................................................................... 2

ARGUMENT AND STATEMENT OF POINTS AND AUTHORITIES ........................ 5

     I.    Cole Has Article III Standing .................................................................... 6

           A.     Cole Suffered a Tangible Injury to His Property Interests. ........................ 7

           B.     Cole Suffered an Intangible Injury to His Privacy Interests. ...................... 8

                  1.     The Genetic Privacy Act bears a close relationship to traditional common law actions for breach of confidentiality ........................... 9

                  2.     The Alaska Legislature exercised its judgment to protect an individual's interest in the privacy of their genetic information.... 11

                  3.     The Material Risk of Harm Posed by Disclosure of Genetic Information Separately Provides a Basis for Standing .................. 14

     II.    The Court Cannot Resolve the Disputed Factual Issue of Whether Gene by Gene Disclosed Cole's Genetic Information. ............................................. 14

     III.    The Court Cannot Dismiss this Case with Prejudice for Lack of Article III Standing. ............................................................................... 16

CONCLUSION ...................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Aranda v. Caribbean Cruise Line, Inc.*,
No. 12 C 4069, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016) ..........................12

*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983) ...........................................................15

*Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*,
289 F.3d 589 (9th Cir. 2002) ............................................................15

*Borg-Warner Corp. v. Avco Corp. (Lycoming Div.)*,
850 P.2d 628 (Alaska 1993).............................................................13

*Braitberg v. Charter Commc'ns, Inc.*,
No. 14-1737, 2016 WL 4698283 (8th Cir. Sept. 8, 2016) ..........................13,14

*Breese v. Smith*,
501 P.2d 159 (Alaska 1972)..............................................................10

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) .............................................................8,9

*Carpenter v. United States*,
484 U.S. 19 (1987).........................................................................8

*Cour v. Life360, Inc.*,
No. 16-CV-00805-TEH, 2016 WL 4039279 (N.D. Cal. July 28, 2016) ...........12

*Covington v. Jefferson Cty.*,
358 F.3d 626 (9th Cir. 2004) ..............................................................7

*Douglas v. Stokes*,
149 S.W. 849 (Ky. Ct. App. 1912) .....................................................11

*Frederiksen v. City of Lockport*,
384 F.3d 437 (7th Cir. 2004) .............................................................17

*Gingery v. City of Glendale*,
831 F.3d 1222 (9th Cir. 2016) .............................................................5

*Hancock v. Urban Outfitters, Inc.*,
830 F.3d 511 (D.C. Cir. 2016) ............................................................8

Case 1:14-cv-00004-SLG   Document 104   Filed 10/21/16   Page 3 of 24

*Herman Family Revocable Trust v. Teddy Bear*,
    254 F.3d 802 (9th Cir. 2001) .......................................................................16

*In re Nickelodeon Consumer Privacy Litig.*,
    827 F.3d 262 (3d Cir. 2016)......................................................................5,8,13

*Lawrence v. Texas*,
    539 U.S. 558 (2003).....................................................................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................5,6,12

*Myers v. Alaska Psychiatric Inst.*,
    138 P.3d 238 (Alaska 2006).........................................................................10

*Nashville, C. & St. L. Ry. Co. v. Wallace*,
    288 U.S. 249 (1933)) .................................................................................11,12

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*,
    135 F.3d 1260 (9th Cir. 1998) .....................................................................10

*Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp. Research & Special Programs Admin.*,
    457 F.3d 956 (9th Cir. 2006) .......................................................................13

*Planned Parenthood of Se. Pa. v. Casey*,
    505 U.S. 833 (1992).....................................................................................10

*Pollard v. Photographic Co.*,
    (1880) 40 Ch. D. 345 ...................................................................................11

*Prince Albert v. Strange*,
    (1849) 41 Eng. Rep. 1171 (Ch.)...............................................................10,11

*Ravin v. State*,
    537 P.2d 494 (Alaska 1975)...........................................................................9

*Roberts v. Corrothers*,
    812 F.2d 1173 (9th Cir. 1987) .....................................................................15

*Rosales v. United States*,
    824 F.2d 799 (9th Cir. 1987) ....................................................................15,16

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .....................................................................15

*Sater v. Chrysler Grp. LLC*,
  No. 14-cv-00700, 2014 WL 11412674 (C.D. Cal. Oct. 7, 2014) .....................15

*Spokeo Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ...................................................................... *passim*

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
  554 U.S. 269 (2008) ..........................................................................7

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) .............................................................................9

*Sterk v. Redbox Automated Retail, LLC*,
  770 F.3d 618 (7th Cir. 2014) ...........................................................12

*Stern v. Marshall*,
  564 U.S. 462 (2011) .........................................................................7,8

*Tenn. Elec. Power Co. v. TVA*,
  306 U.S. 118 (1939) ...........................................................................7

*United States v. Kriesel*,
  720 F.3d 1137 (9th Cir. 2013) .........................................................10

**Statutory Authority**

Alaska Stat. §18.13.010 .................................................................4, 8, 12

**Constitutional Provisions**

U.S. Const. art III, § 2 ....................................................................... *passim*

**Other Authority**

2A Norman J. Singer, *Sutherland's Statutes and Statutory Construction*
  § 48.04, at 22 (1992) .......................................................................13

Ari Ezra Waldman, *Privacy as Trust: Sharing Personal Information in a Networked
  World*, 69 U. Miami L. Rev. 559 (2015) ..........................................10

Neil M. Richards & Daniel J. Solove, *Privacy's Other Path: Recovering the Law of
  Confidentiality*, 96 Geo. L. J. 123 (2007) ....................................10,11

**RELIEF REQUESTED AND EVIDENCE RELIED UPON**

Defendant Gene by Gene, Ltd. filed its Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(h)(3) (Dkt. 95) seeking an order from the Court dismissing Plaintiff's claims with prejudice for lack of jurisdiction. As explained below, Defendant's motion fails under the standards set forth by Article III of the United States Constitution and Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), and as such, Plaintiff Michael Cole respectfully requests that this Court: (1) deny Defendant's motion in its entirety, and (2) award any other and further relief that it deems reasonable and just.

Plaintiff's opposition to Defendant's motion is based upon the Declaration of Benjamin Richman, the exhibits thereto, and the materials submitted by Defendant in conjunction with the filing of its motion.

**INTRODUCTION**

After two-and-a-half years of litigation and extensive discovery, Defendant Gene by Gene has now moved to dismiss this case, arguing for the first time that Article III of the Constitution prohibits the Court from exercising jurisdiction. Gene by Gene's motion is fundamentally flawed for two reasons. First, not only does Gene by Gene improperly ask the Court to decide the merits of this case on a jurisdictional motion, it misreads the Supreme Court's opinion in *Spokeo Inc. v. Robins*, 136 S. Ct. 1540 (2016), to hold that the Plaintiff Cole lacks sufficient injury to proceed in federal court. *Spokeo* contains no such holding. Rather, it reaffirmed the well-established principle that legislatures can create legal rights—both tangible and intangible—the violation of which confers standing. Cole has suffered both a tangible injury to his property rights in his genetic information and an intangible injury to his legislatively guaranteed right to privacy, and accordingly, he has standing to pursue this case.

Second, Gene by Gene's motion requests unavailable relief: Even if the Court determines it lacks jurisdiction, it cannot dismiss this case with prejudice. Rather, the case would have to be dismissed *without* prejudice to its re-filing in state court. But the parties need not worry about restarting the case in state court because careful analysis establishes that Plaintiff suffered an injury in fact within the meaning of Article III. This Court therefore has jurisdiction.

For all of these reasons, Plaintiff respectfully requests that the Court deny Gene by Gene's motion in its entirety.

## BACKGROUND

In the summer of 2013, Michael Cole wanted to learn more about his family history, so he ordered a DNA testing kit from familytreedna.com, a website operated by Gene by Gene. (Ex. A, Cole Dep. Tr. at 32:6–10.)[1] The kit allows consumers to take DNA tests to learn more about their genealogy. (*Id.*) Cole ordered a testing kit from Gene by Gene, and, while doing so, was presented with the opportunity to join one or more of Gene by Gene's surname and geographical projects (hereinafter, "Projects"). (*Id.* at 32:14–17.) Joining a Project would allow Cole to connect with other people sharing his or his ancestors' surnames (or their derivatives) or with similar geographical histories, learn more about his family history, and contact distant relatives. (Ex. B, B. Greenspan Dep. Tr. at 25:11–20.) To that end, Cole joined nine Projects, (*see* Ex. C, LA-000076), and understood that when he joined the Project, the administrator of the Project (a volunteer genealogy enthusiast or independent contractor) would have access to his name, contact information, and testing kit number, to contact him as needed. (*See* Def. Mot. at 4; Ex. B, B. Greenspan Dep. Tr. at 62:24.)

---

[1]     Unless otherwise noted, exhibit references are to the Declaration of Benjamin H. Richman, attached hereto.

Shortly after ordering, Cole received Gene by Gene's DNA testing kit by mail. (Ex. B, B. Greenspan Dep. Tr. at 29:25–30:9.) The kit contained a welcome letter, DNA swab materials, and a release form that would allow Plaintiff to be notified if he was a close genetic match of another customer, and, if so, would provide him and his "genetic match" with each other's contact information. (*Id.*; Ex. C, LA-000075.) Thus, based on the information provided to him by Gene by Gene, Cole understood that project administrators and his genetic matches would both have his contact information, and that he could share his DNA test results with potential relatives if he so chose. (Ex. A, Cole Dep. Tr. at 57:23–58:11; 60:20–23; 67:12–15) Cole then took the DNA test, signed the release form, and mailed his kit back to Gene by Gene for processing. (*Id.* at 38:25–39:4.)

In January 2014, after receiving an excess of junk email, Cole searched the Internet for his email address to see if it had been publicly posted. (Dkt. 96-2, Ex. 2, at 8; Ex. A, Cole Dep. Tr. at 81:14–19.) To his surprise, the top result was on a website called Rootsweb, "a company unrelated to Defendant." (Dkt. 95 at 4; *see* Dkt. 96-2, Ex. 2 at 8.) Cole clicked the link and found that an administrator of one of the Projects Cole had joined had chosen to use Rootsweb to host the Project's website, even though, during the signup process, nothing had informed Cole that any of the Projects he joined would be hosted outside of Gene by Gene's own website. (Ex. D, Blankfeld Dep. Tr. at 114:19–23.) Worse still, Cole found that the project administrator had posted Cole's name, email address, DNA testing kit number, and grandmother's last name publicly on Rootsweb. (Dkt. 96-2, Ex. 2 at 8.)

Concerned that the public exposure of his name and email in conjunction with his confidential kit number could have serious implications on his genetic privacy, Cole then searched the Internet for his kit number. (Ex. A, Cole Dep. Tr. at 79:1–81:19, 111:1–113:1.) To

his surprise, Cole found that each of the Projects he had joined had public websites—some hosted by Gene by Gene through its familytreedna.com website, and some hosted on third party websites—and that those websites contained his DNA testing kit number *along with his complete DNA testing results*. (*Id.*) To that point, Gene by Gene had given Cole no reason to believe that joining a project would result in the public posting of his DNA testing results. (Ex. A, Cole Dep. Tr. at 36:15–37:23.) From Cole's perspective, it was as if he had joined a science-fiction book club at his local library, and as a result, the library had shared not just his name and interest in science fiction with the club president, but a list of every book he had ever checked out, which the president then posted publicly on the Internet.

Suspecting that his experience was not unique, Cole filed suit against Gene by Gene on May 13, 2014, alleging that Defendant's sharing of his DNA testing results violated Alaska's Genetic Privacy Act, Alaska Stat. § 18.13.010, and seeking statutory damages on behalf of himself and a class of similarly situated Alaskan residents. (Dkt. 1.) Through two years of discovery, Plaintiff was able to confirm that every time a Gene by Gene customer like himself joined a Project, that individual's name, email address (if available), kit number, *and full DNA testing results* were disclosed to the Project administrator and any co-administrators, *and* that by default, the kit number and test results were then posted on the Project website. (Ex. D, Blankfeld Dep. Tr. at 90:10–14.)

Discovery also confirmed that for every Project with a website hosted on WorldFamilies.net (one of the more popular third-party hosting websites for Gene by Gene Projects), Gene by Gene automatically disclosed the project members' contact information, kit numbers, and testing results to Terry Barton, the owner and operator of WorldFamilies.net. (Ex. B, B. Greenspan Dep. Tr. at 123:20–124:3, 124:22–125:1.) To be clear, WorldFamilies.net is a

completely separate entity from Gene by Gene. (*See id.* at 132:6–133:5, 139:6–140:15 (explaining nature of relationship between Gene by Gene and WorldFamilies).) Even Gene by Gene's employees recognized that its disclosure practices went beyond customers' expectations and permissions, noting that even if it obtained consent to display customers' test results on its own website (which Plaintiff disputes ever happened), "**neither that consent or our privacy settings cover or affect the public display of their results on WorldFamilies**." (Ex. E, GBG00197517 (emphasis in original).)

### ARGUMENT AND STATEMENT OF POINTS AND AUTHORITIES

Article III of the Constitution extends the judicial power of federal courts to "Cases" and "Controversies," U.S. Const. art. III, § 2, and requires the litigant invoking the federal courts' jurisdiction to have "standing," the first element of which being that the litigant has suffered "an injury-in-fact." *Gingery v. City of Glendale*, 831 F.3d 1222, 1226 (9th Cir. 2016). In *Spokeo*, the Supreme Court reiterated the long-standing rule that "[t]o establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Both traditional "tangible" harms, such as loss of money and property, and less obvious "[i]ntangible harms …. may give rise to standing … includ[ing] harms that 'may be difficult to prove or measure,'" such as "the unlawful disclosure of legally protected information." *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273-74 (3d Cir. 2016) (quoting *Spokeo*, 136 S. Ct. at 1549-50).

Cole has Article III standing for two independent reasons. First, he has standing because the Alaska legislature gave him a property right in his genetic information, which Gene by Gene invaded. Invasion of a person's property interest is a tangible injury that has always conferred

standing. Second, Cole suffered an intangible harm in the form of an invasion of privacy, which also confers Article III standing. By enacting the Genetic Privacy Act, the Alaska Legislature defined a legal right to privacy—the right not to have the genetic code that makes up one's person disclosed to others without one's consent—the invasion of which is an injury. Similar violations of individuals' privacy rights have long been actionable at common law through suits for breach of confidence, and the Alaska Legislature expressly identified and elevated this particular kind of invasion to judicially cognizable status through the Act. When Gene by Gene disclosed Cole's genetic information without his consent, it inflicted exactly this injury on him, and Cole therefore has standing.

In any event, Gene by Gene's motion is improper because it seeks resolution of a factual issue that goes directly to the merits of the case, which the Court cannot do on a Rule 12 motion. Specifically, it argues that Cole's genetic information was never disclosed. Not only is that argument improperly raised here, it is also demonstrably false and thus, cannot be the basis for dismissal.

Finally, Gene by Gene could never be entitled to the relief it requests. If, as it says, the Court lacks jurisdiction, then dismissal with prejudice would be improper. All it can obtain is dismissal *without* prejudice to re-filing this action in Alaska state court.

## I.    Cole Has Article III Standing.

Gene by Gene's main argument is that the Supreme Court's recent decision in *Spokeo* divests the Court of jurisdiction because Plaintiff lacks Article III standing. Gene by Gene's analysis doesn't withstand scrutiny. *Spokeo*—and Gene by Gene's motion—focus on the "concrete" prong of the injury-in-fact inquiry. 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The *Spokeo* Court reaffirmed that both tangible and

intangible harms can be considered "concrete." *Id.* at 1549. Importantly, the Supreme Court expressly held that the violation of a statutory right—in and of itself—may be a concrete injury, especially if the right is grounded in the common law and protects a legislatively identified interest. *See id.* A plaintiff vindicating a concrete statutory interest "need not allege any *additional* harm beyond the one [the legislature] has identified." *Id.* at 1549-50. (emphasis in original).

Cole has standing here for two independent reasons. First, he suffered a tangible injury because Gene by Gene invaded his property interest in his genetic information. Second, he suffered an intangible injury: the invasion of privacy that occurred when Gene by Gene disclosed his genetic information. As this intangible injury both bears a close relationship to a well-established common law tort and was clearly identified by the Alaska legislature, it is also concrete.

### A.    Cole Suffered a Tangible Injury to His Property Interests.

It is beyond doubt that an invasion of one's property interests is an injury in fact under Article III. *See, e.g.*, *Spokeo*, 136 S. Ct. at 1553 (Thomas, J., concurring) ("[S]tanding can exist where 'the right invaded is a legal right—one of property, one arising out of contract, one protected against tortious invasion, or one founded on a statute which confers a privilege.'") (quoting *Tenn. Elec. Power Co. v. TVA*, 306 U.S. 118, 137-38 (1939); *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008) (noting that whether something "confers a property right" is an "important distinction" in a standing inquiry); *Covington v. Jefferson Cty.*, 358 F.3d 626, 641 (9th Cir. 2004) (holding that "loss of enjoyment of property" is "enough for injury in fact"). "Property interests are created and defined by state law[.]" *Stern v. Marshall*, 564

U.S. 462, 495 (2011). Thus an invasion of a state-created property interest is an Article III injury in fact.

It is far from novel to recognize a property right in certain types of sensitive information, *see, e.g.*, *Carpenter v. United States*, 484 U.S. 19, 26 (1987) ("Confidential business information has long been recognized as property."), and the Alaska legislature unambiguously did so here, Alaska Stat. Ann. § 18.13.010 ("a DNA sample *and the results of a DNA analysis* performed on the sample are the exclusive property of the person sampled or analyzed") (emphasis added). It also defined exactly how that property right is invaded: by disclosure of that information to a third party without the consent of the owner. *See id*. Article III cannot be read to deprive a plaintiff of a federal forum to enforce his property interest.

**B.      Cole Suffered an Intangible Injury to His Privacy Interests.**

In the context of an injury sufficient to confer Article III standing, the Supreme Court has held that " '[c]oncrete' is not … necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Spokeo*, 136 S. Ct. at 1549. For example, "the unlawful disclosure of legally protected information" is a concrete, intangible injury. *Nickelodeon*, 827 F.3d at 274; *see also Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 515 (D.C. Cir. 2016) (determining that the plaintiffs lacked standing where they "d[id] not allege, for example, any invasion of privacy"). *Spokeo* reaffirms the rule that legislatures have "the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)); *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("[S]tate law can create interests that support standing in federal

courts. … State statutes constitute state law that can create such interests."). "In determining whether an intangible harm constitutes injury in fact, both history *and* the judgment of [the legislature] play important roles." *Spokeo*, 136 S. Ct. at 1549 (emphasis added).

Problematically, Gene by Gene addresses only the second half of this test, and it only does so by setting aside the text of the statute and advancing a dubious interpretation of unenacted language. Here, both the legislative intent and the common-law tradition of protecting privacy, which is particularly strong in Alaska, establish that the legislature created a concrete interest in the privacy of Cole's genetic information. Gene by Gene invaded that interest. No more is required to establish Article III injury in fact.

> ### 1. The Genetic Privacy Act bears a close relationship to traditional common law actions for breach of confidentiality.

Although Gene by Gene entirely fails to discuss the relationship between the Genetic Privacy Act and the common law, it is an essential part of the Article III analysis. Under *Spokeo*, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." 136 S. Ct. at 1549. This is because federal judicial power under Article III applies to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). If the interest follows from the common law, it is concrete.

The Genetic Privacy Act is closely related to traditional common-law privacy and confidentiality torts under both Alaska and United States law. Alaska is unique in that it "has traditionally been the home of people who prize their individuality and who have chosen to settle or to continue living here in order to achieve a measure of control over their own lifestyles[.]" *Ravin v. State*, 537 P.2d 494, 504 (Alaska 1975). Thus, there is a robust history of Alaska

jurisprudence that protects a person's privacy, especially in matters closely relating to his or her own body. *See, e.g., Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 246 (Alaska 2006) ("We have noted that "few things [are] more personal than one's own body[.]"); *Breese v. Smith*, 501 P.2d 159, 169 (Alaska 1972) (recognizing Constitutional right of Alaska schoolchildren to wear their hair as they please). United States jurisprudence, too, recognizes the same strong interest. *United States v. Kriesel*, 720 F.3d 1137, 1144-45 (9th Cir. 2013) (concluding that genetic information is "property" under Fed. R. Crim. P. 41); *see also Lawrence v. Texas*, 539 U.S. 558, 574 (2003); *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992). Indeed, "[o]ne can think of few subject areas more personal and more likely to implicate privacy interests than that of one's … genetic make-up." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1269 (9th Cir. 1998).

While Gene by Gene necessarily obtains information about its customers' genetic information as part of the service it provides, Alaska law requires Gene by Gene to keep that information confidential. Unauthorized disclosure of that information to third parties is a breach of this duty, and breach of confidentiality has a long history of providing a basis for suit in English and American courts.

"Confidentiality (or 'confidence' to use its earlier terminology) is a concept with ancient origins in the Anglo-American common law." Neil M. Richards & Daniel J. Solove, *Privacy's Other Path: Recovering the Law of Confidentiality*, 96 Geo. L. J. 123, 133 (2007); *see also* Ari Ezra Waldman, *Privacy as Trust: Sharing Personal Information in a Networked World*, 69 U. Miami L. Rev. 559, 617 (2015) (noting that the "tort of breach of confidentiality … has a long tradition in Anglo-American common law"). For example, in *Prince Albert v. Strange*, (1849) 41 Eng. Rep. 1171 (Ch.), Prince Albert sued to enjoin publication of private etchings made by

members of the British royal family for their own amusement, which had been provided to a printer solely to make copies to give to a few personal friends. Lord Chancellor Cottenham held that Prince Albert was entitled to an injunction on the basis of "breach of trust, confidence, or contract" because the printer created more copies than ordered, which made their way to the defendants. *Id.* at 1178-79 (quoting precedent that "[e]very clerk employed in a merchant's counting-house is under an implied contract that he will not make public that which he learns in the execution of his duty as clerk"); *see also Pollard v. Photographic Co.*, (1880) 40 Ch. D. 345, 349 ("Where a person obtains information in the course of a confidential employment, the law does not permit him to make any improper use of the information so obtained.").

An early twentieth century case noted that "[t]he ruling in [*Pollard*] has been followed in America, uniformly, so far as we have seen." *Douglas v. Stokes*, 149 S.W. 849, 850 (Ky. Ct. App. 1912). And indeed, by the end of the nineteenth century, "a robust body of confidentiality law protecting private information from disclosure existed throughout the Anglo-American common law," Richards & Solove, *supra*, 96 Geo. L. J. at 125. By the mid-twentieth century, American courts were hearing tort cases asserting breach of confidentiality, and contract cases asserting breach of an express or implied contract of nondisclosure. *Id.* at 151-52. The Genetic Privacy Act is simply an extension of these well-established principles, and Cole's claim thus bears a close relationship to traditional common-law actions.

## 2. The Alaska Legislature exercised its judgment to protect an individual's interest in the privacy of their genetic information.

In addition to following from the common law, the Genetic Privacy Act also represents the Alaska Legislature's creation of a concrete interest. "The judiciary clause of the Constitution … did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts." *Nashville, C. & St.*

*L. Ry. Co. v. Wallace*, 288 U.S. 249, 264 (1933). Congress and state legislatures therefore can create "new rights of action that do not have clear analogs in our common law tradition." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment). In the privacy context, it is common for legislatures to recognize that individuals suffer an injury from an invasion of privacy, regardless of the consequences of that invasion (if any). *See, e.g.*, *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014) ("'[T]echnical' violations of the statute (i.e., impermissible disclosures of one's sensitive, personal information) are precisely what Congress sought to illegalize by enacting the [Video Privacy Protection Act, 18 U.S.C. § 2710]."); *Cour v. Life360, Inc.*, No. 16-CV-00805-TEH, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (determining that invasion of privacy in violation of a federal statute confers Article III standing under *Spokeo* even without any additional harm); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12 C 4069, 2016 WL 4439935, at *5 (N.D. Ill. Aug. 23, 2016) (holding that no standing problem exists under *Spokeo* where a statute "directly forbids activities that by their nature infringe the privacy-related interests that [the legislature] sought to protect").

The Alaska Legislature properly created a new private right of action here. The injury, defined by the statute, is the disclosure of DNA analysis results without informed consent. Alaska Stat. Ann. § 18.13.010. ("A person may not … disclose the results of a DNA analysis unless the person has first obtained … informed and written consent[.]"). When it passed the statute, the legislature included a letter of intent explaining that "laws regarding … disclosure of DNA information are inadequate and steps should be taken to protect genetic privacy" and that therefore it had decided to "define the rights of individuals whose genetic information is collected and their property rights in that information." (Dkt 96-3 at 16.)

Gene by Gene relies heavily on what it terms "legislative findings." (*See* Dkt. 95 at 14-16.) But, as Gene by Gene concedes, those "findings" not only were never found by the legislature, they were the subject of debate in committee, which *decided not to include them* in the bill. (*See id.* at 15) ("In the reintroduced version, *all legislative findings had been deleted*[.]") (emphasis added). It is completely inappropriate to base a judicial decision on portions of a bill that a legislature considered and did not adopt. *See Borg-Warner Corp. v. Avco Corp. (Lycoming Div.)*, 850 P.2d 628, 633 (Alaska 1993) ("[W]here specific language is omitted by the legislature, this is an indication that the legislature rejected this language") (citing 2A Norman J. Singer, *Sutherland's Statutes and Statutory Construction* § 48.04, at 22 (1992)); *Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp. Research & Special Programs Admin.*, 457 F.3d 956, 962 (9th Cir. 2006) (refusing to conclude that "Congress intended to include limiting language that it expressly rejected when it enacted the statute").

Gene by Gene uses this false legislative history to argue that only people who had suffered certain, specific harms (like discrimination) have standing to sue. However, examining the *enacted* statute and the accompanying letter of intent demonstrate that this line of reasoning is incorrect. The letter simply explains the many reasons why the conduct proscribed by the Genetic Privacy Act is illegal in Alaska and sets forth the principle that disclosure of private genetic information was an invasion of privacy in and of itself. "While perhaps 'intangible,'" this "unlawful disclosure of legally protected information" is also a concrete harm "in the sense that it involves a clear *de facto* injury." *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d at 274; *cf. Braitberg v. Charter Commc'ns, Inc.*, No. 14-1737, 2016 WL 4698283, at *4 (8th Cir. Sept. 8, 2016) (dismissing a privacy case for lack of Article III standing because the plaintiff did not "allege that [the defendant] has disclosed the information to a third party [or] that any outside

party has accessed the data[.]"). Accordingly, the invasion of privacy that occurred when Gene by Gene disclosed Cole's genetic information is enough, in itself, to confer Article III standing.

### 3. The Material Risk of Harm Posed by Disclosure of Genetic Information Separately Provides a Basis for Standing.

Besides the intrinsic harm to privacy inflicted by the unauthorized disclosure of genetic information, the Legislature also identified several additional harms that are likely outcomes of such a disclosure. This is exactly the "chain of causation" central to Justice Kennedy's concurrence in *Lujan*, since adopted by the Supreme Court. In circumstances where the legislature identifies certain prohibited conduct as creating the material risk of a harm, a plaintiff need not have experienced that harm in order to have standing. *Spokeo*, 136 S. Ct. at 1549.

Here, the legislature found that disclosures of genetic information come with a material risk of certain harms, which it enumerated. Specifically, it found that disclosure of genetic information "may lead to harm of an individual and their blood relatives, including discrimination in areas such as employment, education, healthcare and insurance." (Dkt. 96-3 at 16.) A plaintiff who suffers a disclosure has standing based on that material risk, even without suffering one of the enumerated harms. Thus, the material risk of the enumerated harms that Cole suffered when Gene by Gene disclosed his genetic information provides a separate basis to conclude that he has Article III standing and this Court has jurisdiction.

## II. The Court Cannot Resolve the Disputed Factual Issue of Whether Gene by Gene Disclosed Cole's Genetic Information.

As explained above, Cole has standing because of Gene by Gene's unlawful disclosure of his DNA test results. Gene by Gene argues that Cole lacks standing because he "asserts only potential disclosures reliant on a speculative third party's actions[.]" (Dkt. 95 at 18.) In short, Gene by Gene's position is that Cole lacks standing because Gene by Gene never disclosed

Cole's genetic information.[2] That's a hotly disputed fact in this case, and because it goes directly to the merits of Cole's case, it cannot be the basis for a factual challenge to subject-matter jurisdiction under Rule 12(b)(1).

"In a factual attack [on subject-matter jurisdiction], the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Although "[a] district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial," *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987), "[a] court may *not* resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits,'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (emphasis added) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). This commonsense rule ensures that "every jurisdictional challenge does not turn into a premature motion for summary judgment." *Sater v. Chrysler Grp. LLC*, No. 14-cv-00700, 2014 WL 11412674, at *5 n.6 (C.D. Cal. Oct. 7, 2014).

Whether Gene by Gene disclosed Cole's genetic information is a key (perhaps *the* key) factual issue in this case. If the jury finds that Gene by Gene never disclosed Cole's genetic information, then Cole loses on the merits. Here, Gene by Gene's jurisdictional argument is the exact same: Gene by Gene claims that the Court lacks jurisdiction because it never disclosed

---

[2]     Gene by Gene states in its "factual background" section that the information it disclosed is only "the repetition sequence of certain portions of junk DNA" rendering it "white noise" and not "genes." (Dkt. 95 at 6-7.) However, as that entire paragraph lacks citation to evidence or authority of any kind, it constitutes merely statements of counsel and not facts that the Court can consider. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 (9th Cir. 2002) (holding that "arguments and statements of counsel are not evidence"). In any event, Gene by Gene does not make the legal argument that Cole lacks standing because the information it disclosed is not "genetic information" under the statute.

Case 1:14-cv-00004-SLG   Document 104   Filed 10/21/16   Page 20 of 24

Cole's information. Accordingly, the jurisdictional question is "intertwined with the merits," and the Court cannot "hear evidence [or] make findings of fact[.]" *Rosales*, 824 F.2d at 803. Instead, dismissal is only permitted "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

Here, the factual allegations are far from undisputed. Cole has shown that Gene by Gene went far beyond merely providing his contact information to project administrators, (Def. Mot. at 4), and instead automatically disclosed his name, email address, kit number, and full DNA testing results to each administrator and co-administrator of the Projects he joined. (*See* Ex. D, Blankfeld Dep. Tr. at 83:9–13.) That same information was also disclosed to a third-party genealogy website, WorldFamilies.net, without his knowledge or consent each time he joined a project that used WorldFamilies to host its website. (*See* Ex. A, Cole Dep. Tr. at 36:15–37:23, 57:23–58:11; 60:20–23; 67:12–15; *see also* Ex. E, GBG00197517 (noting that none of Gene by Gene's consent or privacy settings "cover or affect the public display of their results on WorldFamilies.").)

In short, as Gene by Gene has premised its factual attack on disputed facts that go directly to the merits of the case, the Court cannot resolve this dispute on a motion to dismiss for lack of subject-matter jurisdiction. Because there is a disputed issue of material fact, it can only be resolved at trial.

## III. The Court Cannot Dismiss this Case with Prejudice for Lack of Article III Standing.

Finally, Gene by Gene improperly requests that the Court dismiss this case with prejudice. However, a court without jurisdiction cannot dispose of a case with prejudice; it can only dismiss without prejudice. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004)

(Easterbrook, J.) ("'No jurisdiction' and 'with prejudice' are mutually exclusive."). Thus, the most that Gene by Gene can hope for is dismissal without prejudice so that Cole can re-file this action in state court.

## CONCLUSION

Because Cole has standing under Article III, Gene by Gene's motion to dismiss should be denied.

Respectfully submitted,

**MICHAEL COLE**, individually and on behalf of all others similarly situated individuals,

Dated: October 21, 2016

By: s/ Benjamin H. Richman
    One of Plaintiff's Attorneys

Jay Edelson (*pro hac vice*)
jedelson@edelson.com
Benjamin H. Richman (*pro hac vice*)
brichman@edelson.com
J. Dominick Larry (*pro hac vice*)
nlarry@edelson.com
David I. Mindell (*pro hac vice*)
dmindell@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (*pro hac vice*)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Douglas Mertz
mertzlaw@gmail.com
MERTZ LAW
319 Seward Street, Suite 5

Juneau, Alaska 99801
Tel: 907.586.4004
Fax: 888.586.4141

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, certify that on October 21, 2016, I served the above and foregoing by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

s/ Benjamin H. Richman