Matthew R. Wojcik, ABA 0710071
E-mail: matt.wojcik@bullivant.com
E. Pennock Gheen, *Pro Hac Vice*
E-mail: penn.gheen@bullivant.com
Holly D. Brauchli, *Pro Hac Vice*
E-mail: holly.brauchli@bullivant.com
Bullivant Houser Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930
Facsimile: 206.386.5130

Timothy Petumenos, ABA 7611147
E-mail: timp@tpaklaw.com
Law Office of Tim Petumenos, LLC
1227 W. 9th Ave., Suite 301
Anchorage, Alaska 99501
Telephone: 907-276-2676
Facsimile: 907-277-8235

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| MICHAEL COLE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>GENE BY GENE, LTD., a Texas Limited Liability Company d/b/a FAMILY TREE DNA,<br><br>        Defendant. | Civil No.: 1:14-cv-00004-SLG<br><br>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(H)(3) |

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 1 of 16

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 1 of 16

Plaintiff spends 17 pages attempting to hide the fundamental flaw in his case: Plaintiff claims entitlement to a $100,000 statutory fine but is unable to establish a concrete harm. Several legal rights are identified, but Mr. Cole can claim injury to none of them. Because of Plaintiff's inability to establish a concrete harm, dismissal for lack of standing is appropriate.

## I. PLAINTIFF HAS NOT DEMONSTRATED HARM FROM IMPROPER DISCLOSURE OF HIS GENETIC INFORMATION

The Plaintiff has the burden to establish standing, and on an evidentiary motion that burden is one of production. Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992). Plaintiff fails to meet that burden.

### A. PLAINTIFF HAS NOT DEMONSTRATED THAT HIS GENETIC INFORMATION WAS IMPROPERLY DISCLOSED.

Plaintiff agrees that, like all FTDNA customers, he purchased a kit to further his pursuit of genetic genealogy. He agrees that joining a project enables access to potential relatives for the purpose of sharing results. He agrees that he accessed Surname Project Groups in order to share results. He does not contest that he also shared his passcode and results with several other people, including strangers. What he appears to be upset about is that, while most of the Surname Project Groups run by unpaid volunteers are hosted on the FTDNA site (which can be viewed by the public), the "orphan" Surname Project Groups are run by a paid contractor and hosted on a Worldfamilies.net site (which can also be viewed by the public).

More importantly, Plaintiff does not appear to assert that the publically-available results posted on Surname project groups are, in fact, genetic information. Soft pedaling the issue, Plaintiff instead repeatedly refers to the disclosure of "confidential" information, or "full DNA testing results" (in italics), while failing to demonstrate that more than excised splices of junk

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 2 of 16

Bullivant|Houser|Bailey PC

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 2 of 16

DNA were exposed.[1]  A continual repetition of "DNA testing results" does not make it DNA testing <u>to determine the presence or absence of genetic characteristics in an individual.</u>  See Alaska Statute § 18.13.100(2)-(3).[2]  The remaining arguments made by Plaintiff hinge on the assumption that this definition has been met, and crumble in the absence of its foundation.

## II. <u>PLAINTIFF HAS NOT DEMONSTRATED HARM TO PROPERTY INTEREST</u>

Perhaps recognizing the uphill battle fought on intangible harm, Plaintiff asserts tangible injury to his property rights.  However, the existence of property rights alone does not mean they were violated.  Defendants have not uncovered a law indicating that privacy rights and property rights are interchangeable, or that there is a "property right" to privacy.  While ownership and the consequential right to exclude others from property may be an <u>element</u> in the consideration of whether privacy was violated, the relationship is not reflexive. <u>Rakas v. Illinois</u>, 439 U.S. 128, 149, 99 S. Ct. 421, 433, 58 L. Ed. 2d 387 (1978).  The United States Supreme Court has expressly distinguished the privacy right against unreasonable governmental searches as separate and different from "a trespassory violation of property." <u>United States v. Jones</u>, 132 S. Ct. 945, 960, 181 L. Ed. 2d 911 (2012).  Conflating privacy rights with property rights is like conflating contract rights with property rights.  One can allege that a contract to remodel a home was violated, but this does not mean a conversion occurred.

---

[1] As pointed out previously, the Supreme Court has already established that not all DNA contains genetic information. <u>Ass'n for</u> <u>Molecular Pathology v. Myriad Genetics, Inc.</u>, 133 S. Ct. 2107, 2111-12, 186 L. Ed. 2d 124 (2013).

[2] In a footnote, Plaintiff attempts to shift his burden of production to Defendant by demonstrating a need to <u>disprove</u> statutory definitions in order to succeed on a standing motion.  <u>Lujan</u> dispels this position – Plaintiff has the burden of production and has not met it.  504 U.S. at 561.  Plaintiff also nonsensically states that Defendant does not make a "legal argument" that the DNA testing results are genetic information.  Defendant <u>does</u> argue that Plaintiff cannot demonstrate he was harmed by disclosure of the type of information protected by the statute.  It is unclear how this is <u>not</u> a "legal argument" on the failure to demonstrate that the published results are, in fact, genetic information.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 3 of 16

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 3 of 16

Here, Plaintiff cannot assert an implication of his property interests. Unlike Kriesel, he has not requested the sample back or the data on the Surname Project Group pages removed. United States v. Kriesel, 720 F.3d 1137, 1145 (9th Cir. 2013). He already relinquished any chance of control or exclusion when he joined the project group pages with wide-open privacy settings, and when he released his pass code to his kit account. Consequently, Plaintiff cannot demonstrate a concrete injury to a property interest secured by the Alaska Statute.[3] He must establish an intangible injury from the disclosure of information protected by the statute, but cannot.

### III. PLAINTIFF HAS NOT DEMONSTRATED INJURY TO INTANGIBLE INTEREST

After contending that Defendant misconstrues Spokeo, Plaintiff cites common law authority in a futile attempt to bolster his position that the disclosure of anonymized information already shared with at least 30 people is "harm" under the Alaska Statute. Unfortunately for Plaintiff, he fails to identify an interest actually injured by Defendant.

**A.  COMMON LAW DOES NOT SHAPESHIFT CASE FACTS INTO AN IMPROPER INVASION OF PRIVACY.**

Plaintiff first turns to claims for violation of privacy in common law. While common law addressing privacy exists, none of it aids Plaintiff.

> **1. Plaintiff's cited law does not support an inference of a privacy right related to the facts of this case.**

The cases and journal articles cited by Plaintiff to establish a privacy interest under these facts are immediately distinguishable or simply off point. Some fail to address a privacy

---

[3] Even if he could, it is unclear that the "injury" is tangible. Violation of a tangible right and tangible injury are not identical ideas.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 4 of 16

**Bullivant|Houser|Bailey PC**
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 4 of 16

interest.  Breese discusses students' ability to wear hair as they please as a liberty interest. (The court notes an argument advanced by one party that the hairstyling is a privacy interest, but never adopts or endorses it).  Breese v. Smith, 501 P.2d 159, 166 (Alaska 1972).  Planned Parenthood re-examines a woman's "right to choose" under as a liberty interest. (The word "privacy" is not even found in the opinion.) Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 846, 112 S. Ct. 2791, 2804, 120 L. Ed. 2d 674 (1992) ("The controlling word in the cases before us is 'liberty.'")  Kriesal addresses a property right violated when someone refused the requested return of a blood sample.  Kriesel, 720 F.3d at 1145.

The cases that do address privacy address interests entirely different from the interest Plaintiff seeks to protect. Myers holds that privacy includes the right to refuse medication. Myers v. Alaska Psychiatric Inst., 138 P.3d 238, 246 (Alaska 2006).  Lawrence addresses the private consensual acts of homosexuals in their own bedroom. Lawrence v. Texas, 539 U.S. 558, 563, 123 S. Ct. 2472, 2476, 156 L. Ed. 2d 508 (2003).  Neither of these interests are comparable to the choice Plaintiff made to engage in public forums to learn about his genealogy.

Interestingly, Norman-Bloodsaw supports Defendant's analysis because it addresses precisely what the Alaska Statute was attempting to prevent – conditioning employment on genetic testing for sickle cell anemia. Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1269 (9th Cir. 1998).  The case addressed the privacy violated in the instance of forced disclosure to the employer of medical and health information – items not implicated in the DNA tests here.  Id.  The case explicitly did not address third party disclosures.  Id.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 5 of 16

**Bullivant|Houser|Bailey PC**

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 5 of 16

Finally, Plaintiff's attempt to incorporate English common law is inappropriate and does not assist him. The Privacy's Other Path article discusses the specific split between American and English common law addressing privacy. Neil M. Richards & Daniel J. Solove, Privacy's Other Path: Recovering the Law of Confidentiality, 96 Geo. L. J. 123 (2007). The Privacy as Trust article advocates for a tort theory expressly noted as not currently part of American common law. Ari Ezra Waldman, Privacy as Trust: Sharing Personal Information in a Networked World, 69 U. Miami L. Rev. 559, 618 (2015). Regardless, the tort action discussed relies on a resultant articulable harm separate from the disclosure itself. Id.

Even if the tort action proposed does aid Plaintiff, his reliance on English common law is improper because America recognizes different values of privacy than the English. *Stare Decisis* requires that common law only be altered when change has evolved common law after old case law was decided. See, e.g., Planned Parenthood of Se. Pennsylvania v. Casey, 505 U.S. 833, 857-59, 112 S. Ct. 2791, 2810, 120 L. Ed. 2d 674 (1992). Here, Plaintiff seeks to flip the order and retroactively apply 1800s English case law to the American present. He cannot.

Nor does the reference to Pollard (an English breach of contract case) by a 1912 Kentucky court in Douglas alter the tenets of American common law right to privacy. In that case, a photographer who agreed to take a photograph of deceased Siamese twin children and reproduce only 12 copies, and to provide all copies to the parents of the deceased children, instead filed a copy of the photograph with the United States and obtained copyright, then made and sold several other copies. Douglas v. Stokes, 149 Ky. 506, 149 S.W. 849, 849 (1912). While that court confirmed the breach of contract ruling found in the English case of

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 6 of 16

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 6 of 16

Pollard, as both addressed the specific confidentiality clauses in contracts for portraits taken, the comment on privacy comports with what is understood to be "private" under today's common law:

> The most tender affections of the human heart cluster about the body of one's dead child. A man may recover for any injury or indignity done the body, and it would be a reproach to the law if physical injuries might be recovered for, and not those incorporeal injuries which would cause much greater suffering and humiliation.

Douglas, 149 S.W. at 850. Unlike the photographer who violated the fragile trust given by suffering parents who expressly maintained the right to control photos taken in their home by publicizing their children as freakshow exhibit, here Plaintiff complains of Defendant's airing of splices of junk DNA that have not been shown to be connected to his name, have not been shown to portray genetic information, and have already been made public by Plaintiff. Plaintiff's complaints are not of the type contemplated by American (or English) common law.

### 2. Alaskan privacy law does not protect information shared with others.

As noted by the Alaskan Supreme Court, privacy is a recent creation of law – at least in the United States - most often accredited to a law review article published in 1890. Brandeis & Warren, The Right to Privacy, 4 Harv.L.Rev. 193 (1890); Luedtke v. Nabors Alaska Drilling, Inc., 768 P.2d 1123, 1127 (Alaska 1989). Alaska's own constitutional right to privacy is even younger, having been passed in 1972. Alaska Const. art. I, § 22. Even so, it only protects against government invasion of privacy, and only in limited circumstances where absolute privacy can be expected, such as within the confines of one's home. Luedtke 768 P.2d at 1130; Ravin v. State, 537 P.2d 494, 504 (Alaska 1975).

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 7 of 16

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 7 of 16

Alaskan common law regarding privacy also does not cover the interests claimed by Plaintiff. Luedtke is Alaska's seminal case on privacy involving the testing of a worker's urine for illicit substances when the worker understood he was undergoing a test to ensure a healthy renal system as part of a physical to be permitted to work on off-shore rigs. Luedtke v. Nabors Alaska Drilling, Inc., 768 P.2d 1123, 1126 (Alaska 1989) (a second plaintiff knew what the test was, and refused to take it, resulting in termination). In noting privacy's recent and vague recognition, the Court also noted its "protean capacity to be all things to all lawyers, and, as often defined and defended, it lacks readily apparent limitations of its own." Id., 768 P.2d at 1128. In that case, the Court found that it was permissible to condition employment on a drug test, so long as the employee could expect the true ramifications of that test. Id. at 1137.

The Luedtke Court also considered a wide range of privacy rights available in tort, finding that the right of privacy was triggered by "either an unreasonable manner of intrusion, or intrusion for an unwarranted purpose." Id., (citing Sistok v. Northwestern Tel. Sys., Inc., 189 Mont. 82, 615 P.2d 176, 182 (1980) (surreptitious recording of telephone conversations may be unreasonable); Froelich v. Werbin, 219 Kan. 461, 548 P.2d 482, 485 (1976) (hair sample taken from hospital trash not invasion of privacy); Senogles v. Security Benefit Life Ins. Co., 217 Kan. 438, 536 P.2d 1358, 1362–63 (1975) (transmission of plaintiff's medical records to life insurance company justified); McLain v. Boise Cascade Corp., 271 Or. 549, 533 P.2d 343, 345–46 (1975) (surveillance of workers' compensation claimant by filming his activities outside his home does not give rise to invasion of privacy claim)). Noting that the Alaskan worker knew that his employer would be analyzing the sample for medical

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 8 of 16

Bullivant|Houser|Bailey PC

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 8 of 16

information prior to voluntarily submitting it, the Court found that no requisite "offensive intrusion" of privacy occurred. Id. at 1138.

Here, Plaintiff cannot claim harm because of an unreasonable manner of intrusion, or intrusion for an unwanted purpose. He specifically joined groups to compare data and learn more about his genealogy. He gave people passcodes for that purpose and shared his results with several people for that purpose. The purpose was achieved – he learned more about his own genealogy. Like the Plaintiff in Luedtke, who knew a battery of tests would be run but did not specifically know a drug test would be run, Plaintiff cannot now attempt to claim a privacy violation because he expected his results to be on one public website and not another.

Greywolf also provides guidance. Greywolf v. Carroll, 151 P.3d 1234, 1246 (Alaska 2007). In that case a woman who had previously shot herself in the chest threatened her mental health provider with killing him, then made shooting noises. She claimed that she had a right to privacy that was violated when her physician called authorities to investigate the threat. The court noted that she did not have a reasonable right to privacy because she could not exclude others from her room. Id. at 1246. Here, Plaintiff has not excluded people from his room. Instead, he joined 9 groups, gave 10 people the passcode to his kit, and gave his results to 25 other people, including apparent strangers. Defendant's alleged actions have not implicated privacy rights protected by Alaskan law.

B. **DEFENDANT'S ANALYSIS OF THE TYPE OF HARM CONTEMPLATED AS INJURY BY THE ALASKAN LEGISLATURE IS CONFIRMED BY THE GROWING PROGENY OF SPOKEO CASE LAW FOLLOWING SIMILAR LOGIC.**

Case law addressing Spokeo developed in the last several weeks assists Defendant. Dierdrich is on point. In this Seventh Circuit case, plaintiffs sued for solely statutory damages

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 9 of 16

Bullivant|Houser|Bailey PC

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 9 of 16

due to a bank's failure to respond to a borrower inquiry. The statute provided for "any actual damages…<u>and</u> any additional damages [up to] $2000" for "whoever failed to comply with any provision" of the statute. <u>Diedrich v. Ocwen Loan Servicing, LLC</u>, No. 15-2573, 2016 WL 5852453, at *4 (7th Cir. Oct. 6, 2016). The Court specifically noted that "[a]s the court explained in <u>Spokeo</u>, the plaintiffs must have suffered a concrete injury," and the statute did not grant damages for mere procedural violations, it <u>required an actual injury</u>. Similarly, the Alaska Statute allows for statutory damages "<u>in addition to the actual damages suffered by the person</u>." Alaska Statute § 18.13.020. Separate, actual harm is required before statutory damages apply.

<u>Nicklaw</u> is also on point. This Eleventh Circuit case addressed statutory damages for a mortgagor's failure to timely record a discharged mortgage. <u>Nicklaw v. Citimortgage, Inc.</u>, No. 15-14216, 2016 WL 5845682, at *1 (11th Cir. Oct. 6, 2016). Following <u>Spokeo</u>'s guidance, the Court considered both legal history and the judgment of the legislature to determine whether the legislature chose to elevate injuries previously considered inadequate at law. <u>Id.</u> at *3. Quoting <u>Spokeo</u>, the Court noted that the grant of a statutory right is not, in itself, an automatic grant of standing, and that a concrete injury was required even in the context of a statutory violation. <u>Id.</u> The Court was specifically convinced by <u>Spokeo</u>'s mention of that harmless dissemination of information, like the incorrect zip code, could not establish a concrete injury. Noting that the plaintiff could not establish economic damages, harm to his credit, or any transactional issues from the delay in recording, the Court found that even a risk of harm was not established, particularly because the mortgage release was ultimately recorded. <u>Id.</u> As such, there was no standing.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 10 of 16

Bullivant|Houser|Bailey PC

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 10 of 16

The parallels are strong. The values protected by the statute in Nicklaw – risk to credit and inability to release owned land – were considered and found not to be implicated. Here, the values protected by the Alaska Statute – against discrimination or forced submission of tests in relation to employment, education, or insurance – are not implicated. Like the inaccurate zip code in Spokeo or the few-month long over-display of an unpaid mortgage in Nicklaw, Plaintiff here cannot demonstrate that what was publically displayed actually harmed him. As in Nicklaw, Plaintiff is speculating about possibilities of third parties seeing information and somehow connecting it with other information in a way that might harm him. But, like Nicklaw, the "bad" information has been remedied – the publication of his name with his kit number has been removed. Moreover, Plaintiff does not contest that he could eliminate the "risk" of injury removing his anonymized results from the FTDNA and Worldfamilies sites at any time, but chooses not to. There is no actual harm, and no risk of harm. There is only speculation.

Nor does the Spokeo case law cited by Plaintiff assist him. For example, in Aranda, the Court pushed off the defendant's attempts to require a demonstration of additional harm such as loss of cell battery life or financial injury when the specific harm contemplated by Congress (unsolicited telephone marketing calls) did occur. Aranda v. Caribbean Cruise Line, Inc., No. 12 C 4069, 2016 WL 4439935, at *6 (N.D. Ill. Aug. 23, 2016). In focusing on the legislature's intent when defining the scope of "harm," that court discussed multiple district court findings under Spokeo where, despite statutory violations, no harm was found. Id. at *4-5 (citing Smith v. Ohio State Univ., 2016 WL 3182675, at *1 (S.D.Ohio 2016) (no standing under FCRA when potential employer pulled credit reports without consent but harm was not

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 11 of 16

Bullivant|Houser|Bailey PC

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 11 of 16

identified); Gubala v. Time Warner Cable, Inc., No. 15 C 1078, 2016 WL 3390415, at *1 (E.D.Wis. June 17, 2016) (no standing when intentional failure to destroy sensitive records failed to result in any harm but a violation of the Cable Communications Policy Act); Khan v. Children's Nat'l Health Sys., No. CV TDC-15-2125, 2016 WL 2946165, at *2 (D. Md. May 19, 2016) (no standing when failure to protect sensitive information led to a data breach, but plaintiffs could not prove misuse of the exposed information, instead relying on a speculated "attenuated chain of possibilities" that might lead to a risk of harm).

Similarly, the Third circuit briefly addressed Spokeo when considering the practice by Nickelodeon of installing tracking software without consent and contrary to a specific statement that it would not record web browsing information, then selling that information to Google for targeted online advertising purposes. In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 269 (3d Cir. 2016). In so doing, the Third Circuit noted that its analysis on standing for invasion of privacy made in sister litigation addressing Google was unchanged. In the Google case, that court had noted:

> What is notable about this case is how Google accomplished its tracking. Allegedly, this was by overriding the plaintiffs' cookie blockers, while concurrently announcing in its Privacy Policy that internet users could "reset your browser to refuse all cookies." Google further assured Safari users specifically that their cookie blockers meant that using Google's in-house prophylactic would be extraneous. Characterized by deceit and disregard, the alleged conduct raises different issues than tracking or disclosure alone.

In re Google Inc. Cookie Placement Consumer Privacy Litig., 806 F.3d 125, 150 (3d Cir. 2015), cert. denied sub nom. Gourley v. Google, Inc., No. 15-1141, 2016 WL 1028876 (U.S. Oct. 3, 2016). The issue was not particularly the disclosure of the children's digital footsteps when logging onto the web from home, it was the fact that, despite specifically representing

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 12 of 16

Bullivant|Houser|Bailey PC

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 12 of 16

that it would not do so, the company was secretly spying on the children. In contrast, it is clear and well-known that Defendant allows kit holders to join Surname Project Groups for the purpose of exchanging information, that the administrators of those groups volunteer their time and assist members with the comparison of the results to other data in order to learn more about one's individual genealogy, and that anonymized splices of junk DNA are on public websites. Plaintiff was not spied on. He shared his information to gain access to more data so he could learned more about his personal genealogy.

## IV.  PLAINTIFF'S TECHNICAL ATTACKS ON THIS MOTION ALSO FAIL

Fearing the substantive weight of his arguments, Plaintiff attacks procedure. The attacks are unmerited.

### A.  STANDING ANALYSIS CANNOT BE PUT OFF UNTIL A LATER DAY.

First, Plaintiff construes a legal issue as a factual issue. The argument twists on itself and doubles back again – but appears to be that whether genetic information was disclosed is "hotly disputed" (but no evidence that genetic information was disclosed has been advanced) and, because of this dispute, one cannot resolve a standing argument rooted in actual injury because there is a contested material fact as to damages.

The argument puts the cart before the horse. One cannot delay an assertion of standing unsupported by evidence by claiming one of the elements of standing is an element of the claim. "Customarily, a federal court first resolves doubts about its jurisdiction over the subject matter." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 578, 119 S. Ct. 1563, 1567, 143 L. Ed. 2d 760 (1999). The requirement that jurisdiction be established as a threshold matter is inflexible and without exception. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 95, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998). There are several reasons for the Court to consider

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 13 of 16

**Bullivant|Houser|Bailey PC**

1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 13 of 16

contested issues prior to disposing of a case on its merits. In fact, "[j]urisdiction is vital only if the court proposes to issue a judgment on the merits," Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431, 127 S. Ct. 1184, 1191–92, 167 L. Ed. 2d 15 (2007) (a court could decline for forum non convienens before addressing subject matter jurisdiction). Recent cases addressing Spokeo even note that standing elements and claim elements are one and the same. See, e.g., Diedrich v. Ocwen Loan Servicing, LLC, No. 15-2573, 2016 WL 5852453, at *3 (7th Cir. Oct. 6, 2016). A party cannot hamper a court from declining a case for lack of jurisdiction by assuming jurisdiction in the first place.

Regardless, as Plaintiff notes, the parties are more than two years into litigation and discovery, yet there is no evidentiary dispute on what Plaintiff claims as injuries or damages. Plaintiff claims no economic harm, no discrimination, and no ill-effects on his employment, insurance, or education. He does not dispute that he claims only the statutory fines as damages. The only disputes are legal – such as whether his lack of demonstrable injury (other than a desire for a $100,000 statutory award) is sufficient for standing. This is a legal analysis and is not one that relies on contested factual issues.

B.  **IT IS IMPORTANT TO CONSIDER LEGISLATIVE HISTORY WHEN AUTHORIZED BY SPOKEO AND WHEN IT CLARIFIES THE LETTER OF INTENT.**

Plaintiff is correct that ordinarily a failure to include originally drafted language in passed legislation is an indication of a determination not to adopt it. Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp. Research & Special Programs Admin., 457 F.3d 956, 962 (9th Cir. 2006) (citing Doe v. Chao, 540 U.S. 614, 627, 124 S. Ct. 1204, 1212, 157 L. Ed. 2d 1122 (2004) ("history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment.")) Plaintiff misses the point

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 14 of 16

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 14 of 16

here. Defendant argues that Spokeo advises consideration of legislative intent to "elevate" the values it desires to a legally protected status, then documents the Alaska legislature's choice to "streamline" and "limit" the bill's ambiguous language by incorporating the values discussed into the letter of intent. See Dkt. 95, p. 16-15. There is no discussion of "false" legislative history. It is guidance contemplated by the legislature.[4] Moreover, if Plaintiff desires to limit the "actual harm" elevated by the legislature from the scope first contemplated to the narrower scope found in the unanimously adopted letter of intent (which addresses only the "probable medical future" of familial bloodlines), Defendant is happy to oblige.[5] Either way, Plaintiff has not demonstrated harm contemplated by the legislature when passing the Alaska Statute.

## V. CONCLUSION

Because Plaintiff has not demonstrated concrete harm, Defendant respectfully requests dismissal of Plaintiff's claims.

DATED: November 14, 2016

                              BULLIVANT HOUSER BAILEY PC

                              By  */s/ Matthew R. Wojcik*
                                  Matthew R. Wojcik, ABA 0710071
                                  E. Pennock Gheen, *Pro Hac Vice*
                                  Holly D. Brauchli, *Pro Hac Vice*
                                  Telephone: 206.292.8930
                                  Attorneys for Defendant

4826-4657-0556.1

---

[4] See Dkt. 96-3, p. 29. "The findings and intent go into the uncodified section of the law for purpose of clarification."
[5] See Dkt. 96-3, p.16.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 15 of 16

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 15 of 16

# CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the persons listed below:

| | |
|---|---|
| Jay Edelson<br>Rafey S. Balabanian<br>Benjamin H. Richman<br>J. Dominick Larry<br>David I. Mindell<br>Courtney C. Booth<br>Edelson PC<br>350 North LaSalle Street, Suite 1300<br>Chicago, IL  60654<br>jedelson@edelson.com<br>rbalabanian@edelson.com<br>brichman@edelson.com<br>nlarry@edelson.com<br>dmindell@edelson.com<br>cbooth@edelson.com<br>Attorneys for Plaintiff | Douglas K. Mertz<br>319 Seward Street, Suite 5<br>Juneau, Alaska 99801<br>dkmertz@ak.net<br>Attorneys for Plaintiff |

Timothy J. Petumenos
Law Offices of Tim Petumenos
2550 Denali Street, Suite 1502
Anchorage, Alaska  99503
timp@tpaklaw.com
Attorneys for Defendant

/s/ Matthew Wojcik
Matthew Wojcik

DEFENDANT'S REPLY ISO MOTION TO DISMISS
Page 16 of 16

Bullivant|Houser|Bailey PC
1700 Seventh Avenue, Suite 1810
Seattle, Washington 98101-1397
Telephone: 206.292.8930

Case 1:14-cv-00004-SLG   Document 114   Filed 11/14/16   Page 16 of 16