**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| MICHAEL COLE, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-0004-SLG |
| *Plaintiff*, | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| GENE BY GENE, LTD., a Texas limited liability company, | |
| *Defendant*. | |

# TABLE OF CONTENTS

RELIEF REQUESTED AND EVIDENCE RELIED UPON ........................................................ 1

INTRODUCTION .................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT AND STATEMENT OF POINTS AND AUTHORITIES ............................................. 6

      I.      The Genetic Privacy Act is not vague, as confirmed by Gene by Gene's repeated acceptance and use throughout this case of the very terms it now challenges. ............. 7

      II.     The Genetic Privacy Act does not impose an unconstitutionally excessive punitive damages regime, because it provides for statutory, rather than punitive, damages. ....................................................................................................... 15

           A.     Gene by Gene's damages challenge is premature and unsupported. .......... 16

           B.     The GPA provides for statutory, rather than punitive, damages. ............... 18

           C.     The GPA's damages are not excessive under Williams. ................................ 21

CONCLUSION ........................................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*131 Main Street Assocs. v. Manko*,
    897 F. Supp. 1507 (S.D.N.Y. 1995)..............................................................10

*Aetna Life Ins. Co. v. Haworth*,
    300 U.S. 227 (1937)..............................................................................................17

*Am. Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp.*,
    456 U.S. 556 (1982)....................................................................................10, 15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................6

*Bachlet v. State*, 941 P.2d 200,
    (Alaska Ct. App. 1997) ........................................................................................10

*BMW of N. Am. v. Gore*,
    517 U.S. 559 (1996)..............................................................................15–16, 19

*Broadrick v. Oklahoma*,
    413 U.S. 601 (1973)..............................................................................................15

*Buchanan v. Maine*,
    469 F. 3d 158 (1st Cir. 2006)............................................................................16

*California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*,
    215 F.3d 1005 (9th Cir. 2000) ....................................................................20–21

*Capitol Records, Inc. v. Thomas-Rasset*,
    692 F.3d 899 (8th Cir. 2012)............................................................19, 21, 22, 23

*Cass Cnty. Music Co. v. C.H.L.R., Inc.*,
    88 F.3d 635 (8th Cir. 1996) ..............................................................................23

*Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*,
    545 F. Supp. 2d 768 (N.D. Ill. 2008) ........................................................22, 23

*City of Chicago v. Morales*,
    527 U.S. 41 (1999)..................................................................................................7

*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*,
    259 F.3d 1186 (9th Cir. 2001) ..........................................................................23

*Corns v. Laborers Int'l Union of N. Am.*,
709 F.3d 901 (9th Cir. 2013) ..........................................................6

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) .......................................................7–8

*Evanston Ins. Co. v. Gene by Gene, Ltd.*,
155 F. Supp. 3d 706 (S.D. Tex. 2016) ...........................................18

*F.W. Wollworth Co. v. Contemporary Arts*,
344 U.S. 288 (1952)........................................................................23

*Forbes v. Napolitano*,
236 F.3d 1009 (9th Cir. 2000) ........................................................7

*Furnace v. Sullivan*,
705 F.3d 1021 (9th Cir. 2015) .....................................................6–7

*Giaccio v. Pennsylvania*,
382 U.S. 399 (1966)..........................................................................7

*Goguen v. Smith*,
471 F.2d 88 (1st Cir. 1972).............................................................8

*Grayned v. City of Rockford*,
408 U.S. 104 (1972).......................................................................7, 9

*Gulf Oil Co. v. Bernard*,
452 U.S. 89 (1981)..........................................................................16

*Harris v. Mexican Specialty Foods, Inc.*,
564 F.3d 1301 (11th Cir. 2009) .........................................16, 17, 20

*Hightower v. City & Cty. of San Francisco*,
77 F. Supp. 3d 867 (N.D. Cal. 2014) ...............................................8

*Legg v. Spirit Airlines, Inc.*,
315 F.R.D. 383 (S.D. Fla. 2015)...............................................17–18

*Lyng v. Nw. Indian Cemetary Protective Ass'n*,
485 U.S. 439 (1988)........................................................................16

*Malibu Media LLC v. Warner*,
No. 14-cv-1580, 2016 WL 1394331 (M.D. Fla. Apr. 8, 2016) ...................16–17

*Meyer v. Cahoon*,
    110 F.3d 69 (9th Cir. 1997) ................................................................7–8

*Missouri P. Ry. Co. v. Humes*,
    115 U.S. 512 (1885)...............................................................................21

*Perez-Farias v. Glob. Horizons, Inc.*,
    499 F. App'x 735 (9th Cir. 2012) .......................................................20

*Perrin v. U.S.*,
    444 U.S. 37 (1979)..................................................................................10

*Peter v. State*,
    531 P.2d 1263, 1267 (Alaska 1975)....................................................21

*Phillips Randolph Enters., LLC v. Rice Fields*,
    No. 06-cv-4968, 2007 WL 129052 (N.D. Ill. Jan. 11, 2007)......................22–23

*Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*,
    No. 12-cv-22330, 2014 WL 7366255 (S.D. Fla. Dec. 24, 2014)....................18

*Planned Parenthood v. Arizona*,
    718 f.2d 938 (9th Cir. 1983) ........................................................2, 7, 15

*Provine v. Office Depot, Inc.*,
    No. 11-cv-903, 2012 WL 2711085 (N.D. Cal. July 6, 2012) ............................17

*Sony BMG Music Entm't v. Tenenbaum*,
    660 F.3d 487 (1st Cir. 2011) ..........................................................16, 17

*Sony BMG Music Entm't v. Tenenbaum*,
    719 F.3d 67 (1st Cir. 2013) ............................................................19, 20

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ...................................................................6

*St. Louis, I.M. & S. Ry. Co. v. Williams*,
    251 U.S. 63 (1919)................................................................2, 20, 21, 22

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).........................................................................15–16

*Stoianoff v. State of Mont.*,
    695 F.2d 1214 (9th Cir. 1983) ............................................................7, 8

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 5 of 32

*Transamerica Leasing, Inc v. Compania Anonima Venezolana de Navegacion,*
   93 F.3d 675 (9th Cir. 1996) ........................................................................21

*Tucson Woman's Clinic v. Eden,*
   379 F.3d 531 (9th Cir. 2004) ...................................................................7, 8

*Two Plus Two Pub., LLC v. Jacknames.com,*
   572 F. App'x 466 (9th Cir. 2014) ...................................................... *passim*

*United States v. Citrin,*
   972 F.2d 1044 (9th Cir. 1992) ....................................................................21

*United States v. Giblert,*
   813 F.2d 1523 (9th Cir. 1987) ....................................................................15

*Verizon California Inc. v. Onlineinc, Inc.,*
   No. 08-cv-2832, 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) ..............22, 23

*Waters–Pierce Oil Co. v. State of Texas,*
   212 U.S. 86 (1909)................................................................................21–22

**Statutory Authority**

Alaska Stat. § 18.13.010 ..........................................................5, 8, 14, 15

Alaska Stat. § 18.131.020 ...........................................................9, 17, 22

Alaska Stat. § 18.13.100 ...........................................................8, 9, 12, 13

**Constitutional Provisions**

U.S. Const., Amd. 14

**Other Authority**

Black's Law Dictionary (10th ed. 2014)................................................11, 14

Fed. R. Civ. P. 56................................................................................1

Merriam-Webster, https://www.merriam-webster.com/dictionary/disclose
   (last accessed Dec. 5, 2016) ...........................................................11, 14

## RELIEF REQUESTED AND EVIDENCE RELIED UPON

Defendant Gene by Gene, Ltd. filed its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, (dkt. 109), seeking dismissal with prejudice of Plaintiff Michael Cole's claim under Alaska's Genetic Privacy Act, Alaska Stat. §§ 18.13.010–100 ("the GPA"), because (a) the GPA is supposedly unconstitutionally vague, and (b) the GPA's statutory damages scheme is unconstitutionally excessive. As explained below, Defendant's motion falls short under Federal Rule 56 and the Supreme Court's tests for vagueness and excessive damages awards. As such, Plaintiff respectfully requests that this Court (1) deny Defendant's motion in its entirety, and (2) award any other and further relief that it deems reasonable and just.

Plaintiff's opposition to Defendant's motion is based upon this memorandum, the Declaration of J. Dominick Larry, the exhibits thereto, and the materials submitted by Defendant in conjunction with the filing of its motion.

## INTRODUCTION

Defendant filed its Answer in this case more than two years ago. (Dkt. 20.) Since then, the Parties have served numerous sets of written discovery requests and responses, exchanged hundreds of thousands of pages of responsive documents, taken eleven depositions, and (more recently) briefed and argued before the Court issues related to various discovery disputes and Defendant's motion to dismiss for lack of Article III standing. Despite all that, Defendant has only now decided that it has no idea what any of the GPA's material terms mean, and has moved for summary judgment arguing that the GPA is unconstitutionally vague. Attempting to make up for that delay, Defendant also asserts a fatally premature basis for its motion. That is, before any damages award, and before even a finding of liability, Gene by Gene asks the Court to hold the GPA's statutory damages regime unconstitutionally excessive.

To be clear, the relief Gene by Gene asks for is extraordinary. The Ninth Circuit has explained that a statute is only void for vagueness if people "of common intelligence *must necessarily* guess at their meaning *and* differ as to their application." *Planned Parenthood v. Arizona*, 718 f.2d 938, 947 (9th Cir. 1983) (emphasis added). And the Supreme Court has instructed that statutory damages are unconstitutionally excessive "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919). To that end, Plaintiff was unable to identify *a single* instance of a statutory damage award being held unconstitutionally excessive under *Williams.*

In any event, Gene by Gene's motion gives the Court no reason to grant the exceptional relief sought. Gene by Gene's vagueness argument is, in a nutshell, that because some of the terms in the statute require interpretation, it had no way of knowing how to behave. Setting aside the fact that Gene by Gene was unaware of the GPA until this lawsuit was filed (and therefore wouldn't have adjusted its conduct regardless of how the statute was phrased), Gene by Gene's argument is nonsensical. If the need for interpretation were enough to invalidate any statute on vagueness grounds, no statutes would remain. Regardless, each of the supposedly vague terms identified by Defendant can be defined by resorting to ordinary tools of statutory interpretation, and several of the terms challenged have in fact been used freely by Defendant throughout this litigation. As such, its void-for-vagueness argument fails.

Gene by Gene's excessive-damages argument fares even worse. Gene by Gene devotes the majority of its motion to an analysis of the GPA's statutory damages provision under the Supreme Court's standard for assessing punitive damages awards. The problem with that argument is that "statutory damages . . . are not equivalent to punitive damages," *Two Plus Two*

*Pub., LLC v. Jacknames.com*, 572 F. App'x 466, 467 (9th Cir. 2014). Reflecting that basic

principle, the Supreme Court's test for statutory damages is entirely distinct from its test for

punitive damages, as appellate courts throughout the country have recognized. And when

analyzed under the appropriate standard, the Alaskan legislature was plainly within its rights to

implement the GPA's statutory damages regime as it did.

For these reasons, and as explained more fully below, Gene by Gene's summary

judgment motion should be denied.

## STATEMENT OF FACTS

In the summer of 2013, Michael Cole wanted to learn more about his family history, so

he ordered a DNA testing kit from familytreedna.com, a website operated by Gene by Gene.

(Dkt. 105-1 at 32:6–10.) The kit allows consumers to take DNA tests to learn more about their

genealogy. (*Id.*) Cole ordered a testing kit from Gene by Gene, and, while doing so, was

presented with the opportunity to join one or more of Gene by Gene's surname and geographical

projects (hereinafter, "Projects"). (*Id.* at 32:14–17.) Joining a Project would allow Cole to

connect with other people sharing his or his ancestors' surnames (or their derivatives) or with

similar geographical histories, learn more about his family history, and contact distant relatives.

(Dkt. 106, Ex. B. at 25:11–20.) To that end, Cole joined nine Projects, (*see* dkt. 106, Ex. C), and

understood that when he joined the Project, the administrator of the Project (a volunteer

genealogy enthusiast) would have access to his name, contact information, and testing kit

number, to contact him as needed. (*See* dkt. 95 at 4; dkt. 106, Ex. B at 62:24.)

Shortly after ordering, Cole received Gene by Gene's DNA testing kit by mail. (Dkt.

106, Ex. B at 29:25–30:9.) The kit contained a welcome letter, DNA swab materials, and a

release form that would allow Plaintiff to be notified if he was a close genetic match of another

customer, and, if so, would provide him and his "genetic match" with each other's contact information. (*Id.*; dkt. 106, Ex. C.) Thus, based on the information provided to him by Gene by Gene, Cole understood that project administrators and his genetic matches would both have his contact information, and that he could share his DNA test results with potential relatives if he so chose. (Dkt. 105-1 at 57:23–58:11; 60:20–23; 67:12–15.) Cole then took the DNA test, signed the release form, and mailed his kit back to Gene by Gene for processing. (*Id.* at 38:25–39:4.)

In January 2014, after receiving an excess of junk email, Cole searched the internet for his email address to see if it had been publicly posted. (Dkt. 96-2, Ex. 2, at 8; Dkt. 105-1 at 81:14–19.) To his surprise, the top result was on a website called Rootsweb, "a company unrelated to Defendant." (Dkt. 95 at 4; *see* Dkt. 96-2, Ex. 2 at 8.) Cole clicked the link and found that an administrator of one of the Projects Cole had joined had chosen to use Rootsweb to host the Project's website, even though during the signup process, nothing had informed Cole that any of the Projects he joined would be hosted outside of Gene by Gene's own website. (Dkt. 106, Ex. D at 114:19–23.) Worse still, Cole found that the project administrator had posted Cole's name, email address, DNA testing kit number, and grandmother's last name publicly on Rootsweb. (Dkt. 96-2, Ex. 2 at 8.)

Concerned that the public exposure of his name and email in conjunction with his confidential kit number could have serious implications on his genetic privacy, Cole then searched the internet for his kit number. (Dkt. 105-1 at 79:1–81:19, 111:1–113:1.) To his surprise, Cole found that each of the Projects he had joined had public websites—some hosted by Gene by Gene through its familytreedna.com website, and some hosted on third party websites—and that those websites contained his DNA testing kit number *along with his complete DNA testing results*. (*Id.*) To that point, Gene by Gene had given Cole no reason to believe that joining a

project would result in the public posting of his DNA testing results. (*Id.* at 36:15–37:23.) From Cole's perspective, it was as if he had joined a science-fiction book club at his local library, and as a result, the library had shared not just his name and interest in science fiction with the club president, but a list of every book he had ever checked out, which the president then posted publicly on the internet. As Plaintiff (correctly) explained at his deposition, the GPA

> says that DNA in Alaska is personal property. "Personal property" means that you have to get permission to take something. You can't just take it and give it away or post it without consent or permission.
>
> That personal property has value, unknown – you know, it's something that was passed down generation to generation. And so what I'm saying is that the disclosure was taking something that didn't belong to Family Tree and handing it out.

(*See* Excerpts of the Transcript of the Deposition of Plaintiff Michael Cole ("Cole Dep."), Ex. 1 at 108:7–18.)[1]

Suspecting that his experience was not unique, Cole filed suit against Gene by Gene on May 13, 2014, alleging that Defendant's sharing of his DNA testing results violated Alaska's Genetic Privacy Act, Alaska Stat. § 18.13.010, and seeking statutory damages on behalf of himself and a class of similarly situated Alaskan residents. (Dkt. 1.) Through two years of discovery, Plaintiff was able to confirm that every time a Gene by Gene customer like himself joined a Project, that individual's name, email address (if available), kit number, *and full DNA testing results* were disclosed to the Project administrator and any co-administrators, *and* that by default, the kit number and test results were then posted on the Project website. (Dkt. 106, Ex. D. at 90:10–14.)

Discovery also confirmed that for every Project with a website hosted on

---

[1]     Unless explicitly noted otherwise, all references herein to numbered exhibits are to the Exhibit to the Declaration of J. Dominick Larry, filed contemporaneously herewith.

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 11 of 32

WorldFamilies.net (one of the more popular third-party hosting websites for Gene by Gene Projects), Gene by Gene automatically disclosed the project members' contact information, kit numbers, and testing results to Terry Barton, the owner and operator of WorldFamilies.net. (Dkt. 106, Ex. B at 123:20–124:3, 124:22–125:1.) To be clear, WorldFamilies.net is a completely separate entity from Gene by Gene. (*See* dkt. 106, Ex. D at 132:6–133:5, 139:6–140:15 (explaining nature of relationship between Gene by Gene and WorldFamilies).) Even Gene by Gene's employees recognized that its disclosure practices went beyond customers' expectations and permissions, noting that even if it obtained consent to display customers' test results on its own website (which Plaintiff disputes), "**neither that consent or our privacy settings cover or affect the public display of their results on WorldFamilies**." (Dkt. 106, Ex. E (emphasis in original).)

### ARGUMENT AND STATEMENT OF POINTS AND AUTHORITIES

Summary judgment is appropriate only "when, viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 907 (9th Cir. 2013). In considering whether summary judgment should be entered, courts "do[] not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must determine whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In other words, summary judgment is inappropriate if "as to any given material fact, evidence produced by the moving party . . .

conflicts with evidence produced by the nonmoving party." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2015).

Here, Gene by Gene's arguments fall into two broad categories. The first is that the GPA is unconstitutionally vague in terms of what it prohibits, and that the vagueness is amplified by the statutory damages available. The second is that the GPA's statutory damages are improper because (a) they are unconstitutionally excessive, and (b) are prohibited by Alaska's punitive damages statute. As explained below, Defendant is mistaken on each front: the GPA gives fair notice to potential violators of its scope and the conduct proscribed; the damages challenge is wholly premature and unsupported by evidence; and the GPA's damages provision is neither punitive nor excessive, nor could it be in conflict with Alaska's punitive damages statute. As such, Defendant's summary judgment motion fails both procedurally and substantively.

I.      **The Genetic Privacy Act is not vague, as confirmed by Gene by Gene's repeated acceptance and use throughout this case of the very terms it now challenges.**

Gene by Gene complains that the GPA is incomprehensibly vague, and therefore unconstitutional. However, as the Ninth Circuit has noted:

> The Fourteenth Amendment is violated by laws so vague that persons "of common intelligence must necessarily guess at their meaning and differ as to their application." *Planned Parenthood v. Arizona,* 718 F.2d 938, 947 (9th Cir. 1983); *see also Forbes v. Napolitano,* 236 F.3d 1009, 1011 (9th Cir. 2000). A law is unconstitutionally vague if it fails to provide a reasonable opportunity to know what conduct is prohibited, *id.* (citing *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966)), or is so indefinite as to allow arbitrary and discriminatory enforcement, *id.* (citing *City of Chicago v. Morales,* 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)). On the other hand, "we can never expect mathematical certainty from our language." *Grayned v. City of Rockford,* 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

*Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 554 (9th Cir. 2004). "Moreover, the mere fact that a statute uses some general legal language, like 'reasonably' and 'specific legitimate reason' does not make it so vague as to be unconstitutional." *Meyer v. Cahoon*, 110 F.3d 69 (9th Cir.

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 13 of 32

1997) (citing *Easyriders Freedom F.I.G.H.T. v. Hannigan,* 92 F.3d 1486, 1493-94 (9th Cir.

1996); *Stoianoff v. State of Mont.,* 695 F.2d 1214, 1220–22 (9th Cir. 1983). "All that [the Court]

must find to sustain the facial constitutionality of the Act is a single clear application of the Act

to the [defendant.]" *Stoianoff*, 695 F.2d at 1220.[2]

      That standard in mind, the GPA plainly provides Gene by Gene with "a reasonable

opportunity to know what conduct is prohibited." *Tucson Woman's Clinic*, 379 F.3d at 554. The

GPA creates a simple prohibition against any person:

> collect[ing] a DNA sample from a person, perform[ing] a DNA analysis on a sample,
> retain[ing] a DNA sample or the results of a DNA analysis, or disclos[ing] the results
> of a DNA analysis unless the person has first obtained the informed and written
> consent of the person, or the person's legal guardian or authorized representative,
> for the collection, analysis, retention, or disclosure.

Alaska Stat. § 18.13.010(a)(1).[3] As to informed consent, the GPA offers further clarity, stating

that a "general authorization for the release of medical records or medical information may not

be construed as the informed and written consent required by this section." *Id.* § 18.13.010(c).

The statute also provides definitions of the more technical or specialized terms used therein. For

instance, it defines DNA as "deoxyribonucleic acid, including mitochondrial DNA,

complementary DNA, and DNA derived from ribonucleic acid." *Id.* § 18.13.100(1).[4] It also

defines DNA analysis as:

> DNA or genetic typing and testing to determine the presence or absence of genetic
> characteristics in an individual, including tests of nucleic acids or chromosomes in
> order to diagnose or identify a genetic characteristic; "DNA analysis" does not
> include a routine physical measurement, a test for drugs, alcohol, cholesterol, or the
> human immunodeficiency virus, a chemical, blood, or urine analysis, or any other

---

[2]    Separately, "[a]s a threshold matter, there is no analytic or legally operative distinction
between an as-applied vagueness challenge and a facial vagueness challenge." *Hightower v. City
& Cty. of San Francisco*, 77 F. Supp. 3d 867, 886 (N.D. Cal. 2014) (citing *Goguen v. Smith,* 471
F.2d 88, 94 (1st Cir. 1972) aff'd, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)).
[3]    The GPA creates several exemptions from that prohibition, none of which are asserted in
Gene by Gene's motion.
[4]    Gene by Gene does not contend that the definition of DNA is vague.

diagnostic test that is widely accepted and in use in clinical practice;

Alaska Stat. § 18.13.100(2). In turn, the GPA also defines "genetic characteristic" to include

a gene, chromosome, or alteration of a gene or chromosome that may be tested to determine the existence or risk of a disease, disorder, trait, propensity, or syndrome, or to identify an individual or a blood relative; "genetic characteristic" does not include family history or a genetically transmitted characteristic whose existence or identity is determined other than through a genetic test.

Alaska Stat. Ann. § 18.13.100(3).

Finally, the GPA provides a civil remedy provision, allowing "[a] person" to "bring a civil action against a person who collects a DNA sample from the person, performs a DNA analysis on a sample, retains a DNA sample or the results of a DNA analysis, or discloses the results of a DNA analysis in violation of this chapter." *Id.* § 18.131.020. In addition to actual damages, the person suing may recover statutory damages of $5,000, "or, if the violation resulted in profit or monetary gain to the violator, $100,000." *Id.*

Gene by Gene raises a number of questions regarding the GPA's meaning, in an attempt to show "that, depending on how [certain terms] are construed, could make or break Plaintiff's case (and, correspondingly, condemn Defendant to bankruptcy)." (Defendant's Motion for Summary Judgment, Dkt. 109 ("Mtn.") at 27.) The problem with this argument should be apparent on its face: every law that forms the basis of a complaint is subject to interpretation that could "make or break Plaintiff's case." (*Id.*) That is not a sign of unconstitutional vagueness so much as it is the inevitable consequence of the lack of "mathematical certainty [in] our language." *Grayned*, 408 U.S. at 110. Nonetheless, each of the questions posed by Defendant can be easily resolved through the common tools of statutory interpretation, and through Defendant's own statements in this case.

***Person.*** Problematically, according to Gene by Gene, the GPA governs "persons" without defining that term. (*See* Mtn. at 28 ("Who is a 'person' under the statute?").) Because the

GPA provides no alternative definition, "person" is "interpreted as taking [its] ordinary, contemporary, common meaning." *See Bachlet v. State*, 941 P.2d 200, 205 (Alaska Ct. App. 1997) (quoting *Perrin v. U.S.*, 444 U.S. 37, 42 (1979)). Defendant showed an understanding of this basic term in its first set of discovery requests, where it reasonably defined "person" in accordance with its common meaning as "any natural person, corporation, association, partnership, organization, or other form of legal entity," (*see* Defendant's First Set of Discovery Requests, Ex. 2, at 3). In its second set of discovery requests, Defendant even felt comfortable enough to use the term without providing a definition, (*see* Defendant's Amended Second Set of Discovery Requests, Ex. 3, at 2, 5–8, 11, 29, 32). And, ironically enough, the Fourteenth Amendment (on which Defendant relies), uses "person" in the same manner Gene by Gene questions in the GPA. *See* U.S. Const., Amd. 14 ("No state shall . . . deprive any *person* of life, liberty, or property without due process of law, nor deny to any *person* . . . the equal protection of the laws.") (emphasis added). Thus, the Court cannot take seriously Gene by Gene's objection that the GPA's use of the term "person" without a definition is unconstitutionally vague.

Defendant also asks if "typical rules of agency apply?" Again, absent express statutory departure from traditional agency principles, they do. *See 131 Main Street Assocs. v. Manko*, 897 F. Supp. 1507, 1533 (S.D.N.Y. 1995) ("[T]he Supreme Court accepted the proposition that general principles of agency law apply absent Congressional intent to the contrary.") (citing *Am. Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 569 (1982)).

Thus, the plain language is clear: Gene by Gene is a person governed by the statute, and traditional agency principles apply.[5]

---

[5]     Defendant also asks "[i]f an entity discloses information to its agent, is that considered a disclosure to a new 'person,' or is it considered a viewing by the 'same' person?" (Mtn. at 28.) That would depend on whether the disclosure was within the scope of the agency relationship.

***Disclose.*** Gene by Gene is also confused by the word "disclose." (Mtn. at 27.) Gene by Gene claims to be unsure whether the word "disclosure" requires "publication" as in a libel action or "public disclosure" (it doesn't, although both examples would be disclosures). (*Id.*) Dictionary definitions are helpful here. Black's defines "disclose" as "[t]o make (something) known *or* public; to show (something) after a period of inaccessibility or of being unknown; to reveal." Disclose, Black's Law Dictionary (10th ed. 2014) (emphasis added); *see also* Disclosure, Black's Law Dictionary (10th ed. 2014) ("The act or process of making known something that was previously unknown; a revelation of facts."). Webster's takes a similar view, defining "disclose" as "to expose to view" or "to make known or public." *Disclose*, Merriam-Webster, https://www.merriam-webster.com/dictionary/disclose (last accessed Dec. 5, 2016). Thus, the common meaning of "disclose" is well-settled.

Were there any true confusion regarding its meaning, however, Gene by Gene presumably would have raised it before now. Instead, Defendant repeatedly and freely used "disclose" in its discovery responses,[6] in its own discovery requests,[7] and in its representatives'

---

[6] *See* Gene by Gene, Ltd.'s Amended Responses to Plaintiff Michael Cole's Second Set of Requests for Production of Documents, Ex. 4, at 1 (objecting to having produced many documents "which are irrelevant to the alleged *disclosure* in this lawsuit," and repeatedly objecting to requests "not reasonably calculated to lead to the discovery of admissible evidence regarding, Plaintiff's claims against Defendant for nonconsensual *disclosure* of genetic information of its Alaskan customers who are similarly situated to Plaintiff") (emphasis added); *id.* at 7–9 (repeatedly failing to object to meaning of "disclosure" in Requests for Production); Defendant's Answers to Plaintiff's First Set of Interrogatories, Ex. 5, at 16 (failing to object to use of "disclosure" in response to interrogatory seeking to "Identify and Describe all policies and procedures, written or oral, Relating To the disclosure of any Genetic Information contained in any of your Databases to any third party during the Relevant Time Period"), 20–23 (similarly failing to object to use of "disclosed" in responding to interrogatories), 25–26 (same, and also objecting on basis that information sought was "not relevant to Mr. Cole's claims, which concern the alleged disclosure of genetic information and the Alaska Genetic Privacy Act").
[7] *See* Ex. 3, Interrogatory No. 11; *id.*, Requests for Admission Nos. 15–17, 21–23, 29–31, 37–39, 45–47, 53–55, 61–63, 69–71, 76–87.

---

Rule 30(b)(6) depositions.[8] Thus, there is no room for doubt that when a person (like Gene by Gene) makes an individual's genetic information known to someone who previously did not know of it (as it did here, *see supra* at 4–6), it has *disclosed* that person's genetic information.[9]

    ***Genetic Information.*** Gene by Gene concedes that "genetic information" is a defined term under the GPA, but takes issue with its definition. Specifically, Gene by Gene is unsure whether its tests "identify an individual or a blood relative," (which would make them "genetic information"), or test for "family history or a genetically transmitted characteristic whose existence or identity is determined other than through a genetic test" (which is not "genetic information"). *See* Alaska Stat. § 18.13.100(3). To start, Gene by Gene admits that one of the primary purposes of its testing service is "to identify . . . blood relative[s]." (*See* Mtn. at 4–6; *see also* Excerpts of the Transcript of the Deposition of Bennett Greenspan ("B. Greenspan Dep."), Ex. 6, at 25:15–20, 30:13–16, 103:16–19.) Moreover, the exclusionary language in the definition of "genetic information" is clearly inapplicable, as the information it disclosed about Plaintiff was obtained "through a genetic test." (*See* Dkt. 20, at ¶ XII ("Defendant admits that Family Tree DNA offers genetic testing services including marketing and selling DNA tests to consumers. . . ."); B. Greenspan Dep., Ex. 6, at 14:24–15:2.)[10]

---

[8]    *See* Excerpts of the Transcript of the Deposition of Max Blankfeld ("Blankfeld Dep."), Ex. 7, at 112:23–24 ("The person that did not sign the release would not have their information disclosed."). It is also notable that Gene by Gene designated two witnesses to testify regarding its "disclosure of individuals' Genetic Information to third parties by any means, the recipients of such disclosures, and the processes by which individuals provide such information." (*See id.* at 10:19–23; *id.*, Ex. 2; *see also* Excerpts of the Transcript of the Deposition of Elliott Greenspan ("E. Greenspan Dep."), Ex. 8, at 10:7–15; *id.*, Ex. 2.)

[9]    Gene by Gene's other question—"Because 'disclosure' often includes a finding of intent, or express endorsement by an agent's superior, did the legislature mean to include such a finding here"—to the extent sense can be made of it, seems to be a question about the scope of agency liability rather than the definition of "disclose."

[10]    In the supporting declaration of Bennett Greenspan, Mr. Greenspan asserts that

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 18 of 32

And as with its argument regarding the term "disclose," one would have expected Gene by Gene to express some confusion regarding the meaning of "genetic information" prior to the summary judgment stage of these proceedings. Instead, Defendant repeatedly responded to Plaintiff's use of that phrase during discovery, and even used it itself. (*Compare* Plaintiff Michael Cole's First Set of Interrogatories to Defendant Gene by Gene, Ltd., Ex. 9, at 4 (defining "Genetic Information" in accordance with § 18.13.100) *and* Defendant's Answers to Plaintiff's First Set of Interrogatories, Ex. 5, at 2 (objecting to certain defined terms, but not "Genetic Information"); *see also id*. at Ans. No. 2 (responding at length to interrogatory seeking identification and description of "every database of Your Customers' Genetic Information that You maintain . . . ."), Ans. No. 5 (answering interrogatory seeking to "Identify and Describe all policies and procedures, written or oral, Relating To the disclosure of Genetic Information contained in any of your Databases to any third party during the Relevant Time Period"), Ans. No. 9 (answering interrogatory seeking to "Identify each and every Person to whom You shared, sold, transmitted, or otherwise disclosed Class Members' Genetic Information, in any form, during the Relevant Time Period, regardless of whether you believe such disclosures were lawful."), Ans. No. 10 (admitting that "[p]otential class members' genetic information was shared with the individuals identified in Defendant's response to Interrogatory No. 9 . . . .").)[11]

---

"*genealogy* . . . is a family history, and particular relatives are determined by combining data from 'other than' genetic tests." (Dkt. 110, ¶ 11 (emphasis added).) But it is not "genealogy" that is at issue here; it is Defendant's genetic tests. And Mr. Greenspan admits that Gene by Gene's tests "identify . . . blood relatives," (Alaska Stat. 18.13.100(3)), even if further information is needed to discern the exact nature of the relationship. (*See*, *e.g.*, dkt. 110, ¶ 9.)

[11]     It must be noted that while Bennett Greenspan asserts confusion regarding the meaning of "genetic information," (*see* dkt. 110, ¶ 11), his business partner Max Blankfeld apparently understood the term well enough to verify under oath the answers to multiple Interrogatories using the term "genetic information." (*See* Defendant's Answers to Plaintiff's First Set of Interrogatories, Ex. 5, at 30.)

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 19 of 32

**Informed and Written Consent.** Gene by Gene is further confused by the requirement

that consent to disclosure be both informed and written. The latter portion is self-explanatory:

consent must be in writing. As to "informed," Webster's defines it as "having information" or

being "based on possession of information." *See Informed*, Merriam-Webster,

https://www.merriam-webster.com/dictionary/informed (last accessed Dec. 7, 2016). And the

GPA helpfully also excludes any "general authorization for the release of medical records or

medical information" from constituting informed and written consent. Alaska Stat.

§ 18.13.010(c). Thus, any informed consent, given in writing and separate from a general

medical release form, would suffice. *See*, *e.g.*, Informed consent, Black's Law Dictionary (10th

ed. 2014) ("A person's agreement to allow something to happen, made with full knowledge of

the risks involved and the alternatives."). Again, the mere fact that the GPA requires

interpretation does not render it vague; all statutes require interpretation.[12]

       **Resulted in profit or monetary gain.** Despite its substantial corporate resources, (*see* B.

Greenspan Dep., Ex. 6, at 16:22–24 (noting that Gene by Gene has "between 90 and 100"

employees)), Gene by Gene feigns unfamiliarity with the term "profit." (*See* Mtn. at 28 ("What is

'profit?' . . . What is 'monetary gain?'").) Again, the dictionary offers the answer. *See* Profit,

Black's Law Dictionary (10th ed. 2014) ("The excess of revenues over expenditures in a

business transaction."); *see also* Monetary, Black's Law Dictionary (10th ed. 2014) ("Of,

relating to, or involving money."). As to its question "What needs to result in profit," the answer

is again self-evident from the statute: collecting a DNA sample, performing a DNA analysis on a

---

[12]     Gene by Gene makes much of the legislature supposedly calling on the Department of
Health and Social Services to provide a "definition by regulation" for "informed and written
consent," and that the Department has failed to do so. (Mtn. at 10, 27.) The GPA does no such
thing. Instead, the legislature simply authorized the Department to create a standardized
informed-consent form for businesses to use if they so desired. *See* Alaska Stat. 18.13.010(c).

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 20 of 32

sample, retaining a DNA sample or results of DNA analysis, or disclosing the results of DNA analysis, without the "informed and written consent of the person . . . for the collection, analysis, retention, or disclosure." Alaska Stat. 18.13.010(a)(1).

*Profit or monetary gain to the violator.* Finally, Gene by Gene asks whether rules of agency apply in determining who must profit and who will be liable. As discussed above, because the legislature did not specifically disregard ordinary agency principles, they apply. *Am. Soc. of Mechanical Engineers, Inc.*, 456 U.S. at 569.

As demonstrated through the simple resolution of Gene by Gene's questions through ordinary tools of statutory interpretation, persons "of common intelligence" are not required to guess at the GPA's meaning. Rather, they can rely on ordinary usage and dictionary definitions to determine the legality of their conduct. *See Planned Parenthood*, 718 F.2d at 947.[13] Indeed, as shown above, Gene by Gene was able to repeatedly understand and use many of the very terms it now challenges throughout the discovery process. Accordingly, Gene by Gene's void-for-vagueness challenge fails.

## II. The Genetic Privacy Act does not impose an unconstitutionally excessive punitive damages regime, because it provides for statutory, rather than punitive, damages.

In addition to its vagueness challenge, Gene by Gene makes a misplaced challenge to the GPA's damages provision: it argues—prior to the award of even a dollar in damages or any finding of liability—that the damages the GPA allows for are unconstitutionally excessive. Specifically, Gene by Gene makes the novel argument that the GPA imposes a punitive damages regime, that it is unconstitutional under the Supreme Court's rulings in *BMW of N. Am. v. Gore*,

---

[13] And "[e]ven if [the GPA's] language could be said to lack specificity that alone would not render it void" because "[w]ords inevitably contain germs of uncertainty.'" *United States v. Giblert*, 813 F.2d 1523, 1530 (9th Cir. 1987) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973)).

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 21 of 32

517 U.S. 559 (1996) and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and

that it is further improper under Alaska's punitive damages statute.

As explained below, Gene by Gene's motion is a procedurally improper vehicle for

attacking the GPA's damages regime and it is unsupported by evidence. And in any event, the

GPA establishes statutory—not punitive—damages, and as such the Supreme Court's *Gore* and

*Campbell* guidelines are irrelevant, as is Alaska's punitive damages statute. For these reasons,

Gene by Gene's motion should be denied in this respect as well.

### A.     Gene by Gene's damages challenge is premature and unsupported.

Gene by Gene asks the Court to make an extraordinary determination—that the GPA's

damages scheme is unconstitutional—without so much as a finding of liability, much less any

damage award. That is improper. Under principles of constitutional avoidance, any assessment of

a damages award's constitutionality must wait until (a) damages have actually been awarded, and

(b) the Court has employed other methods, such as remittitur, to avoid the constitutional

concerns. *See Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 508 (1st Cir. 2011)

(hereinafter "*Sony I*") ("It is bedrock that the 'long-standing principle of judicial restraint

requires that courts avoid reaching constitutional questions in advance of the necessity of

deciding them.'") (quoting *Lyng v. Nw. Indian Cemetary Protective Ass'n*, 485 U.S. 439, 445

(1988)); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1309 (11th Cir. 2009)

("Typically, excessiveness review occurs after a jury has delivered a damages award.")

(collecting cases); *Buchanan v. Maine*, 469 F. 3d 158, 172 (1st Cir. 2006) ("[P]rior to reaching

any constitutional questions, federal courts must consider nonconstitutional grounds for

decision.") (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981)).

In addition to constitutional avoidance concerns, courts avoid addressing the

constitutionality of a damages regime absent a specific award because doing so "would be based on speculation," *Malibu Media LLC v. Warner*, No. 14-cv-1580, 2016 WL 1394331, at *8 (M.D. Fla. Apr. 8, 2016); *Provine v. Office Depot, Inc.*, No. 11-cv-903, 2012 WL 2711085, at *7 (N.D. Cal. July 6, 2012) ("Prior to a determination of defendant's liability, it is premature to analyze whether the potential penalty owed is unconstitutional."); *Sony I*, 660 F.3d at 511 ("[R]eaching the constitutional question before ordering remittitur not only contravened the doctrine of constitutional avoidance, it also led the court to address questions that had not yet been fully developed. Federal courts do not answer such hypothetical questions.") (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937)); *Provine*, 2012 WL 2711085, at *7 ("Prior to a determination of defendant's liability, it is premature to analyze whether the potential penalty owed is unconstitutional."). As another Court noted:

> At this stage in the proceedings it is impossible to know whether the class[] will be certified, how many individuals will be included in [the] class, whether they will provide [profit], and the size of the ultimate verdicts. The district court therefore lack[s] jurisdiction to consider whether the . . . statutory-damages provision is punitive and will yield an unconstitutionally excessive verdict as applied to these defendants.

*Harris*, 564 F.3d at 1310.[14]

Even if the issues raised in its motion were ripe, however, Gene by Gene's motion would fail because it lacks proper evidentiary support. That is, although Defendant claims that "if the class were to succeed, we would be facing over $90 million dollars [*sic*] in statutory fees. $90 million dollars [*sic*] would obliterate Gene by Gene – the company would cease to exist," (Dkt. 110, ¶ 13), "[t]he Court cannot credit [the] argument that this suit presents the potential for 'annihilating damages' because [Gene by Gene] has provided no evidence concerning its ability

---

[14]     Those concerns are heightened here, as it is not clear whether the Court would be evaluating the $5,000 or $100,000 damages award available under the GPA. *See* Alaska Stat. § 18.13.020.

to pay the feared statutory damages award." *Legg v. Spirit Airlines, Inc.*, 315 F.R.D. 383, 392 (S.D. Fla. 2015). For example, Gene by Gene provides no evidence as to its net worth, its cash reserves, or the value of its assets that would be accessible to pay a judgment, should they ultimately be put on the market. Nor does Gene by Gene address its $15 million insurance policy (for which a Texas court recently ordered coverage, *see Evanston Ins. Co. v. Gene by Gene, Ltd.*, 155 F. Supp. 3d 706 (S.D. Tex. 2016)); whether it (or its insurer) could satisfy a judgment awarding statutory damages of $5,000 per class member under § 18.13.020; or what type of judgment it could pay, if less than $90 million. Absent such evidence, "the Court [] cannot make an informed judgment concerning the disproportionality of the contemplated damages award." *Legg*, 315 F.R.D. at 392 (citing *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12-cv-22330, 2014 WL 7366255, at *10 (S.D. Fla. Dec. 24, 2014).

Accordingly, the Court must pass on determining the constitutionality of the GPA's damages provision until liability has been determined, damages have been awarded, and Defendant has presented evidence allowing for the evaluation of common-law devices such as remittitur for purposes of alleviating damages concerns.

**B.      The GPA provides for statutory, rather than punitive, damages.**

Despite the prematurity of its argument, Gene by Gene asserts that the GPA provides for punitive damages that are subject to the Supreme Court's test articulated in *Gore* and *Campbell*. (Mtn. at 12–13.) The problem with Gene by Gene's argument is that the distinction between punitive damages (which are awarded by a jury, in addition to compensatory damages), and statutory damages (such as those authorized by the GPA), is black-letter law.

"[S]tatutory damages . . . are not equivalent to punitive damages," *Two Plus Two Pub.*, 572 F. App'x at 467, and the two types of awards face markedly different constitutional tests. In

evaluating whether a *punitive* damages award is unconstitutionally excessive, the Supreme Court,

> animated by the principle that due process requires that civil defendants receive fair notice of the severity of their conduct might subject them to, . . . identified three "guideposts" for a court's consideration of whether a punitive damages award is so excessive that it deprives a defendant of due process: (1) the degree of reprehensibility of the defendant's conduct, [*Gore*, 517 U.S. at] 575–80, 116 S.Ct. 1589, (2) the ratio of the punitive award to the actual or potential harm suffered by the plaintiff, *id.* at 580–83, 116 S.Ct. 1589, and (3) the disparity between the award issued by the jury and the civil or criminal penalties authorized in comparable cases, *id.* at 583–85, 116 S.Ct. 1589.

*Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 70 (1st Cir. 2013) (hereinafter "*Sony II*"). The Supreme Court, however, "has not suggested that the *Gore* guideposts should extend to constitutional review of statutory damages awards." *Id.*; *see also Two Plus Two Pub., LLC*, 572 F. App'x at 467 ("We have not applied [*Gore*] to statutory damages."). Nor should it. "The concerns regarding fair notice to the parties of the range of possible punitive damage awards, which underpin *Gore*, are simply not present in a statutory damages case where the statute itself provides notice of the scope of the potential award." *Sony II*, 719 F.3d at 70. It should come as little surprise, then, that the Supreme Court's test for punitive damages falls apart when used for statutory damage awards:

> The [*Gore*] guideposts themselves, moreover, would be nonsensical if applied to statutory damages. It makes no sense to consider the disparity between "actual harm" and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate. *See Cass Cnty. Music Co. v. C.H.L.R., Inc.,* 88 F.3d 635, 643 (8th Cir. 1996). Nor could a reviewing court consider the difference between an award of statutory damages and the "civil penalties authorized," because statutory damages *are* the civil penalties authorized.

*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907–08 (8th Cir. 2012) (emphasis in original); *see also Sony II*, 719 F.3d at 71 ("The third guidepost requires a comparison between the award and the authorized civil and criminal penalties in comparable cases. Because an award

Case 1:14-cv-00004-SLG    Document 127    Filed 12/13/16    Page 25 of 32

of statutory damages is by definition an authorized civil penalty, this guidepost would require a court to compare the award to itself, a nonsensical result.").

By contrast, the constitutionality of a *statutory* damage award is assessed under the standard laid down by the Supreme Court in *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919). Under *Williams*, "[l]egislatures possess wide discretion to impose statutory damages, and only damages that are 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable' are prohibited." *Two Plus Two Pub.*, 572 F. App'x at 467 (quoting *Williams*, 251 U.S. at 66–67). "By its own terms, *Williams* applies to awards of statutory damages, which the jury [would award] in this case, while *Gore* applies to awards of punitive damages, which the jury [can] not award. *Gore* did not overrule *Williams*, and the Supreme Court has not suggested that the *Gore* guideposts should extend to constitutional review of statutory damage awards." *Sony II*, 719 F.3d at 70. As such, the *Williams* framework, rather than *Gore* and *Campbell*, governs constitutional review of statutory damage awards, like those sought here by Plaintiff. *See id.*, 719 F.3d at 71 (collecting cases); *Perez-Farias v. Glob. Horizons, Inc.*, 499 F. App'x 735, 737 (9th Cir. 2012) (analyzing statutory damage award under *Williams* standard); *Harris*, 564 F.3d at 1312–13 (11th Cir. 2009) (same).

Defendant's argument under the *Gore* and *Campbell* framework is therefore simply inapposite.[15]

---

[15]     The same flaws negate Gene by Gene's argument that the GPA's damage scheme violates Alaska's punitive damages statute. (*See* Mtn. at 30–31.) As an initial matter, Gene by Gene's argument ignores the canons of interpretation requiring that (a) statutes be read to avoid conflict wherever possible (for instance, by reading the GPA to provide statutory, rather than punitive damages), and (b) where a true conflict exists, the subsequent, narrower statute (here, the GPA), be read as an exception to the more general statute (here, the punitive damages act). *See California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005, 1012 (9th Cir. 2000) ("Of course, it is a well established axiom of statutory construction

**C.      The GPA's damages are not excessive under *Williams*.**

Finally, applying the proper standard under *Williams*, the GPA's damages provision is constitutional. As the Supreme Court has held for over 130 years, "the power of the state to impose fines and penalties for a violation of its statutory requirements is coeval with government, and the mode in which they shall be enforced, whether at the suit of a private party, or at the suit of the public, and what disposition shall be made of the amounts collected, are merely matters of legislative discretion." *Missouri P. Ry. Co. v. Humes*, 115 U.S. 512, 523 (1885). "Under this standard, Congress possesses a 'wide latitude of discretion' in setting statutory damages." *Thomas-Rasset*, 692 F.3d at 907 (quoting *Williams*, 251 U.S. at 66). Specifically, under *Williams*, "[a] statutorily prescribed penalty violates due process rights 'only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (quoting *Williams*, 251 U.S. at 66–67);[16] *see also Waters–Pierce Oil Co. v. State of Texas,*

_____

that, whenever possible, a court should interpret two seemingly inconsistent statutes to avoid a potential conflict."); *Peter v. State*, 531 P.2d 1263, 1267 (Alaska 1975) ("Courts have established a presumption against an intent to repeal where express terms of repeal are not used. Thus an earlier statute will not be impliedly repealed by a later statute where any reasonable interpretation will give effect to both. However, it is clear that a statute can be repealed by implication," including "where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."). More importantly, Gene by Gene's argument is simply wrong. Because, as explained above, the GPA does not award punitive damages, it cannot violate Alaska's punitive damages statute.

[16]      Notably, Gene by Gene cites neither *Citrin* nor *Williams*, despite both cases controlling here. If its failure to do so is unintentional, it reflects Gene by Gene's misunderstanding of the distinction between punitive and statutory damages. To the extent the failure to cite *Citrin* or *Williams* was intentional, it was improper. *See Transamerica Leasing, Inc v. Compania Anonima Venezolana de Navegacion*, 93 F.3d 675, 675–76 (9th Cir. 1996) (ABA Model "Rule 3.3(a)(3) prohibits an attorney from knowingly failing to disclose controlling authority directly adverse to the position advocated. The rule is an important one, especially in the district courts, where its faithful observance by attorneys assures that judges are not the victims of lawyers hiding the legal ball.").

Case 1:14-cv-00004-SLG   Document 127   Filed 12/13/16   Page 27 of 32

212 U.S. 86, 111–12 (1909).

In assessing the constitutionality of a statutory damages award, "[t]here is no requirement that the statutory remedy be proportional to the plaintiff's own injury." *Centerline Equip. Corp. v. Banner Personnel Serv., Inc.*, 545 F. Supp. 2d 768, 777 (N.D. Ill. 2008) (citing *Williams*, 251 U.S. at 66). "Because the damages award 'is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state.'" *Thomas-Rasset*, 692 F.3d 909 (quoting *Williams*, 251 U.S. at 66). And when doing so, the legislature can consider "the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence" to the statute. *Williams*, 251 U.S. at 67.

Here, Gene by Gene wholly fails to establish that the challenged damages are "obviously unreasonable" under the *Williams* standard. To compensate victims and discourage violations, the legislature chose to allow victims of disclosure to sue for $5,000. Alaska Stat. 18.13.020. And to provide a disincentive for efficient breaches, the legislature chose to allow for recovery of $100,000 by any victim whose genetic information was disclosed for profit. *Id.* The legislature was perfectly within its rights, under *Williams*, to make those decisions. *See Two Plus Two Publishing*, 572 F. App'x 466 (upholding damages award under Anti-cybersquatting Consumer Protection Act, which allows for damages of $1,000 to $100,000 per violation); *Verizon California Inc. v. Onlineinc, Inc.*, No. 08-cv-2832, 2009 WL 2706393 (N.D. Cal. Aug. 25, 2009) (same); *Thomas-Rasset*, 692 F.3d at 907–08 (recognizing that "Congress, exercising its 'wide latitude of discretion,' . . . set a statutory damages range for willful copyright infringement of $750 to $150,000 per infringed work" under the Copyright Act); *Sony II*, 719 F.3d 67 (same); *Centerline Equipment Corp.*, 545 F. Supp. 2d at 778 ("The Due Process clause does not require

Congress 'to make illegal behavior affordable, particularly for multiple violations.'") (quoting *Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-cv-4968, 2007 WL 129052, at *2–3 (N.D. Ill. Jan. 11, 2007)).

Gene by Gene, for its part, is fixated on the supposed lack of consequential damages caused by its conduct. Whether the conduct caused any demonstrable economic harm to Plaintiff, however, is beside the point; the courts have repeatedly held that statutory damages need not be proportional to the damages caused, "when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate." *Thomas-Rasset*, 692 F.3d at 907–08 (citing *Cass Cnty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 642 (8th Cir. 1996)); *id.* at 909 (rejecting argument "that *any* statutory damages would be unconstitutional, because even the minimum damages award of $750 per violation would be 'wholly disproportioned' to the offense' and thus unconstitutional . . . because the damages award is not based on any evidence of harm caused by her specific infringement.") (emphasis in original); *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.,* 259 F.3d 1186, 1194 (9th Cir. 2001) (noting that plaintiff can collect statutory damages "regardless of the adequacy of the evidence offered as to his actual damages"); *Verizon California, Inc.*, 2009 WL 2706393, at *7 ("[I]n the context of statutory damages, the Supreme Court has held expressly that the discretion of the district court is wide enough to permit a resort to statutory damages for the purpose of deterrence, such that even for uninjuring and unprofitable invasions of copyright, the court may, if it deems just, impose a liability within statutory limits to sanction and vindicate the statutory policy.") (internal emphasis and quotations omitted) (quoting *F.W. Wollworth Co. v. Contemporary Arts*, 344 U.S. 288, 233 (1952)).

As set forth above, the *Williams* test for statutory damages is extremely deferential to the

legislature's ability to set damages as it sees fit. In fact, it appears that no statutory damages award has *ever* been found to violate due process under *Williams*. And Gene by Gene, having argued under entirely the wrong standard, offers no reason for this Court to break new ground in that regard.

## CONCLUSION

For the reasons described above, Plaintiff respectfully requests that this Court (1) deny Defendant's motion in its entirety, and (2) award any other and further relief that it deems reasonable and just.

Respectfully submitted,

**MICHAEL COLE**, individually and on behalf of all others similarly situated individuals,

Dated: December 9, 2016

By: s/ J. Dominick Larry
    One of Plaintiff's Attorneys

Jay Edelson (*pro hac vice*)
jedelson@edelson.com
Benjamin H. Richman (*pro hac vice*)
brichman@edelson.com
J. Dominick Larry (*pro hac vice*)
nlarry@edelson.com
David I. Mindell (*pro hac vice*)
dmindell@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (*pro hac vice*)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Douglas Mertz
mertzlaw@gmail.com
MERTZ LAW
319 Seward Street, Suite 5
Juneau, Alaska 99801
Tel: 907.586.4004
Fax: 888.586.4141

**CERTIFICATE OF SERVICE**

 I hereby certify that on December 13, 2016, I served the above and foregoing by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

s/ J. Dominick Larry  
