Douglas Mertz
mertzlaw@gmail.com
MERTZ LAW
319 Seward Street, Suite 5
Juneau, Alaska 99801
Tel: 907.586.4004
Fax: 888.586.4141

Jay Edelson (*pro hac vice*)
jedelson@edelson.com
Benjamin H. Richman (*pro hac vice*)
brichman@edelson.com
David I. Mindell (*pro hac vice*)
dmindell@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff and the Putative Class*

**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| MICHAEL COLE, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff*,<br><br>v.<br><br>GENE BY GENE, LTD., a Texas limited liability company,<br><br>      *Defendant*. | Case No. 1:14-cv-0004-SLG<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**<br><br>Hon. Sharon L. Gleason |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT IN REPLY ................................................................................................... 1

I. Differences in the genetic testing offered by Defendant do not create individualized issues ................................................................................................ 2

II. The issue of "disclosure" does not present individualized issues ........................ 3

III. Whether class members provided their informed consent to any disclosures can be litigated on a classwide basis ........................................................................... 7

IV. Gene by Gene's various attacks on Cole's typicality or ability to adequately represent the class fall flat ....................................................................................... 8

V. Any potential damages issues do not render certification inappropriate ........... 9

VI. Gene by Gene's plea for judicial grace should be rejected ................................ 11

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**

*Agne v. Papa John's Int'l Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ............................................. 5

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184 (2013) ......................... 1, 8

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) ............................................. 11

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) .................................................. 9

*Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) ............................ 5

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ................................................. 12

*Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 (11th Cir. 2016) .................................... 9

*Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) ................................................. 9

*Gonzalez v. Arrow Fin. Servs., LLC*, 233 F.R.D. 577 (S.D. Cal. 2006) ...................................... 10

*Harrold. Artwohl*, 132 P.3d 276 (Alaska 2006) ............................................................................ 8

*Ikuseghan v. MultiCare Health Sys.*, 2015 WL 4600818 (W.D. Wash. July 29, 2015) ................ 7

*In re Hulu Privacy Litig.*, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ..................................... 4

*Irwin v. Mascott*, 96 F. Supp. 2d 968 (N.D. Cal. 2007) ................................................................ 2

*Johnson v. Yahoo! Inc.*, 2016 WL 25711 (N.D. Ill. Jan. 4, 2016) ................................................. 5

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ............................................................... 11

*Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292 (D. Nev. 2014) ............................... 1, 5

*Marsingill v. O'Malley*, 128 P.3d 151 (Alaska 2006) ................................................................... 8

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012) ................................. 5

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ................................................... 11

*Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13 (2d Cir. 2003) .......................................... 11

*Pilon v. U.S. Dep't of Justice*, 73 F.3d 1111 (D.C. Cir. 1996) ..................................................... 4

*Ramirez v. Trans Union*, 301 F.R.D. 408 (N.D. Cal. 2014) ......................................................... 10

*Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3d Cir. 2015) ................................................................ 2

*Senne v. Village of Palatine*, 695 F.3d 597 (7th Cir. 2012) (en banc) ............................................ 3

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) ........................ 12

*Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588 (N.D. Cal. 2014) .................................................. 4

*Wilkes v. CareSource Mgmt. Grp. Co.*, 2016 WL 7179298 (N.D. Ind. Dec. 9, 2016) .................... 7

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) .................................................. 4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

Genetic Privacy Act, Alaska Stat. § 18.13.010-100 ................................................................. 3, 10

William Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed.) ..................................................... 9

## ARGUMENT IN REPLY

Defendant Gene by Gene Ltd. concedes that the class and subclass proposed by Plaintiff Michael Cole are sufficiently numerous and can be readily ascertained, and that Cole's lawyers have and will continue to be adequate representatives, but contests whether Cole meets any other requirement for certification under Rules 23(a) and (b)(3). Some of Gene by Gene's arguments, particularly those relating to damages or Cole's standing, simply rehash arguments made in Defendant's two pending motions. The Court's resolution of those fully briefed motions will control the issues to the extent they are raised here; Cole will not repeat here why Gene by Gene is incorrect that Cole lacks standing or why Gene by Gene's various constitutional challenges to the statute are meritless. After setting aside these tired contentions, Gene by Gene's opposition is left attempting to create individualized issues where none exist. This effort fails.

On the whole, these supposedly individualized issued are based on undeveloped statutory theories that can be charitably described as bordering on the specious. Likewise, in most respects Gene by Gene declines to support its theories with evidence, even going so far as to rely on the hypothetical experiences of Jane Doe in one instance.

Conjecture and hypothesis will not justify denying certification. What matters is evidence. While "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013), the proponent of class certification must establish the prerequisites for certification by a preponderance of the evidence, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014). Thus, the opponent of class certification cannot rest on their laurels when, as here, the plaintiff adduces evidence affirmatively demonstrating that the

requisites to certification under Rule 23 have been satisfied. *See, e.g.*, *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 484-85 (3d Cir. 2015) (discussing proper inquiry at certification stage).

In his opening memorandum, Cole explained that the evidence adduced in discovery demonstrates that each issue central to Gene by Gene's liability in this case can be resolved on the basis of evidence common to every class member: Class members all went through a substantially similar process when purchasing DNA tests from Gene by Gene; all went through a substantially similar process when joining Projects (including, for both processes, viewing materially identical disclosures about what information Gene by Gene would share with others); all had their testing results disclosed in the same way; and all, under Cole's theory, are entitled to the same statutory damages. In other words, "a common nucleus of operative fact," *Irwin v. Mascott*, 96 F. Supp. 2d 968, 973 (N.D. Cal. 2007), is central to the claim of every class member under Alaska's Genetic Privacy Act, and a fact finder's determinations about Gene by Gene's conduct will establish Gene by Gene's liability with respect to each class member.

Gene by Gene's response fails to establish that Cole's analysis is erroneous as to any class member. Try as it might, Gene by Gene cannot point to any evidence that establishes that a single issue central to the validity of the class's claims will require individualized legal or factual determinations. (Strangely, Gene by Gene declines to discuss Cole's proposed subclass at all.) For these reasons and as explained further below, each of Gene by Gene's objections to class certification falls flat. The Court should therefore certify Cole's proposed class and subclass.

**I.     Differences in the genetic testing offered by Defendant do not create individualized issues.**

Gene by Gene first hypothesizes, without advancing any accompanying legal or factual support, that differences in the content of the various genetic tests it offers might create individualized issues. (Opp. at 8.) These issues, Gene by Gene first says, would arise by virtue of

the possible gloss the Court puts on the statutory phrase "genetic information." (*Id.*) Tellingly, Gene by Gene puts forth *no* reading of the statute, much less a plausible one, that might distinguish between the three DNA tests offered. Indeed, the supposed statutory phrase that Gene by Gene posits might result in this variation *doesn't even appear in the statute*. Instead, the pertinent phrase appears to be "DNA Analysis," which the statute defines as "DNA and genetic typing and testing to determine the presence or absence of genetic characteristics in an individual." Alaska Stat. § 18.13.100. Gene by Gene doesn't, and can't reasonably, dispute that whether the tests meet this definition is the same for all tests, and thus presents a common issue. (Dkt. 140, Ex. C, Transcript of Deposition of Elliott Greenspan ["E. Greenspan Dep. Tr."], at 29:5-30:16; Dkt. 140, Ex. B, Transcript of Deposition of Max Blankfield ["Blankfield Dep. Tr."], at 117:7-11; *see also* Dkt. 140, p. 11.)[1]

## II. The issue of "disclosure" does not present individualized issues.

Gene by Gene next theorizes that the issue of whether the results of a class member's DNA analysis were disclosed presents individualized issues unsuitable for class treatment. (Opp. at 9.) As before, the crux of this theory is questionable statutory interpretation. Gene by Gene believes that a class member's full testing results are not disclosed when sent to a Group Administrator, but only when that individual actually accesses them. (*Id.*) Gene by Gene identifies *no* support for this argument, a version of which repeatedly has been rejected in numerous statutory contexts. *See, e.g., Senne v. Village of Palatine*, 695 F.3d 597, 603 (7th Cir. 2012) (en banc) (rejecting identical argument under the Driver's Privacy Protection Act because

---

[1] Defendant's related contention—that they do not upload full testing results—is frivolous. In the first place, this argument goes to the merits, and is therefore irrelevant to certification. Second, and bizarrely, immediately after asserting that they do *not* upload "full testing results," Defendant then proceeds to describe how they do exactly that.

(E. Greenspan Dep. Tr. 30:5-10.)

statute authorized some disclosures and prohibited others and thus "to suggest that the meaning of the term 'disclose' is so limited as to take the act of *publication* of protected information outside the statute's reach because no specific recipient is proven simply misunderstands the textual scheme"); *Pilon v. U.S. Dep't of Justice*, 73 F.3d 1111, 1124 (D.C. Cir. 1996) ("Our review of the Privacy Act's purposes, legislative history, and integrated structure convinced us that Congress intended the term 'disclose' to apply in virtually all instances to an agency's *unauthorized transmission* of a protected record.") (emphasis added); *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) ("By analogy, if a video store knowingly hands a list of Judge Bork's rented videos to a Washington Post reports, it arguably violates the [Video Privacy Protection Act] even if the reporter does not look at the list."). Defendant develops no argument that the transmission of class members' testing results would not constitute a disclosure under the Genetic Privacy Act, so its contention that individualized issues are present has no legs.

Of course, whether the transmission of the testing results constitutes a disclosure is a threshold question common to the entire class. Even if Gene by Gene is ultimately correct about the meaning of the statute, courts often find that the commonality and predominance requirements are satisfied when a threshold question is subject to a common answer, even if subsequent questions might require individual determinations. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) ("[W]here a threshold issue is common to all class members, class litigation is greatly preferred."); *Villalpando v. Exel Direct Inc.*, 303 F.R.D. 588, 608 (N.D. Cal. 2014).

Defendant also suggests that different privacy settings available to class members create individualized issues concerning "disclosures" that will predominate over any common issues.

As Defendant describes it, the client-facing interface on the FamilyTree DNA website allows individuals to control to whom their testing results are disclosed, and it hypothesizes that some class members may have adjusted their settings to prevent any disclosure at all. (Opp. at 9-10.) Tellingly, Defendant points to *no evidence* supporting this contention; instead, it supports the argument by creating, out of whole cloth, "Jane Doe." (Opp. at 10.) "Defendant's speculation ... is not sufficient to defeat class certification." *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 567 (W.D. Wash. 2012); *see Johnson v. Yahoo! Inc.*, 2016 WL 25711, at *7 (N.D. Ill. Jan. 4, 2016) ("While it is plaintiff's burden to meet the predominance test, an opposition based on theory, not evidence, is not a weighty objection."); *Bee, Denning, Inc. v. Capital Alliance Grp.*, 310 F.R.D. 614, 629 (S.D. Cal. 2015) ("When a party has not submitted any evidence" supporting contention that individualized issues exist, "courts will not presume that resolving such issues requires individualized inquiries."); *Kristensen*, 12 F. Supp. 3d at 1307 ("courts should afford greater weight to a plaintiff's theory of class-wide proof ... when that theory is entirely unrebutted by the precise type of evidence which could do it greatest harm"). Because Defendant "fail[s] to show a single instance" in which a class member adjusted their privacy settings to prevent disclosure, it has failed to rebut Cole's showing that common issues predominate. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012).

To start, Defendant's contentions about the privacy settings are without an evidentiary foundation. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. T., GBG00059210) Defendant's concerns therefore are inapplicable before that date.

Second, the privacy settings applied only to "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (*Id.*; *see also* Dkt. 140, Ex. R, GBG00409239 (noting that privacy settings ▮▮▮▮▮▮▮▮

███████████████████████████████████████████").) In other words, these privacy settings only controlled whether testing results were uploaded to the Internet; they do not control whether those tests were also disclosed to Project Administrators or close genetic matches, disclosures that Cole contends are barred by the Genetic Privacy Act absent informed consent. (Ex. U, Supplemental Excerpts of the Transcript of the Deposition of Bennett Greenspan, ["B. Greenspan Supp. Dep. Tr."], at 158:10-159:1; Blankfield Dep. Tr. 91:13-24.) As Bennett Greenspan testified, Cole could avoid having his genetic testing results forwarded to a Project Administrator *only* by not joining a project. (B. Greenspan Supp. Dep. Tr. 158:10-159:1.) Max Blankfield confirmed that whenever a customer joined a project, the Project's Administrator was given access to the individual's contact information and testing results. (Blankfield Dep. Tr. 83:9-13.) Because the class includes only individuals who joined a project, Defendant's contention is irrelevant.

Third, testing results were transmitted to Project Administrators and made publicly available through project pages by default. (Blankfield Dep. Tr. 90:10-91:9.) Because these allegedly unlawful disclosures occurred as a matter of course (in addition to the disclosures to Project Administrators), common questions will predominate. (Dkt. 140, pp. 13, 20.)

Gene by Gene points to the testimony of Elliott Greenspan as the basis for its hypothesis that some class members may have adjusted their privacy settings to prevent any disclosure of their genetic information. (Opp. at 9 nn. 30-34, 36.) Not only is this testimony directly contradicted by the testimony of Bennett Greenspan and Max Blankfield, and by the documentary evidence, but, as discussed, Gene by Gene has not identified a single class member who adjusted their privacy settings. (Indeed, as even a Gene by Gene executive testified, to hide your results defies common sense: "The objective of genetic genealogy isn't to hide your stuff;

it's to use it responsibly." (B. Greenspan Supp. Dep. Tr. 157:7-8.)) Defendant's concerns are hypothetical, and insufficient to defeat certification.

### III. Whether class members provided their informed consent to any disclosures can be litigated on a classwide basis.

Gene by Gene next asserts that analysis of class members' consent to the disclosure of their genetic information "is entirely subjective" and therefore can be assessed only on a plaintiff-by-plaintiff basis. (Opp. at 11.) Gene by Gene is wrong.

The evidence establishes that all class members provided consent by signing off on a substantially similar form. Whether the content of that form establishes "informed consent" is an issue common to the class. *See Wilkes v. CareSource Mgmt. Grp. Co.*, 2016 WL 7179298, at *7 (N.D. Ind. Dec. 9, 2016) (concluding that issue of consent presented a common question because defendant asserted that consent was obtained through "standard forms" and the legal significance of the form would be the same for all class members); *Ikuseghan v. MultiCare Health Sys.*, 2015 WL 4600818, at *5 (W.D. Wash. July 29, 2015) ("whether MultiCare's standardized forms constitute prior express consent is an issue subject to class-wide resolution").

Gene by Gene posits that additional consent issues might exist because class members may have consented to disclosures when joining individual Projects. Again, at the very least, this concern is irrelevant to most of the class period, because through at least January 2015 nothing in the process of joining projects might have alerted individuals to the privacy implications of joining a project. (Dkt. 140, Ex. H, Transcript of Deposition of Lisa Blackerby ["Blackerby Dep. Tr."], at 70:16-22.) Moreover, the evidence shows that any updates to the process of joining a Project simply pointed class members back to Gene by Gene's Privacy Policy and Terms of Service. (Dkt. 140, Ex. N, GBG00409241.) But fact finding about the effect of the Privacy Policy was already necessary to determine whether class members had provided their informed

consent when purchasing a DNA test in the first place. (*See* Dkt. 140, Ex. E, GxG Sept 9 2016 Prod 000047-00052 (original release forms).) Because this already represented an issue susceptible to class treatment, the additional wrinkle posited by Gene by Gene—new exposure to the privacy policy—does not stand in the way of class treatment.[2]

Gene by Gene also attempts to create individualized issues by importing into the Genetic Privacy Act the definition of "informed consent" used in the medical-malpractice context. (Opp. at 11 n.40.) Never mind that's not the applicable standard, even that construction fails to create individual issues: Informed consent in the medical context is measured from the point of view of a "reasonable plaintiff." *Harrold v. Artwohl*, 132 P.3d 276, 280 (Alaska 2006). In other words, even under Gene by Gene's cases, the issue of informed consent is assessed on an objective basis common to the entire class. *See Marsingill v. O'Malley*, 128 P.3d 151, 159 (Alaska 2006); *see also Amgen*, 133 S. Ct. at 1195 (reasoning "because the question of materiality is an objective one ... materiality can be proved through evidence common to the class") (quotation and alteration omitted).

### IV. Gene by Gene's various attacks on Cole's typicality or ability to adequately represent the class fall flat.

Gene by Gene further asserts in several ways that certification is inappropriate because Michael Cole lacks standing to sue. (Opp. at 13-14, 16-17.) Cole concedes that if the Court were to determine that he lacks standing to sue that he cannot represent the class. There would no

---

[2] Gene by Gene also suggests that because a kit holder can "continuously update" their privacy settings, proving consent on a classwide basis is impossible. (Opp. at 11.) This aids neither its disclosure nor their consent argument. As to consent, it is unclear what the relevance of Gene by Gene's statement is. It appears that Gene by Gene is positing that the ability to adjust privacy settings necessarily implies that individuals have provided their consent. Whether that is true, of course, is an issue that is amenable to classwide adjudication, because the facts and law are common to everyone—i.e., whether any one setting, once engaged, rises to the level of informed consent would be the same for everyone. As to disclosure, changing the privacy settings *after* a disclosure is made does not retroactively undo disclosures.

longer be a case before the Court. *See also Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395 n.4 (N.D. Ill. 2006) (concluding that because the alleged defects in the named plaintiff's claim "apply to the class as a whole, there is no basis for finding that such defects have any bearing on the question of adequacy").[3]

Gene by Gene's only new attack on Cole's fitness to serve as class representative is bottomed on Cole's act of sharing the results of his genetic tests with specific individuals, which Defendant styles a "waiver" of his ability to press claims under the Genetic Privacy Act. (Opp. at 13-15.) That argument is frivolous. The statute is designed to give individuals control over their genetic information, to enable Alaskans to share this information when and with whom they desire. That Cole has done that in other contexts does not surrender that control or the protections of the statute.

## V. Any potential damages issues do not render certification inappropriate.

Gene by Gene weakly contends that potential damages issues render certification inappropriate. (Opp. at 18-19.) But "the black letter rule is that individualized damage calculations generally do not defeat a finding that common issues predominate." William Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed.). And Gene by Gene cannot establish that any exception to that general rule would hold here. *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1240 (11th Cir. 2016) (noting exceptions to rule when damage calculations are so

---

[3] Gene by Gene also contends (Opp. at 21) that a class action would be unmanageable because the Court would need to determine whether each of the 900 class members have standing to sue. This is wrong for two reasons. First, if Cole has standing by virtue of Gene by Gene's allegedly unlawful disclosures (as he argued, Dkt. 104, pp. 7-14), then every class member has standing. Second, at certification, only the named plaintiff need have standing. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.").

complex that they would burden the court system or when damages questions are accompanied by significant questions going to liability).

In any case, Gene by Gene is wrong that damages issues cannot be adjudicated on a classwide basis. The Genetic Privacy Act provides for standardized, liquidated damages. Courts routinely hold that pursuit of statutory damages creates common questions going to remedy. *See, e.g., Ramirez v. Trans Union*, 301 F.R.D. 408, 421-22 (N.D. Cal. 2014); *Gonzalez v. Arrow Fin. Servs., LLC*, 233 F.R.D. 577, 582 (S.D. Cal. 2006). Gene by Gene hypothesizes that other class members may wish to pursue actual damages (Opp. at 7, 18), but again it points to no one who fits that bill, much less anyone who is made worse off by Cole's litigation choices.

Defendant nevertheless contends that the issue of whether class members are entitled to the enhanced penalties provided for by statute, triggered by a determination that any unlawful disclosures "resulted in profit or monetary gain," Alaska Stat. § 18.13.020, will require individualized fact finding. Defendant's logic appears to be that each individual disclosure must be assessed to determine whether it led directly to profit for Gene by Gene. This concern is, at best, premature. First, Defendant's interpretation of the statute to require some sort of close connection is not obvious and, as before, is unsupported by any kind of developed legal argument. Second, the evidence adduced thus far would permit a fact finder to conclude that every disclosure is a but-for cause of profit for Gene by Gene. Defendant admitted that it "benefits" indirectly when customers join projects (and thus trigger the allegedly unlawful disclosures) (Ex. V, Defendant's Reponses to Plaintiff's First Set of Interrogatories, pp. 22-23), and a deponent further agreed that increased project participation facilitates increased sales (Blankfield Dep. Tr. 36:3-6). Indeed, Defendant's entire business model is structured around

sharing the results of genetic testing; it is implausible to think that Defendant would continue offering such tests if it were not realizing a profit on them.

## VI. Gene by Gene's plea for judicial grace should be rejected.

Finally, Gene by Gene throws itself on the mercy of the Court, pleading for a favorable exercise of discretion because the class may reap a significant damages award should it prevail. (Opp. at 22-23.) Federal courts repeatedly have rejected this argument. *See Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (reversing denial of certification on this ground, observing that "the reason that damages can be substantial ... lies in the legislative decision to authorize awards as high as $1,000 per person, combined with [Defendant's] decision to [violate the statutory rights] of more than a million persons"); *Parker v. Time Warner Entm't Co., LP*, 331 F.3d 13, 22 (2d Cir. 2003). Courts recognize that refusing to certify based on the potential consequences incentives companies to violate the law in the broadest way possible, and that the wiser course is to hold responsible defendants that violate the rights of hundreds of individuals, no matter the apparent monetary consequences. *See Klay v. Humana, Inc.*, 382 F.3d 1241, 1274 (11th Cir. 2004) ("It would be unjust to allow corporations to engage in rampant and systematic wrongdoing, and then allow them to avoid a class action because the consequences of being held accountable for their misdeeds would be financially ruinous."). And as *Parker* points out, the due process clause provides an independent check on outsize damages awards. 331 F.3d at 22. But a later reduction in an award to comport with due process is irrelevant to certification. *See Murray*, 434 F.3d at 954 ("constitutional limits are best applied after a class has been certified").

This consistent approach is on solid legal footing, too: Gene by Gene's argument has nothing to do with whether Michael Cole has satisfied the criteria for class certification under Rules 23(a) and (b)(3). *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713, 721-23 (9th

Cir. 2010) (holding that similar concerns were irrelevant to class certification analysis absent some evidence of legislative intent). "By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1126 (9th Cir. 2017) (recounting consistent guidance from the Supreme Court not to "interpose an additional hurdle into the class certification process"). Because he has met the criteria spelled out in Rule 23, Cole is entitled to pursue his claims on behalf of a class.

## CONCLUSION

The court should certify both the class and subclass proposed in Michael Cole's Motion for Class Certification, appoint him as representative of both the class and subclass, and appoint Jay Edelson and Benjamin Richman as class counsel.

Respectfully submitted,  **MICHAEL COLE**, individually and on behalf of all others similarly situated individuals,

Dated: February 15, 2017  By: /s/Benjamin H. Richman
  One of Plaintiff's Attorneys

  Jay Edelson (*pro hac vice*)
  jedelson@edelson.com
  Benjamin H. Richman (*pro hac vice*)
  brichman@edelson.com
  David I. Mindell (*pro hac vice*)
  dmindell@edelson.com
  Alexander G. Tievsky (*pro hac vice*)
  atievsky@edelson.com
  EDELSON PC
  350 North LaSalle Street, 13th Floor
  Chicago, Illinois 60654
  Tel: 312.589.6370
  Fax: 312.589.6378

  Rafey S. Balabanian (*pro hac vice*)
  rbalabanian@edelson.com

Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

Douglas Mertz
mertzlaw@gmail.com
MERTZ LAW
319 Seward Street, Suite 5
Juneau, Alaska 99801
Tel: 907.586.4004
Fax: 888.586.4141

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 15, 2017, I served the above and foregoing by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

                                      /s/ Benjamin H. Richman