Douglas Mertz
mertzlaw@gmail.com
MERTZ LAW
319 Seward Street, Suite 5
Juneau, Alaska 99801
Tel: 907.586.4004
Fax: 888.586.4141

Benjamin H. Richman (*pro hac vice*)
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MICHAEL COLE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>GENE BY GENE, LTD., a Texas limited liability company d/b/a FAMILY TREE DNA,<br><br>*Defendant*. | Case No. 1:14-cv-0004-SLG<br><br>**OPPOSITION TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT LIMITING POTENTIAL DAMAGES**<br><br>Hon. Sharon L. Gleason |

# TABLE OF CONTENTS

**RELIEF REQUESTED AND EVIDENCE RELIED UPON** ..................................................... 1

**INTRODUCTION** ............................................................................................................... 1

**FACTUAL BACKGROUND** ............................................................................................. 3

    **I.**     **Gene by Gene's Business** ................................................................................. 3

    **II.**    **Gene by Gene Leverages Customer DNA Test Results to Sell Additional DNA Test Kits** ........................................................................... 4

    **III.**   **Gene by Gene Disclosed Mr. Cole's DNA Test Results to Group Administrators, which Resulted in Benefits for the Company** ................. 6

**ARGUMENT** ....................................................................................................................... 8

**CONCLUSION** ................................................................................................................. 12

OPPOSITION TO MOTION FOR PARTIAL                                                    i
SUMMARY JUDGMENT                                                        CASE NO. 1:14-CV-0004-SLG
Case 1:14-cv-00004-SLG    Document 206-1 *SEALED*    Filed 01/25/19    Page 2 of 19

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................8, 9

*Estate of Cowart v. Nicklos Drilling Co.*,
    505 U.S. 469 (1992)......................................................................................................12

*Loughrin v. United States*,
    573 U.S. 351 (2014)......................................................................................................11

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
    137 S. Ct. 1002 (2017)..................................................................................................12

*TRW Inc. v. Andrews*,
    534 U.S. 19 (2001)........................................................................................................11

**United States Courts of Appeals Cases:**

*Commodity Futures Trading Comm'n v. White Pine Tr. Corp.*,
    574 F.3d 1219 (9th Cir. 2009) ......................................................................................11

*Corns v. Laborers Int'l Union of N. Am.*,
    709 F.3d 901 (9th Cir. 2013) .........................................................................................8

*Furnace v. Sullivan*,
    705 F.3d 1021 (9th Cir. 2015) .......................................................................................9

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) .........................................................................................8

*United States v. Aviles*,
    313 F. App'x 964 (9th Cir. 2009) ..................................................................................9

*United States v. Vance Crooked Arm*,
    788 F.3d 1065 (9th Cir. 2015) .....................................................................................11

*United States v. Yoshida*,
    303 F.3d 1145 (9th Cir. 2002) .......................................................................................9

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
    227 F.3d 1110 (9th Cir. 2000) .....................................................................................11

**State Court Cases:**

*State v. Hammer*,

OPPOSITION TO MOTION FOR PARTIAL                                                         ii
SUMMARY JUDGMENT                                                       CASE NO. 1:14-CV-0004-SLG
Case 1:14-cv-00004-SLG    Document 206-1 *SEALED*    Filed 01/25/19    Page 3 of 19

    550 P.2d 820 (Alaska 1976)......................................................................................12

**<u>Statutory Provisions:</u>**

AS § 18.13.010 .............................................................................................................8

AS § 18.13.020 ..................................................................................................... *passim*

AS § 18.13.100 .............................................................................................................8

**<u>Other Authorities:</u>**

Black's Law Dictionary (10th ed. 2014).......................................................................11

Webster's Third New International Dictionary (1971)..................................................11

OPPOSITION TO MOTION FOR PARTIAL                                                 iii
SUMMARY JUDGMENT                                               CASE NO. 1:14-CV-0004-SLG
Case 1:14-cv-00004-SLG   Document 206-1 *SEALED*   Filed 01/25/19   Page 4 of 19

**RELIEF REQUESTED AND EVIDENCE RELIED UPON**

Plaintiff Michael Cole respectfully requests that this Court deny Defendant Gene by Gene Ltd.'s Motion for Partial Summary Judgment Limiting Potential Damages. Alaska's Genetic Privacy Act provides for statutory damages "in the amount of $5,000 or, if the violation resulted in profit or monetary gain to the violator, $100,000." AS § 18.13.020. Gene by Gene argues that Mr. Cole cannot establish that the disclosure of his genetic information resulted in profit or monetary gain for the company, and that any recovery is therefore limited to $5,000. But as explained herein, Gene by Gene ignores substantial evidence showing that its disclosure of customer genetic information generates significant benefits for the company, including increased sales. Because a jury could find, based on this evidence, that Gene by Gene's disclosure of Mr. Cole's genetic information resulted in profit or monetary gain to the company, Gene by Gene's motion should be denied.

Plaintiff's opposition to Gene by Gene's motion is based upon this memorandum, the Declaration of Benjamin H. Richman, all exhibits attached thereto, and the materials submitted by Defendant in conjunction with the filing of its motion.

**INTRODUCTION**

In its latest bid for summary judgment, Gene by Gene asserts that Plaintiff "has no evidence" that the company's disclosures of its customers' genetic information were made for profit or monetary gain. (Dkt. 199 ("Def. Mot.") at 12.) It therefore asks the Court to place a $5,000 "ceiling" on Mr. Cole's claim for statutory damages under Alaska's Genetic Privacy Act. (*Id.* at 13.)[1]

---

[1] Gene by Gene seeks partial summary judgment only on the issue of "profit." (Def. Mot. at 8 ("Issues").) It does not seek any finding as to whether it disclosed Plaintiff's "DNA analysis" as contemplated by the Act (whether in terms of the public posting made by Ralph

Gene by Gene's position is untenable. Though it is certainly true that Gene by Gene generates its revenue through the sale of individual DNA test kits, Gene by Gene stokes demand for the kits through its surname and geographical projects (the "Projects")—online forums where people can meet and explore their genetic relationships. This is hardly a disputed point and certainly not one cobbled together from "excise[d] deposition phrases." (Def. Mot. at 11.) Quite the contrary. From the beginning of this case, Gene by Gene has emphasized that as its "[P]rojects grow in popularity, they can attract additional people who are interested in genealogy and ancestry research . . . [and] as the project databases become larger, a prospective customer may be more interested in purchasing a DNA test kit[.]" (Richman Ex. A, Def. Interrog. Resp. No. 12.[2]) This understanding has been repeated time and time again, including in Gene by Gene's filings, its written discovery responses, and the testimony of its officers and employees. Furthermore, and critically here, in order to ensure the success of its various Projects (and thus, its continued DNA test kit sales) Gene by Gene discloses DNA test results of its customers—including Mr. Cole—to Project databases and the people who administrate them (who further act as de facto salespeople for Gene by Gene). In sum—and as the Court already recognized in its order on Plaintiff's motion for class certification, (dkt. 182 (Order on Mot. for Class Cert.) at 7 (quoting dkt. 140-3 (B. Greenspan Dep. Tr.) at 12)—there is substantial evidence that Gene by Gene's disclosures of customer DNA information, including Mr. Cole's, had an overt promotional purpose and led to increased exposure and sales. As a result, the disclosures resulted

---

Taylor, (*see id*. at 4-5), or its disclosures to Group Administrators, (*see id.* at 6-8).) Nor does it ask the Court to decide whether any alleged or proven disclosure violated the Act. For good reason: these are key issues for trial that will be decided based on contested issues of fact.

[2]      Unless otherwise noted, all references to exhibits reference those attached to the Declaration of Benjamin H. Richman ("Richman"), filed contemporaneously herewith. Pursuant to Local Rule 7.4(b), Plaintiff has cited to other parts of the existing record (e.g., previously-filed exhibits or documents) where possible.

in "profit or monetary gain" for the company, and full statutory damages are thus available. AS § 18.13.020.

Given this substantial evidence, Defendant's motion for partial summary judgment—its second brought under Rule 56 and its second attempt to avoid the statutory damages provided by Alaska's Genetic Privacy Act[3]—should be denied.

## FACTUAL BACKGROUND

The facts of this case have been previously set forth in briefing on Defendant's motion to dismiss, (dkts. 95, 104, 114), Plaintiff's motion for class certification, (dkts. 140, 146, 150), and Defendant's prior motion for summary judgment, (dkts. 109, 127, 131). Consequently, only a summary explanation of the relevant facts is presented here.

### I.     Gene by Gene's Business.

Gene by Gene is a commercial genealogy company that sells DNA testing kits to consumers. (Dkt. 109 at 4; dkt. 140, Ex. A (B. Greenspan Dep. Tr.) at 46:24-47:8; dkt. 140, Ex. B (Blankfeld Dep. Tr.) at 75:7-13.) The kits include materials used for collecting a DNA sample, which is returned to Gene by Gene for processing and analysis. (Dkt. 140, Ex. A (B. Greenspan Dep. Tr.) at 29:25-30:9; dkt. 140, Ex. B (Blankfeld Dep. Tr.) at 36:7-13.)

Recognizing that its "testing services . . . would be of little use if its customers were not allowed to locate and learn of other people who match their genealogical history[,]" Gene by Gene also helps connect its customers with potential genetic relatives. (Richman Ex. A, Def. Interrog. Resp. No. 10.) This is accomplished through Gene by Gene's surname and geographical Projects. (Dkt. 95 at 2-3.) The Projects are forums that let individuals with the same

---

[3]     For its first motion for summary judgment, Defendant argued that the Act's provision of $100,000 in statutory damages was unconstitutional and otherwise violated Alaska law. (Dkt. 109 at 2.) The motion was denied in full. (Dkt. 181 at 17.)

or similar last names, or who have ancestors from a particular geographical region, meet and explore their genetic relationships. (*See* dkt. 106, Ex. B (B. Greenspan Dep. Tr.) at 25:3-20.) Each Project is managed by an unaffiliated and "unpaid volunteer third party administrator ('Group Administrator')." (Dkt. 95 at 2.)

**II.     Gene by Gene Leverages Customer DNA Test Results to Sell Additional DNA Test Kits.**

Gene by Gene discloses to Group Administrators the DNA test results and contact information of customers participating in their respective Projects. (Dkt. 140, Ex. C (E. Greenspan Dep. Tr.) at 33:10-13, 34:3-7; dkt. 140, Ex. B (Blankfeld Dep. Tr.) at 93:19-94:2.) These disclosures serve dual purposes. While the disclosures of DNA test results let Group Administrators "assist participants in understanding and interpreting their [DNA test] results," (Richman Ex. B at GBG00013191-92), they also caused "the [P]roject databases [to] become larger" and attract more "prospective customers" to Gene by Gene's business. (Richman Ex. A, Def. Interrog. Resp. No. 12.) Not only did this growth result in "organic viral marketing," (Dkt. 140, Ex. O (Leibovich Dep. Tr.) at 38:7-16), it also let Group Administrators use customer DNA results as a "sales tool" for the company, (Dkt. 140, Ex A (B. Greenspan Dep. Tr.) at 101:7–23; *see also id.* at 44:16–45:20).

Gene by Gene hasn't been coy about its leveraging of the Projects and Group Administrators to generate business. In addition to the testimony cited by the Court, (dkt. 182 at 7 (quoting B. Greenspan Decl. (dkt. 140-3) at 12)), Gene by Gene emphasized the point in its written discovery responses:

> Defendant benefits from a network effect associated with its customers' voluntary participation in the comparative databases or the family project groups. As these projects grow in popularity, they can attract additional people who are interested in genealogy and ancestry research. Likewise, as the project databases become larger, a prospective customer may be more interested in purchasing a DNA test kit and joining the project because there is a greater likelihood that the

> prospective customer would be able to successfully perform genealogical research. In addition, project members or family project group administrators may seek out and encourage prospective customers to purchase a DNA test kit and join a project in order to further research that project's ancestral lineage.

(Richman Ex. A, Def. Interrog. Resp. No. 12.) This makes perfect sense. Gene by Gene has emphasized that "[t]he very function of genetic genealogy is for customers to share and compare their genetic information with other customers in order to establish ancestry relationships and to broaden their genealogical research." (*Id.*) The Projects—forums where customers could actively "share and compare" their DNA test results—served that function. And as Gene by Gene has explained, the more it disclosed customer genetic information to the "project databases," the more attractive the Projects became and the more current or "prospective customers" were inclined to order their own DNA tests and compare their results against the databases. (*Id.*)

Apart from this organic growth and built-in marketing effect, the disclosures also let Group Administrators actively "seek out and encourage" customers to buy more test kits. This happened on a regular basis. (*See, e.g.*, dkt. 140, Ex. H (Blackerby Dep. Tr.) at 43:13-19 (agreeing that Group Administrator's "access to [customer DNA] test results" was required to make requests that members take additional DNA testing); Richman Ex. C at GBG00010785-88 (requesting that customer order additional testing, which cost $1,285 plus $30 post processing fees); Richman Ex. D at GBG00059598 (Group Administrator seeking advice from Gene by Gene regarding her review of customer DNA test results and intent to "encourage people to take [an additional] test"); Richman Ex. E at GBG00029710 (Group Administrator (Terry Barton of WorldFamilies.net) convincing Project member to take an additional test and working out alternative payment plan); Richman Ex. F at GBG00044926 (Group Administrator discussing strategies for convincing Project members to purchase additional testing).)

This salesmanship was hardly unintended. To the contrary, Gene by Gene structured its business to facilitate recruitment and sales through the Group Administrators. For example, its "Group Administrator Guidelines for Family Tree DNA Projects" emphasized that "Group Administrator[s] must make a serious effort to recruit participants." (Richman Ex. G at LA-000130.) Defendant also prohibited Group Administrators from advertising competitors' services. (Richman Ex. H at GBG00025596.) And to encourage more sales, Gene by Gene allowed Group Administrators to request discounts or "donations" from the company to encourage additional testing—and purchases—from Project members. (*See, e.g.*, Richman Ex. I (Leibovich Dep. Tr.) at 47:12-24 (testifying that Defendant would provide Group Administrators with access to discounted pricings or monetary credits that could be used to fund additional product purchases); dkt. 140, Ex. B (Blankfeld Dep. Tr.) at 34:22 – 35:9 (testifying that "many group administrators" requested, and received, test discounts to "attract more people to their projects").)

Through these disclosures, efforts, and policies, Gene by Gene used the Projects and Group Administrators to generate "organic viral marketing" and expand the company. (Dkt. 140, Ex. O (Leibovich Dep. Tr.) at 38:7-16 ("[A] big part of the growth of the company came from the participation of these project administrators[.]"). Thus, as "project membership [increased, so did] DNA test sales." (Dkt. 140, Ex. B (Blankfeld Dep. Tr.) 36:3-6.) Ultimately, the Projects and Group Administrators were key to Gene by Gene's "overall success" and the generation of ongoing business. (Dkt. 140, Ex. H (Blackerby Dep. Tr.) at 42:12-16 (Group Administrators were "important to the overall success of DNA testing" because "[t]hey recruit testers and facilitate the exchange of information that makes DNA testing useful . . . and without it being

useful, people aren't going to buy it.").) (*See also* dkt. 140, Ex. B (Blankfeld Dep. Tr.) at 36:3-6; dkt. 140, Ex. O (Leibovich Dep. Tr.) at 40:12-17.)

### III. Gene by Gene Disclosed Mr. Cole's DNA Test Results to Group Administrators, which Resulted in Benefits for the Company.

Mr. Cole purchased a DNA test kit from Gene by Gene on June 27, 2013. (Dkt. 20, ¶ XIX.) During the ordering process, Mr. Cole signed up for nine Projects, including Projects administered by Terry Barton of WorldFamilies.net. (Dkt. 140, Ex. K (Cole Dep. Tr.) at 70:18–25; dkt. 140, Ex. Q at LA-000076; dkt. 140, Ex. J at LA-000111.) Information included with his test kit explained that if he decided to join a Project "all of [his] contact information will be shared with the administrator of any project [he chose] to join." (Dkt. 106, Ex. C at LA-000075.) The information included with his test kit did not mention that his test results or other information related to his DNA test kit would also be disclosed. (*Id.*) But Mr. Cole later learned—after his contact information and DNA test information appeared publicly on a website called Rootsweb, "a company unrelated to Defendant," (dkt. 95 at 4; *see* dkt. 96-2, Ex. 2 at 8)—that Gene by Gene had automatically disclosed his DNA test results to Group Administrators, including administrators associated with WorldFamilies.net. (Dkt. 140, Ex. K (Cole Dep. Tr.) at 71:12 – 72:18, 76:25 – 77:19, 80:23 – 81:5.) This was accomplished through Gene by Gene's API, which did not "take [customer] consent and privacy settings into account" and, for several Projects, including those hosted at WorldFamilies.net, resulted in the "public display of [customers'] results." (Dkt. 106, Ex. E at GBG00197517.) (*See also* dkt. 140, Ex. C (E. Greenspan Dep. Tr.) at 68:3 – 69:3 (discussing software (an "API") that resulted in the automatic

disclosure of customer test result data to the WorldFamilies.net Projects.); dkt. 140, Ex. A (B. Greenspan Dep. Tr.) at 135:1 – 136:20.)[4]

In the months that followed, Gene by Gene received internet referral traffic and revenue from its relationship with and disclosures to WorldFamilies.net, among other Projects. (*See*, *e.g.*, Richman Ex. J at GBG00117525 (report summary concluding that "[r]eferral traffic increased 6% . . . and revenue increased +24% . . . driven by . . . WorldFamilies.net"); Richman Ex. K at GBG00117071 (report summary concluding that "[r]evenue via referrals increased +40.58% WoW, driven by . . . World Families[.]"); Richman Ex. I (Leibovich Dep. Tr.) at 52:18-23 (Agreeing that "at least as of September 2014, there's some belief within the company that [its] relationship with WorldFamilies was driving both [an increase in] web traffic and revenue[.]")

**ARGUMENT**

Alaska's Genetic Privacy Act protects the results of any DNA testing that determines the presence or absence of any "gene, chromosome, or alteration of a gene or chromosome that may be tested to . . . identify an individual or a blood relative." AS § 18.13.100. Under the Act's private right of action, any person who discloses such information without informed and written consent is liable for damages in the amount of $5,000 or, "if the violation resulted in profit or monetary gain to the violator," $100,000. AS §§ 18.13.010-020. Gene by Gene's motion does not seek summary judgment as to whether Mr. Cole can show a violation of the Act, only as to whether he can show that a violation "resulted in profit or monetary gain" to Gene by Gene. But contrary to Gene by Gene's assertion, the record contains substantial evidence that, by leveraging the Projects to drive sales, Gene by Gene's disclosure of its customers' genetic

---

[4] Defendant has claimed that it later implemented user controls that would affect information sharing in some capacities, but these features weren't implemented until 2014—long after Plaintiff requested to join projects and his DNA test results had been disclosed without his permission. (Dkt. 162, Ex. T at GBG00059210.)

information to Group Administrators—its de facto sales force—resulted in profit or monetary gain for the company.

Summary judgment is appropriate only "when, viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 907 (9th Cir. 2013). In considering whether summary judgment should be entered, courts "do[] not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must determine whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In other words, summary judgment is inappropriate if "as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2015).

Here, Mr. Cole has sufficient evidence to convince a rational jury that Gene by Gene's disclosures resulted in profit or monetary gain for the company. As discussed herein, there is substantial information, testimony, and sworn statements provided by Gene by Gene emphasizing that it discloses customer genetic information to Projects and Group Administrators for the explicit purpose of generating more sales and growing the company (and, in fact, *did* generate more sales and growth). *Supra* Factual Background § II. And the evidence also confirms that the specific Projects databases and Group Administrators to which Defendant disclosed Plaintiff's DNA test results (including, among others, WorldFamilies.net and Terry

Barton) generated web traffic and revenue for Gene by Gene. (Richman Ex. J at GBG00117525; Richman Ex. K at GBG00117071; Richman Ex. I, (Leibovich Dep. Tr.) at 52:18-23.) Whether measured in terms of increased exposure for Defendant's business or the additional sales of DNA test kits, those realized benefits are "profit[s] or monetary gain[s]" sufficient to trigger the Act's higher statutory damages. AS § 18.13.020. Indeed, the Ninth Circuit has upheld analogous jury verdicts on far less than the evidence presented here. *See, e.g.*, *United States v. Aviles*, 313 F. App'x 964, 965–66 (9th Cir. 2009) (citing *United States v. Yoshida*, 303 F.3d 1145, 1151–52 (9th Cir. 2002) (finding government presented sufficient circumstantial evidence to prove defendant "profited or received financial gain from his involvement [in conspiracy to transport illegal aliens]" based on evidence that defendant "[did] not claim he either knew or was related to the aliens in his truck, which support[ed] the reasonable inference that he sought financial gain for transporting them.").

For its part, Gene by Gene offers nothing to explain away the substantial evidence of profit or monetary gain. Gene by Gene only points out that it "makes the *same* amount of money from a kit regardless of whether the consumer refuses to sign the consent page or whether the consumer joins 100 groups and discloses information on every single group page." (Def. Mot. at 12-13 (emphasis in original).) But this observation—that Gene by Gene makes money by selling test kits—only underscores the importance of the Projects and Group Administrators (and Gene by Gene's disclosure of customer genetic information to them) to the company's bottom line. The more customers that joined Projects, the more they attracted prospective customers and the more Group Administrators could use customer DNA test result information to generate business. (*See, e.g.*, dkt. 182 at 7 (citing dkt. 140-3 (B. Greenspan Dep. Tr.) at 12) ("Bennett Greenspan, Gene by Gene's Founder and President, testified that when customers join projects,

Gene by Gene 'increases [its] ability to reach out to other potential test takers.'"); dkt. 140, Ex. H, (Blackerby Dep. Tr.) at 42:12-22 (Agreeing that Group Administrators were "important to the overall success of DNA testing" because "[t]hey recruit testers and facilitate the exchange of information that makes DNA testing useful . . . and without it being useful, people aren't going to buy it.").) The fact that the alleged disclosures do not immediately bring in money (as they would if Gene by Gene charged its customers a premium to join Projects) is of no moment, because the disclosures allowed Group Administrators to solicit additional members and DNA kit sales, ultimately resulting in additional customers and business for Gene by Gene. Thus, because this "sales tool," (dkt. 140, Ex. A (B. Greenspan Dep. Tr.) at 101:11-23), led to *additional* sales, (dkt. 140, Ex. O (Leibovich Dep. Tr.) at 38:7-14)—including those generated from Projects to which Plaintiff's information was disclosed, (Richman Ex. J at GBG00117525; Richman Ex. K at GBG00117071; Richman Ex. I (Leibovich Dep. Tr.) at 52:18-23)—there's significant evidence that Defendant's disclosures resulted in "profit or monetary gain" to the company.

In arguing that Mr. Cole cannot obtain the heightened statutory damages because Gene by Gene's disclosures don't result in immediate cash to it, Gene by Gene treats the Act's use of the undefined term "profit" as meaning "the excess of revenues over expenditures in a business transaction." (Def. Mot. at 10 (quoting PROFIT, Black's Law Dictionary (10th ed. 2014).) But that construction doesn't fully account for the statutory text. The Act joins "profit" and "monetary gain" "with the disjunctive 'or,' which tells us that the [terms] have separate meanings." *United States v. Vance Crooked Arm*, 788 F.3d 1065, 1074 (9th Cir. 2015) (citing *Loughrin v. United States*, 573 U.S. 351, 357 (2014)). And because the Act provides for $100,000 in statutory damages when a defendant *either* profits *or* realizes monetary gain, Gene

by Gene's interpretation, which limits profits to a type of monetary gain, creates an avoidable redundancy. *Commodity Futures Trading Comm'n v. White Pine Tr. Corp.*, 574 F.3d 1219, 1225 (9th Cir. 2009) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)) ("It is generally disfavored to interpret statutes to create redundancy."). Rather than being limited to monetary gain, "profit" instead means simply "an 'advantage' or 'benefit.'" *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1117–18 (9th Cir. 2000) (quoting Webster's Third New International Dictionary (1971) 1811). Here, and in addition to resulting in eventual "monetary gain" for the company via increased sales, the marketing and growth that resulted from Gene by Gene's disclosures are unquestionably an advantage or benefit to Gene by Gene. *See id.* (holding that church "unquestionably profit[ed]" from its use of copyrighted material "by attracting . . . new members … and by enabling [its] growth").

Finally, Gene by Gene points to one case—the only substantive authority cited in the Motion—explaining that, under Alaska law, a plaintiff seeking to recover "loss of profits" must present evidence showing the amount of profits lost. (Def. Mot. at 11-12 (quoting *State v. Hammer*, 550 P.2d 820, 824-25 (Alaska 1976).) This standard has no bearing to any issue in this litigation. "The controlling principle in this case is the basic and unexceptional rule that courts must give effect to the clear meaning of statutes as written." *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476 (1992). Here, no part of the Act requires an accounting (or even an approximation) of the profits or monetary gain resulting from a prohibited act. Rather, the Act presents a binary yes/no question: did the violation "result[] in profit or monetary gain to the violator." AS § 18.13.020. And as explained above, Mr. Cole has sufficient evidence to allow a jury to say yes. Furthermore, putting the text of the statute aside, Plaintiff, who is not in the

business of selling his own genetic information for money, does not seek to recover any "profits" that he lost. As such, Defendant fails to present any authority to support its request that Plaintiff Cole's damages under the Genetic Privacy Act be limited.

## CONCLUSION

The factual record in this case establishes that Defendant's economic success is driven by its disclosures of customer genetic information to its Group Administrators and Projects. Because a rational jury could readily conclude that its disclosures of Plaintiff's DNA test results likewise resulted in profit or monetary gain for the company, Defendant's motion for partial summary judgment should be denied.

Respectfully submitted,

**MICHAEL COLE**, individually and on behalf of all others similarly situated individuals,

Dated: January 25, 2019

By: /s/ Benjamin H. Richman
   One of Plaintiff's Attorneys

Jay Edelson (*pro hac vice*)
jedelson@edelson.com
Benjamin H. Richman (*pro hac vice*)
brichman@edelson.com
David I. Mindell (*pro hac vice*)
dmindell@edelson.com
Alexander G. Tievsky (*pro hac vice*)
atievsky@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian (*pro hac vice*)
rbalabanian@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300

Fax: 415.373.9435

Douglas Mertz
mertzlaw@gmail.com
MERTZ LAW
319 Seward Street, Suite 5
Juneau, Alaska 99801
Tel: 907.586.4004
Fax: 888.586.4141

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2019, I served the above and foregoing by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Benjamin H. Richman